## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **NORGUARD INSURANCE COMPANY** | **CIVIL ACTION FILE NO.:** |
| **VERSUS** | |
| **JASON S. MCKINZIE, JR., JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC.** | |

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW NORGUARD INSURANCE COMPANY ("NorGUARD" or "Plaintiff") who files this Complaint for Declaratory Relief under Fed. R. Civ. P. 57 and O.C.G.A. § 9-4-1 against Jason S. McKinzie, Jr., Jeffery S. Harr, Jill E. Harr, DOH, Inc., Johnny's Pizza, Inc., and Johnny's Pizza Franchise System, Inc. ("Defendants"), seeking a declaration that there is no coverage, and no duty to defend or indemnify, under its policy, showing the Court as follows:

### I.    PARTIES

1.    At all times material hereto, NorGUARD is a foreign insurance company domiciled in Omaha, Nebraska and with its principal place of business in

Wilkes-Barre, Pennsylvania.

2. Defendant, Jason S. McKinzie, Jr., is a resident of the State of Georgia, known to reside at 4112 Tuggle Road, Buford, Georgia 30518 in Gwinnett County. Defendant may be served with a Summons and Complaint as allowed by law.

3. Defendant, Jeffery S. Harr, is a resident of the State of Georgia, known to reside at 3571 Haddon Hall Drive, Buford, Georgia 30519 in Gwinnett County. Defendant may be served with a Summons and Complaint as allowed by law.

4. Defendant, Jill E. Harr, is a resident of the State of Georgia, known to reside at 3571 Haddon Hall Drive, Buford, Georgia 30519 in Gwinnett County. Defendant may be served with a Summons and Complaint as allowed by law.

5. Defendant, DOH, Inc., is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant DOH, Inc. maintains a principal office at 3571 Haddon Hall Drive, Buford, GA, 30519 in Gwinnett County. Defendant DOH may be served through its Registered Agent, Jill Harr at 3571 Haddon Hall Drive, Buford, GA, 30519, in accordance with Georgia law.

6.  Defendant, Johnny's Pizza, Inc., is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant Johnny's maintains a principal office at 25 Spyglass Point, Newnan, GA, 30263 in Clayton County. Defendant Johnny's may be served through its Registered Agent, Bruce Jackson at 3292 Bayview Drive, Jonesboro, GA, 30326, in accordance with Georgia law.

7.  Defendant, Johnny's Pizza Franchise Systems, Inc., is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant Johnny's maintains a principal office at 25 Spyglass Point, Newnan, GA, 30263 in Clayton County. Defendant Johnny's Franchise may be served through its Registered Agent, Bruce Jackson at 3292 Bayview Drive, Jonesboro, GA, 30326, in accordance with Georgia law.

## II.    JURISDICTION AND VENUE

8.

This Court has jurisdiction over the issues in this lawsuit under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and Rule 57 of the Federal Rules of Civil Procedure, as  Jason S. McKinzie, Jr has asserted a demand for

damages against Jeffery S. Harr, Jill E. Harr, DOH, Inc., Johnny's Pizza, Inc., and Johnny's Pizza Franchise System, Inc. and their insurers arising from an incident, more fully described below, and DOH, Inc. seeks a defense, indemnity, and insurance coverage from NorGUARD as to Jason S. McKinzie, Jr.'s claims.

9.

This Court has diversity jurisdiction over the parties and this matter, as complete diversity exists between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.

Pursuant to 28 U.S.C. § 1391, venue is proper in this District because the incident at issue, and a substantial part of the events or omissions giving rise to the claims and alleged damages, occurred within this District.

## III.   STATEMENT OF FACTS

11.

Jason S. McKinzie, Jr. filed a Complaint for Damages in the State Court of Gwinnett County, State of Georgia, Civil Action File No.: 23-C-07575-S3 (attached as Exhibit "A") against Defendant Jeffery S. Harr and Defendant Jill E. Harr.

12.

Jason S. McKinzie, Jr. filed a First Amended Complaint for Damages in the State Court of Gwinnett County, State of Georgia, Civil Action File No.: 23-C-

07575-S3 (attached as Exhibit "B") against Jeffery S. Harr, Defendant Jill E. Harr, Defendants DOH, Inc., Johnny's Pizza, Inc., and Johnny's Pizza Franchise Systems, Inc.

13.

In the Complaint, Jason S. McKinzie, Jr. alleges on September 2, 2023, at approximately 12:34 a.m., Jeffery S. Harr was operating a 2005 Ford Escape owned and registered to Jill E. Harr (the "Subject Vehicle") east on Tuggle Road in Gwinnett County, Georgia.

14.

It is further alleged that, on September 2, 2023, at approximately 12:34 a.m., Jason S. McKinzie, Jr. was operating a motorized cart west on Tuggle Road in Gwinnett County, Georgia.

15.

It is alleged that on September 2, 2023, at approximately 12:34 a.m., Jeffery S. Harr's actions and/or omissions caused his vehicle to cross the centerline and enter the westbound lane of Tuggle Road while continuing to travel east.

16.

On September 2, 2023, at approximately 12:34 a.m., it is alleged that the vehicle operated by Jeffery S. Harr collided into Jason S. McKinzie, Jr.'s motorized cart in the westbound lane of Tuggle Road.

17.

The alleged collision referenced herein caused Jason S. McKinzie, Jr. to suffer severe physical injuries.

18.

In connection with the incident that forms the basis of this action, Jason S. McKinzie, Jr. was cited for (1) driving under the influence, (2) operating an unsafe motor vehicle and (3) driving on a suspended license.

19.

In connection with the incident that forms the basis of this action, Jeffery S. Harr was cited for (1) driving under the influence, in violation of O.C.G.A. § 40-6-391 and (2) failure to maintain lane, in violation of O.C.G.A. § 40-6-48

20.

Immediately prior to the incident that forms the basis of this action, Jeffery S. Harr allegedly consumed alcohol beverages to the point of intoxication at the restaurant and bar known Johnny's New York Style Pizza at 7363 Spout Springs Rd., Flowery Branch, GA 30542 ("Premises").

21.

According to information and belief, 7363 Spout Springs Rd., Flowery Branch, GA 30542, is located approximately 4 miles from where the subject incident between Jason S. McKinzie and Jeffrey Scott Harr occurred.

22.

NorGUARD issued an insurance policy to named insured DOH, Inc. bearing policy number DOBP412038 and effective dates of January 5, 2023 to January 5, 2024. The policy is attached as Exhibit C.

23.

NorGUARD issued a Reservation of Rights letter to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs on February 23, 2024, asserting that the Policy may not provide coverage for the claims and/or damages asserted by Jason S. McKinzie, Jr. in the underlying lawsuit pursuant to certain nonexclusive terms, provisions, conditions, exclusions or endorsements. A copy of the February 23, 2024, Reservation of Rights letter is attached as Exhibit D.

24.

On October 31, 2023, counsel for Jason S. McKinzie, Jr. made a demand for payment of policy limits against NorGUARD, alleging that the NorGUARD policy provided insurance coverage for the incident.  A copy of the October 31, 2023 demand is attached as Exhibit E. A May 31, 2024 secondary demand for $10,000,000.00 was also made.

25.

On July 18, 2024, NorGUARD issued an amended reservation of rights letter

to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs outlining additional policy language which would support a finding of no coverage for the incident and reserving the right to seek a judicial determination of the coverage issue.  Exhibit F.

<div align="center">26.</div>

On July 18, 2024, NorGUARD issued a letter declining to accept McKinzie's demand on the basis that the NorGUARD policy does not provide insurance coverage pursuant to the clear and unambiguous policy language, set forth in more detail, below.  Exhibit G.

## IV.    NORGUARD INSURANCE POLICY NO. DOBP412038

### SECTION II – LIABILITY
### A. COVERAGES

1. Business Liability
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:
   (1) The amount we will pay for damages is limited as described in Paragraph D. – Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension – Supplementary Payments.

\* \* \*

**F. Liability And Medical Expenses Definitions**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**HIRED AUTO AND NON-OWNED AUTO LIABILITY**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

\* \* \*

A. Insurance is provided only for those coverages for which a specific premium

charge is shown in the Declarations or in the Schedule.

1. Hired Auto Liability
The insurance provided under Paragraph A.1. Business Liability in Section II – Liability applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

2. Non-owned Auto Liability
The insurance provided under Paragraph A.1. Business Liability in Section II – Liability applies to "bodily injury" or "property

damage" arising out of the use of any "non-owned auto" in your business by any person.

\* \* \*

2. Paragraph C. Who Is An Insured in Section II – Liability is replaced by the
following:
   1. Each of the following is an insured under this endorsement to the extent
      set forth below:
      a. You;
      b. Any other person using a "hired auto" with your permission;
      c. For a "non-owned auto":
         (1) Any partner or "executive officer" of yours; or
         (2) Any "employee" of yours; but only while such "non-owned auto" is being used in your business; and
      d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.
   2. None of the following is an insured:
      a. Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;
      b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;
      c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto
      business" you operate;
      d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

\* \* \*

D. The following additional definitions apply:

**1.** "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos"

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

**3.** "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers",                                        or members of their households, but only while used in your business or your personal affairs.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| A.  Premises: |
|---|
| 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |

<table>
<tr><td>

**B.  Project Or Operation:**

</td></tr>
<tr><td>

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

</td></tr>
</table>

**Section II – Liability** is amended as follows:

**A.** Paragraph **A.1.b.(1)** is replaced by the following:

(1) To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(a)** The "bodily injury" or "property damage":

**(i)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(ii)** Arises out of the project or operation shown in the Schedule;

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**B.** Paragraph **A.1.b.(2)** is replaced by the following:

**(2)** To "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(a)** The offense arises out of your business:

**(i)** Performed on the premises shown in the Schedule; or

**(ii)** In connection with the project or operation shown in the Schedule; and

**(b)** The offense was committed during the policy period.

However, with respect to Paragraph **A.1.b.(2)(a)(i),** if the "personal and advertising injury" is caused by:

**(a)** False arrest, detention or imprisonment; or

**(b)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**c.** Paragraph **A.2.a. Medical Expenses** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

\* \* \*

In addition to the above endorsement, the Liquor Liability Coverage provided in the policy is limited as follows:

## LIQUOR LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE

A. Liquor Liability Aggregate Limit: $ 2,000,000
B. Each Common Cause Limit: $1,000,000

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Section II – Liability is amended as follows:

    A.    The insurance provided under Paragraph A.1. Business Liability also applies to all "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages.

    B.    For the insurance provided by this endorsement only, Paragraph B. Exclusions is amended as follows:

        1.    Paragraph 1. Applicable To Business Liability Coverages, other than Exclusions a. Expected Or Intended Injury, d. Workers' Compensation And Similar Laws and e. Employer's Liability, does not apply.

        2.    The following exclusions are added: This insurance does not apply to:

            a.    "Bodily injury" or "property damage" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

            b.    "Bodily injury" or "property damage" arising out of "your product". This exclusion does not apply to "bodily injury" or "property damage" for which the insured or the insured's indemnities may be held liable by reason of:

                (1)  Causing or contributing to the intoxication of any person;

                (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

                (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

            **c.    Any "bodily injury" or "property damage" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the Limits of Insurance.**
                **This exclusion does not apply if the other insurance responds to liability for "bodily in- jury" or "property damage" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.**

    C.    The following are added to Paragraph D. Liability And Medical Expenses Limits Of Insurance:

D. Liability And Medical Expenses Limits Of Insurance

5. The Liquor Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" as the result of the selling, serving or furnishing of alcoholic beverages.

6. Subject to the Liquor Liability Aggregate Limit, the Each Common Cause Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of alcoholic beverages to any one person.

Neither the Liability And Medical Expenses Limit of Insurance shown in the Declarations nor its aggregate limits apply to damages arising out of the selling, serving or furnishing of alcoholic beverages.

(emphasis added).

## V.    COUNT ONE: DECLARATORY JUDGMENT: HIRED AUTO AND NON-OWNED AUTO LIABILITY

27.

NorGUARD incorporates into Count One all of the allegations contained in paragraphs 1-26 as though they were repeated verbatim herein.

28.

The policy contains a Hired Auto and Non-Owned Auto Liability endorsement which does not provide coverage for the 2005 Ford Escape owned by and registered to Jill E. Harr as this automobile does not meet the definition of a "Hired Auto" or a "Non-owned Auto" as defined by the policy and set forth above.

29.

NorGUARD believes the aforementioned endorsement in the policy precludes coverage and no defense is owed to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs.

30.

Although NorGUARD believes allegations of the complaint are not covered, NorGUARD is nonetheless defending DOH Inc. pursuant to a full reservation of rights at this time.

31.

As a result of this dispute, NorGUARD is in doubt as to its obligations under the provisions of the subject contract and is in need of an immediate determination of its rights.

32.

In view of the foregoing, an actual controversy exists between the parties and this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

33.

Pursuant to Fed. R. Civ. P. 57 and O.C.G.A. § 9-4-1, NorGUARD is entitled to a declaration that no coverage exists under the Policy, and that there is no duty to defend or indemnify any person, company, entity, or party.

34.

All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived

## VI. COUNT TWO: DECLARATORY JUDGMENT: LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

35.

NorGUARD incorporates into Count Two all of the allegations contained in paragraphs 1-26 as though they were repeated verbatim herein.

36.

The policy contains a Limitation of Coverage To Designated Premises, Project or Operation endorsement which does not provide coverage for the "occurrence" resulting in "bodily injury" or "property damage" as alleged by Jason S. McKinzie, Jr.  This endorsement specifically limits coverage for any "occurrence" that results in "bodily injury" or "property damage" to the "Premises" as identified in the Schedule, or 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563.

37.

It is undisputed that the automobile accident between Jeffery Scott Harr and Jason S. McKinzie, Jr. occurred approximately 4 miles from the "Premises" identified

in the Schedule.

38.

Accordingly, NorGUARD believes the aforementioned endorsement in the policy precludes coverage and no defense is owed to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs.

39.

Although NorGUARD believes allegations of the complaint are not covered, NorGUARD is nonetheless defending DOH Inc. pursuant to a full reservation of rights at this time.

40.

As a result of this dispute, NorGUARD is in doubt as to its obligations under the provisions of the subject contract and is in need of an immediate determination of its rights.

41.

In view of the foregoing, an actual controversy exists between the parties and this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

42.

Pursuant to Fed. R. Civ. P. 57 and O.C.G.A. § 9-4-1, NorGUARD is entitled to a declaration that no coverage exists under the Policy, and that there is no duty to

defend or indemnify any person, company, entity, or party.

43.

All conditions precedent to the initiation and maintenance of this action have

been complied with, have occurred, or have been waived

## VII. COUNT THREE: DECLARATORY JUDGMENT: LIQUOR LIABILITY COVERAGE EXCLUSION FOR OTHER INSURANCE

44.

NorGUARD incorporates into Count Three all of the allegations contained in

paragraphs 1-26 as though they were repeated verbatim herein.

45.

The policy contains a Liquor Liability exclusion, B(2)(c), which does not

provide coverage in the event that other insurance provides coverage for the same

"bodily injury" or "property damage."

46.

Upon information and belief, the personal automobile policy maintained by

Jill E. Harr with USAA has or will provide coverage for the incident as alleged.

47.

NorGUARD believes the aforementioned exclusion in the policy precludes

coverage and no defense is owed to Jeffery Scott Harr and Jill E. Harr, DOH Inc.

DBA/TA Johnny's NY Style Pizza & Subs.

48.

Although NorGUARD believes allegations of the complaint are not covered, NorGUARD is nonetheless defending DOH Inc. pursuant to a full reservation of rights.

49.

As a result of this dispute, NorGUARD is in doubt as to its obligations under the provisions of the subject contract and is in need of an immediate determination of its rights.

50.

In view of the foregoing, an actual controversy exists between the parties and this Court has the power to declare the rights and liabilities of the parties and to give such other relief as may be necessary.

51.

Pursuant to Fed. R. Civ. P. 57 and O.C.G.A. § 9-4-1, NorGUARD is entitled to a declaration that coverage is excluded under the Policy, and that there is no duty to defend or indemnify any person, company, entity, or party.

52.

All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived

## PRAYER FOR RELIEF

For the reasons set forth in this Complaint, NorGUARD respectfully requests that Defendants be cited to appear and answer and, upon final trial, NorGUARD be granted judgment as follows:

A. A declaration that the Policy provides no coverage for any claim, cause of action, injury, or damages asserted by or that could have been asserted by Jason S. McKinzie, Jr. in the underlying lawsuit;

B. A declaration that NorGUARD does not owe Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs, or any other party coverage, defense, or indemnity, under the Policy for any claim, cause of action, injury, or damages asserted by or that could have been asserted by Jason S. McKinzie, Jr. in the underlying lawsuit;

C. Awarding NorGUARD its reasonable and necessary attorney's fees and costs incurred in this cause as available by law; and

D. Awarding such other and further relief to NorGUARD as the Court considers just and appropriate under the circumstances.


This 13th day of August, 2024.


Respectfully submitted:
**QUINTAIROS, PRIETO, WOOD, & BOYER, P.A.**

_/s/ C. Brent Wardrop_____

C. BRENT WARDROP
Georgia Bar No. 553733
365 NORTHRIDGE ROAD, SUITE 230
ATLANTA, GA        30350
PH: (770) 650-8737 X1928
FAX: (770) 650 8797
EMAIL: BRENT.WARDROP@QPWBLAW.COM

# Exhibit A

FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-07575-S3
10/12/2023 1:06 PM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

**JASON S. MCKINZIE, JR.,**

     Plaintiff,

**v.**

**JEFFERY S. HARR and
JILL E. HARR,**

     Defendants.

CIVIL ACTION FILE NO.:

23-C-07575-S3

_____

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff JASON S. MCKINZIE, JR. and files this Complaint for Damages against JEFFERY S. HARR and JILL E. HARR as follows:

### PARTIES AND JURISDICTION

1.

Plaintiff Jason S. McKinzie, Jr. ("Plaintiff") submits himself to the jurisdiction and venue of this Court by filing this action.

2.

Defendant Jeffery S. Harr ("Defendant Driver") and Defendant Jill E. Harr ("Defendant Owner," individually, and "Defendants" collectively with Defendant Driver) are residents of the State of Georgia, known to reside at 3571 Haddon Hall Drive, Buford, Georgia 30519 in Gwinnett County. Defendants may be served with a Summons and Complaint as allowed by law.

3.

Upon information and belief, Defendant Driver and Defendant Owner are family members living in the immediate household.

EXHIBIT A

4.

Jurisdiction and venue are proper in this Court with respect to Defendants.

## GENERAL ALLEGATIONS

5.

On September 2, 2023, at approximately 12:34 a.m., Defendant Driver was operating a 2005 Ford Escape (the "Subject Vehicle") east on Tuggle Road in Gwinnett County, Georgia.

6.

On September 2, 2023, at approximately 12:34 a.m., Plaintiff was operating a motorized cart west on Tuggle Road in Gwinnett County, Georgia.

7.

On September 2, 2023, at approximately 12:34 a.m., Defendant Driver's actions and/or omissions caused the Subject Vehicle to cross the centerline and enter the westbound lane of Tuggle Road while continuing to travel east.

8.

At all times relevant hereto, Plaintiff's motorized cart was located entirely within the westbound lane of travel on Tuggle Road.

9.

On September 2, 2023, at approximately 12:34 a.m., the Subject Vehicle operated by Defendant Driver collided into Plaintiff's motorized cart in the westbound lane of Tuggle Road.

10.

The collision referenced herein caused Plaintiff to suffer severe physical injuries.

11.

In connection with the incident that forms the basis of this action, Defendant Driver was cited for (1) driving under the influence, in violation of O.C.G.A. § 40-6-391 and (2) failure to maintain lane, in violation of O.C.G.A. § 40-6-48.

## COUNT I:
## NEGLIGENCE/NEGLIGENCE PER SE

12.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 11 above as if fully restated.

13.

At all relevant times, Defendant Driver owed certain civil duties to Plaintiff. Notwithstanding those duties, Defendant Driver did violate them in the following particulars, at least:

a.   in failing to make reasonable and proper observations while operating a motor vehicle, or if reasonable observations were made, failing to act thereon;

b.   in failing to maintain lane;

c.   in driving while under the influence of alcohol;

d.   in failing to operate a vehicle in a safe and prudent manner in view of the conditions that existed at the time of the subject collision;

e.   in driving a vehicle in reckless disregard for the safety of persons or property;

f.   by violating one or more of Georgia's Uniform Rules of the Road; and/or

g.   in committing other negligent and reckless acts and omissions as may be shown by the evidence and proven at trial.

- 3 -

14.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of the incident referenced herein.

15.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of Plaintiff's injuries resulting from the incident referenced herein.

16.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of Plaintiff's damages resulting from the incident referenced herein.

17.

As a result of Defendant Driver's negligence, Defendant Driver is liable to Plaintiff for Plaintiff's damages more fully identified below.

## COUNT II:
## VICARIOUS LIABILITY/ "FAMILY PURPOSE DOCTRINE"

18.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 17 above as if fully restated.

19.

Defendant Owner owned, had an interest in, and/or had control over the Subject Vehicle negligently driven by Defendant Drive at the time of the incident referenced herein.

20.

Defendant Driver was a family member of Defendant Owner and lived in the immediate household of Defendant Owner at the time of the incident referenced herein.

21.

Defendant Owner loaned or provided the Subject Vehicle to Defendant Driver for the pleasure, comfort, or convenience of that family member.

22.

The Subject Vehicle was being driven with the permission or consent of Defendant Owner and for a family purpose at the time of the incident referenced herein.

23.

Defendant Owner kept sufficient authority or control over the use of the Subject Vehicle such that an agency relationship between Defendant Owner and Defendant Driver.

24.

Pursuant to theories of imputed and/or vicarious liability recognized under Georgia law, commonly known as the "Family Purpose Doctrine," Defendant Owner is liable for the negligence of Defendant Driver, alleged herein, and the damages incurred by Plaintiff, detailed below.

**COUNT III:**
**NEGLIGENT ENTRUSTMENT BY DEFENDANT OWNER**

25.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 24 above as if fully restated.

26.

At all times material hereto, Defendant Owner, as the owner of the Subject Vehicle, had the right to permit and the power to prohibit the use of said vehicle by Defendant Driver.

27.

Defendant Owner knew, or had reason to know, that Defendant Driver was incompetent, ineligible, or otherwise unfit to operate the Subject Vehicle safely at the time of the incident referenced herein.

28.

As a direct result of Defendant Owner negligently entrusting the Subject Vehicle to Defendant Driver, who operated said vehicle in a negligent and/or reckless manner, the Plaintiff did suffer the injuries, damages, and harm described herein and further below.

29.

Defendant Owner is liable for all damages caused by Defendant Driver and allowed by law for the injuries, damages, and losses sustained by Plaintiff as a result of the incident alleged herein.

## COMPENSATORY DAMAGES

30.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 29 above as if fully restated.

31.

As a direct and proximate result of the breaches of duty by Defendant Driver, Plaintiff suffered injuries and damages, including severe physical injuries, medical and other necessary expenses, and mental and physical pain and suffering.

32.

Plaintiff has incurred special damages, e.g., past medical expenses for treatment of injuries sustained as a result of the subject collision.

33.

Plaintiff's injuries are permanent, and, in the future, Plaintiff will suffer permanent physical impairment, medical and other necessary expenses, and mental and physical pain and suffering.

34.

By reason of the foregoing, Plaintiff is entitled to recover compensatory damages, general damages, and special damages from Defendants in an amount to be proven at trial.

## PUNITIVE DAMAGES

35.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 34 above as if fully restated.

36.

Defendant Driver's conduct surrounding the incident that forms the basis of this action was reckless, willful and wanton, and demonstrated a conscious indifference to the consequences of his actions.

37.

Plaintiff is entitled to an award of punitive damages.

## ATTORNEYS' FEES & COSTS PURSUANT TO O.C.G.A. § 13-6-11

38.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 37 above as if fully restated.

39.

Defendant Driver acted in bad faith in connection with the incident that forms the basis of this action.

40.

Defendant Owner acted in bad faith in connection with the incident that forms the basis of this action.

41.

There is no bona fide dispute as to Defendant Driver's liability for the subject incident and Plaintiff's injuries resulting therefrom. In the event Defendants deny Defendant Driver's liability, Defendants would be acting stubbornly litigious or causing Plaintiff unnecessary trouble and expense in this litigation.

42.

Plaintiff provides notice that he will seek his expenses of litigation, including reasonable attorneys' fees and costs, pursuant to O.G.G.A. § 13-6-11.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays and demands as follows:

a.  That Process and Summons issue, as provided by law, requiring Defendant Jeffery S. Harr and Defendant Jill E. Harr to appear and answer Plaintiff's Complaint;

b.  That service is had upon Defendants as provided by law;

c.  That the Court award and enter a judgment in favor of Plaintiff and against Defendants for Plaintiff's compensatory damages, including but not limited to general damages and special damages, in an amount to be proven at trial;

d.  That the Court award and enter a judgment in favor of Plaintiff and against Defendants for punitive damages in an amount to be proven at trial;

e.  That the Court award and enter a judgment in favor of Plaintiff for his expenses of litigation in an amount to be proven at trial;

f.  That Plaintiff have a jury trial as to all issues; and,

g.  That Plaintiff have such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**LAW OFFICE OF SUTTON T. SLOVER**

*/s/ Kevin W. Burkhart*
SUTTON T. SLOVER
Georgia Bar No. 325602
sslover@sloverlaw.net
KEVIN W. BURKHART
Georgia Bar No. 327495
kevin@sloverlaw.net
*Attorneys for Plaintiff*

5901 Peachtree Dunwoody Rd.
Suite A220
Atlanta, Georgia 30328
P: 404-768-0292
F: 404-419-6011

# Exhibit B

E-FILED IN OFFICE - AK
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-07575-S3**

**12/20/2023 12:04 PM**

**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| **JASON S. MCKINZIE, JR.,** | |
| Plaintiff, | CIVIL ACTION FILE NO.: |
| **v.** | **23-C-07575-S3** |
| **JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC.,** | _____ |
| | JURY TRIAL DEMANDED |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff JASON S. MCKINZIE, JR. and files his First Amended Complaint for Damages against Defendants JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC. as follows:

### PARTIES AND JURISDICTION

1.

Plaintiff Jason S. McKinzie, Jr. ("Plaintiff") submits himself to the jurisdiction and venue of this Court by filing this action.

2.

Defendant Jeffery S. Harr ("Defendant Driver") and Defendant Jill E. Harr ("Defendant Owner") are residents of the State of Georgia, known to reside at 3571 Haddon Hall Drive, Buford, Georgia 30519 in Gwinnett County. Defendants may be served with this First Amended Complaint as allowed by law.

- 1 -

EXHIBIT B

3.

Upon information and belief, Defendant Driver and Defendant Owner are family members living in the immediate household.

4.

Defendant DOH, Inc. ("Defendant DOH") is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant DOH, Inc. maintains a principal office at 3571 Haddon Hall Drive, Buford, GA, 30519 in Gwinnett County.  Defendant DOH may be served through its Registered Agent, Jill Harr at 3571 Haddon Hall Drive, Buford, GA, 30519, in accordance with Georgia law. Once served with process, Defendant DOH will be subject to the jurisdiction and venue of the court.

5.

Defendant Johnny's Pizza, Inc. ("Defendant Johnny's") is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant Johnny's maintains a principal office at 25 Spyglass Point, Newnan, GA, 30263 in Clayton County.  Defendant Johnny's may be served through its Registered Agent, Bruce Jackson at 3292 Bayview Drive, Jonesboro, GA, 30326, in accordance with Georgia law. Once served with process, Defendant Johnny's will be subject to the jurisdiction and venue of the court.

6.

Defendant Johnny's Pizza Franchise Systems, Inc. ("Defendant Johnny's Franchise") is Domestic Profit Corporation existing under the laws of the State of Georgia and registered with the Office of the Georgia Secretary of State to conduct business within this State. Defendant

Johnny's maintains a principal office at 25 Spyglass Point, Newnan, GA, 30263 in Clayton County.  Defendant Johnny's Franchise may be served through its Registered Agent, Bruce Jackson at 3292 Bayview Drive, Jonesboro, GA, 30326, in accordance with Georgia law. Once served with process, Defendant Johnny's will be subject to the jurisdiction and venue of the court.

7.

Defendants Doh, Johnny's, and Johnny's Franchise (collectively, the "Johnny's Pizza Defendants") own and/or operate the restaurant and bar business known as Johnny's New York Style Pizza at 7363 Spout Springs Rd Flowery Branch, GA 30542.

8.

Jurisdiction and venue are proper in this Court with respect to Defendants.

## GENERAL ALLEGATIONS

9.

On September 2, 2023, at approximately 12:34 a.m., Defendant Driver was operating a 2005 Ford Escape (the "Subject Vehicle") traveling east on Tuggle Road in Gwinnett County, Georgia.

10.

At all times relevant hereto, Defendant Owner owned the Subject Vehicle.

11.

On September 2, 2023, at approximately 12:34 a.m., Plaintiff was operating a motorized cart traveling west on Tuggle Road in Gwinnett County, Georgia.

12.

On September 2, 2023, at approximately 12:34 a.m., Defendant Driver's actions and/or omissions caused the Subject Vehicle to cross the centerline of the roadway and enter the westbound lane of Tuggle Road while continuing to travel east.

13.

At all times relevant hereto, Plaintiff's motorized cart was located entirely within the westbound lane of travel on Tuggle Road.

14.

On September 2, 2023, at approximately 12:34 a.m., the Subject Vehicle operated by Defendant Driver collided into Plaintiff's motorized cart in the westbound lane of Tuggle Road.

15.

The collision referenced herein caused Plaintiff to suffer severe physical injuries.

16.

In connection with the incident that forms the basis of this action, Defendant Driver was cited for (1) driving under the influence, in violation of O.C.G.A. § 40-6-391 and (2) failure to maintain lane, in violation of O.C.G.A. § 40-6-48.

17.

Immediately prior to the incident that forms the basis of this action, Defendant Driver consumed alcohol beverages to the point of intoxication at the restaurant and bar known Johnny's New York Style Pizza at 7363 Spout Springs Rd Flowery Branch, GA 30542.

18.

Immediately prior to the incident that forms the basis of this action, agents and employees of the Johnny's Pizza Defendants knowingly sold, furnished, or served alcoholic beverages to

Defendant Driver, who was in a state of noticeable intoxication, knowing that Defendant Driver would soon be driving a motor vehicle.

19.

The joint and combined negligent acts of Defendant Driver, Defendant Owner, and the Johnny's Pizza Defendants, as set forth herein, were the joint proximate causes of the described collision, which resulted in severe injuries and extensive damages to Plaintiff.

**COUNT I:**
**NEGLIGENCE/NEGLIGENCE PER SE**
**OF DEFENDANT DRIVER**

20.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 19 above as if fully restated.

21.

At all relevant times, Defendant Driver owed certain civil duties to Plaintiff. Notwithstanding those duties, Defendant Driver did violate them in the following particulars, at least:

a.  in failing to make reasonable and proper observations while operating a motor vehicle, or if reasonable observations were made, failing to act thereon;

b.  in failing to maintain lane;

c.  in driving while under the influence of alcohol;

d.  in failing to operate a vehicle in a safe and prudent manner in view of the conditions that existed at the time of the subject collision;

e.  in driving a vehicle in reckless disregard for the safety of persons or property;

f.  by violating one or more of Georgia's Uniform Rules of the Road; and/or

g.  in committing other negligent and reckless acts and omissions as may be shown by the evidence and proven at trial.

22.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of the incident referenced herein.

23.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of Plaintiff's injuries resulting from the incident referenced herein.

24.

Defendant Driver's breach of one or more civil duties owed to Plaintiff was the direct and proximate cause of Plaintiff's damages resulting from the incident referenced herein.

25.

As a result of Defendant Driver's negligence, Defendant Driver is liable to Plaintiff for Plaintiff's damages more fully identified below.

**COUNT II:**
**VICARIOUS LIABILITY/ "FAMILY PURPOSE DOCTRINE"**
**OF DEFENDANT OWNER**

26.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 25 above as if fully restated.

27.

Defendant Owner owned, had an interest in, and/or had control over the Subject Vehicle negligently driven by Defendant Drive at the time of the incident referenced herein.

28.

Defendant Driver was a family member of Defendant Owner and lived in the immediate household of Defendant Owner at the time of the incident referenced herein.

29.

Defendant Owner loaned or provided the Subject Vehicle to Defendant Driver for the pleasure, comfort, or convenience of that family member.

30.

The Subject Vehicle was being driven with the permission or consent of Defendant Owner and for a family purpose at the time of the incident referenced herein.

31.

Defendant Owner kept sufficient authority or control over the use of the Subject Vehicle such that an agency relationship between Defendant Owner and Defendant Driver.

32.

Pursuant to theories of imputed and/or vicarious liability recognized under Georgia law, commonly known as the "Family Purpose Doctrine," Defendant Owner is liable for the negligence of Defendant Driver, alleged herein, and the damages incurred by Plaintiff, detailed below.

**COUNT III:**
**NEGLIGENT ENTRUSTMENT BY DEFENDANT OWNER**

33.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 32 above as if fully restated.

34.

At all times material hereto, Defendant Owner, as the owner of the Subject Vehicle, had the right to permit and the power to prohibit the use of said vehicle by Defendant Driver.

35.

Defendant Owner knew, or had reason to know, that Defendant Driver was incompetent, ineligible, or otherwise unfit to operate the Subject Vehicle safely prior to and at the time of the incident referenced herein.

36.

As a direct result of Defendant Owner negligently entrusting the Subject Vehicle to Defendant Driver, who operated said vehicle in a negligent and/or reckless manner, the Plaintiff did suffer the injuries, damages, and harm described herein and further below.

37.

Defendant Owner is liable for all damages caused by Defendant Driver and allowed by law for the injuries, damages, and losses sustained by Plaintiff as a result of the incident alleged herein.

**COUNT IV:**
**DRAM SHOP LIABILITY**
**OF DEFENDANT DOH**

38.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 37 above as if fully restated.

39.

Immediately prior to the incident that forms the basis of this First Amended Complaint, an agent or employee of Defendant DOH knowingly sold, furnished, or served alcoholic beverages to Defendant Driver, who was in a state of noticeable intoxication, knowing that Defendant Driver would soon be driving a motor vehicle.

40.

The sale, furnishing, or serving of alcoholic beverages to Defendant Driver was a

proximate cause of the injuries and damages sustained by Plaintiff in the incident that forms the basis of this First Amended Complaint.

41.

Defendant DOH is liable for the injuries or damages caused to Plaintiff by or resulting from the intoxication of Defendant Driver.

## COUNT V:
## DRAM SHOP LIABILITY
## OF DEFENDANT JOHNNY'S

42.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 41 above as if fully restated.

43.

Immediately prior to the incident that forms the basis of this First Amended Complaint, an agent or employee of Defendant Johnny's knowingly sold, furnished, or served alcoholic beverages to Defendant Driver, who was in a state of noticeable intoxication, knowing that Defendant Driver would soon be driving a motor vehicle.

44.

The sale, furnishing, or serving of alcoholic beverages to Defendant Driver was a proximate cause of the injuries and damages sustained by Plaintiff in the incident that forms the basis of this First Amended Complaint.

45.

Defendant Johnny's is liable for the injuries or damages caused to Plaintiff by or resulting from the intoxication of Defendant Driver.

**COUNT VI:**
**DRAM SHOP LIABILITY**
**OF DEFENDANT JOHNNY'S FRANCHISE**

46.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 45 above as if fully restated.

47.

Immediately prior to the incident that forms the basis of this First Amended Complaint, an agent or employee of Defendant Johnny's Franchise knowingly sold, furnished, or served alcoholic beverages to Defendant Driver, who was in a state of noticeable intoxication, knowing that Defendant Driver would soon be driving a motor vehicle.

48.

The sale, furnishing, or serving of alcoholic beverages to Defendant Driver was a proximate cause of the injuries and damages sustained by Plaintiff in the incident that forms the basis of this First Amended Complaint.

49.

Defendant Johnny's Franchise is liable for the injuries or damage caused to Plaintiff by or resulting from the intoxication of Defendant Driver.

**COMPENSATORY DAMAGES**

50.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 49 above as if fully restated.

51.

As a direct and proximate result of the breaches of civil duties by Defendants, Plaintiff suffered injuries and damages, including severe physical injuries, medical and other necessary expenses, and mental and physical pain and suffering.

52.

Plaintiff has incurred special damages, e.g., past medical expenses for treatment of injuries sustained as a result of the subject collision and lost income as a result of physical disabilities preventing Plaintiff from gainful employment.

53.

Plaintiff's injuries are permanent, and, in the future, Plaintiff will suffer permanent physical impairment, medical and other necessary expenses, lost earnings, and mental and physical pain and suffering.

54.

By reason of the foregoing, Plaintiff is entitled to recover compensatory damages, including but not limited to general damages and special damages, from Defendants in an amount to be proven at trial.

**PUNITIVE DAMAGES**

55.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 54 above as if fully restated.

56.

Defendant Driver's conduct surrounding the incident that forms the basis of this action was reckless, willful and wanton, and demonstrated a conscious indifference to the consequences of his actions.

57.

The conduct of the Johnny's Pizza Defendants, their agents, and employees, surrounding the incident that forms the basis of this action was reckless, willful and wanton, and demonstrated a conscious indifference to the consequences of their actions.

58.

Plaintiff is entitled to an award of punitive damages.

**ATTORNEYS' FEES & COSTS PURSUANT TO O.C.G.A. § 13-6-11**

59.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 58 above as if fully restated.

60.

Defendant Driver acted in bad faith in connection with the incident that forms the basis of this action.

61.

Defendant Owner acted in bad faith in connection with the incident that forms the basis of this action.

62.

The Johnny's Pizza Defendants acted in bad faith in connection with the incident that forms the basis of this action.

63.

There is no bona fide dispute as to Defendant Driver's liability for the subject incident and Plaintiff's injuries resulting therefrom.  In the event Defendants deny Defendant Driver's liability, Defendants would be acting stubbornly litigious or causing Plaintiff unnecessary trouble and expense in this litigation.

64.

Plaintiff provides notice that he will seek his expenses of litigation, including reasonable attorneys' fees and costs, pursuant to O.G.G.A. § 13-6-11.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays and demands as follows:

a.  That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiff's First Amended Complaint;

b.  That service is had upon Defendants as provided by law;

c.  That the Court award and enter a judgment in favor of Plaintiff and against Defendants for Plaintiff's compensatory damages, including but not limited to general damages and special damages, in an amount to be proven at trial;

d.  That the Court award and enter a judgment in favor of Plaintiff and against Defendants for punitive damages in an amount to be proven at trial;

e.  That the Court award and enter a judgment in favor of Plaintiff for his expenses of litigation in an amount to be proven at trial;

f.  That Plaintiff have a jury trial as to all issues; and,

g.  That Plaintiff have such other and further relief as the Court may deem just and proper.

[ATTORNEY'S SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

**LAW OFFICE OF SUTTON T. SLOVER**

*/s/ Kevin W. Burkhart*
SUTTON T. SLOVER
Georgia Bar No. 325602
sslover@sloverlaw.net
KEVIN W. BURKHART
Georgia Bar No. 327495
kevin@sloverlaw.net
*Attorneys for Plaintiff*

5901 Peachtree Dunwoody Rd.
Suite A220
Atlanta, Georgia 30328
P:  404-768-0292
F:  404-419-6011

# Exhibit C

DOH Inc.
DBA/TA Johnny's NY Style Pizza & Subs
3571 Haddon Hall Dr
Buford, GA 30519

EXHIBIT C



**PN 99 MU 06 04 21**

# ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSION

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.  You are hereby notified in accordance with the terms and conditions of your policy, and in accordance with law, that the coverage(s) applying to your policy will be changed as noted below.

This Notice provides information concerning the following new endorsement, which applies to your renewal policy being issued by us:

**BP 15 04 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception**

When this endorsement is attached to your policy:

- With respect to liability for Bodily Injury and Property Damage, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

- With respect to liability for Personal And Advertising Injury, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

If you have any questions or need additional information, we suggest you contact your agent.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

**Berkshire Hathaway**
**GUARD** Insurance Companies

PN 99 MU 07 05 21

# CYBER INCIDENT EXCLUSION ENDORSEMENT
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy. You are hereby notified in accordance with the terms and conditions of your policy, and in accordance with law, that the coverage(s) applying to your policy will be changed as noted below.

This Notice provides information concerning the following new endorsement which applies to your renewal policy being issued by us:

**BP 99 421 Cyber Incident Exclusion**

When this endorsement is attached to your policy, it generally excludes direct physical loss of or damage to Covered Property resulting from a cyber incident; however, if a cyber incident as described in this exclusion results in fire or explosion, we will pay for the loss or damage to Covered Property caused by that fire or explosion subject to the applicable limits of insurance.

This exclusion does not apply to the extent that coverage is provided in the:

- Additional Coverage – Electronic Data; or
- Additional Coverage – Interruption Of Computer Operations.

This exclusion also does not apply to the:

- Computer Fraud And Funds Transfer Fraud Endorsement;
- Cyber Suite Coverage Endorsement; or
- Data Compromise Coverage Endorsement;

if such endorsement(s) is attached to your policy.

If you have any questions or need additional information, we suggest you contact your agent.



**www.guard.com**

**In cooperation with
NORTH ATLANTA INSURANCE**

DOH Inc.
3571 Haddon Hall Dr
Buford, GA 30519

Policy Number: DOBP412038
Customer Number: 1565888
Insurance Company: NorGUARD Insurance Company
Effective Date: 01/05/2023

# Businessowner's Policy Renewal Offer

We are pleased to offer to renew your policy. The policy is underwritten by NorGUARD Insurance Company, a member of Berkshire Hathaway GUARD Insurance Companies.

**EASY ways to pay:**
1. **Online** via our **Policyholder Service Center (PSC) –** www.guard.com/psc/
2. By setting up automatic **Direct Draft** payments through the **PSC** > Billing & Payments section
3. Through our **BHGUARD mobile app –** Find us on the App Store and Google Play!
4. **By phone –** Call our Customer Service Center Monday through Friday, 8:00 AM to 7:30 PM at **800-673-2465 to pay via credit card or direct draft from your bank account.**

**Manage your policy online through our Policyholder Service Center (PSC) and BHGUARD mobile app.**
In addition to making payments, you can:
- view and print policy documents
- review our value-added services
- find information to report a claim (use our app to upload photos and documents)
- go paperless – set up electronic document delivery

If you haven't already done so, register now at **www.guard.com/pscregister**.

**Who to Contact**
- For coverage changes, policy provisions, etc. call your insurance agent at 770-271-5789.
- With questions about billing, claims, and other services, contact us by phone at 800-673-2465, fax at 570-823-2059, email at csr@GUARD.com, or chat with us online through our PSC.
- To report fraud or suspicious activity, contact our Fraud Investigative Unit at 800-673-2465, ext. 8477 (TIPS) or via email at fraudsiu@guard.com.
- To **Report a Claim 24/7,** call 888-NEW-CLMS.  Upload claims documents and photos using our mobile app or online at our PSC.

 If you are enrolled in direct draft, payroll billing, or any other type of automated billing, your payment will be sent to us automatically.  Otherwise, please review the payment options available above under **EASY ways to pay**.  A billing statement, sent separately, will have additional information.  Please note payment is required to maintain uninterrupted insurance coverage. **If payment is not received, this policy will be canceled in accordance with state law.**

We appreciate your business and look forward to serving your insurance needs for another year!

Register for our Policyholder Service
Center at www.guard.com/pscregister/
or download the BHGUARD app today!

   

enclosed:  Businessowner's Policy #DOBP412038

**The Security You Need.  The Name You Trust.**

HQ: GA /BP
DECTO I

CLAIMS
# Liability Incidents


Berkshire Hathaway
**GUARD** Insurance Companies



## Best-Practice Responses

Businesses of all types are at risk for liability exposure. Alleged or actual incidents related to a company's products, services, operations, or premises are common and can end up resulting in a liability claim or lawsuit. That's why General Liability insurance is important. However . . .

**<u>How</u> a business responds to a potential liability incident can have a significant impact on the outcome of the situation.**

While each scenario is unique, certain best practices can go a long way toward mitigating the severity and complexity of a claim. We offer some tips here.

___

### 1 - RESPOND PROMPTLY

- An immediate response to the situation is critical. Always be courteous, compassionate, and professional.

- For incidents involving criminal activity, significant property damage, severe injury, or death, call 911.

- If no injuries are apparent, ask the involved parties to kindly notify the company if medical attention is sought after the incident.

### Types of Liability Incidents

"Third parties" can include customers, suppliers, contractors, service providers, vendors, etc.

❯ **Accidental Injuries**
Ex: Third-party claim of injury due to a slip or fall on premise or being impacted by an object

❯ **Product Liability**
Ex: Third-party claim of an illness from consuming a company's product or injury due to a service provided

❯ **Property Damage**
Ex: Third-party claim of property damage while on premise or during the delivery of a company's goods or services

❯ **Reputational Damage**
Ex: Third-party claim of personal injury due to an invasion of privacy, slander or libel

___

Contact us: 📞 1-800-673-2465    @ csr@guard.com    🌐 www.guard.com

CLAIMS
# Liability Incidents



## 2 - SECURE THE SCENE

- Contain or establish some type of separation from any ongoing hazard or danger.

- Secure the scene; prevent any unauthorized entry.

- Preserve potential evidence, including damaged or defective equipment, products, or materials that might have been involved in the incident.

- Be careful not to hide, destroy, tamper with, or misrepresent facts of causation.

- Take pictures of the scene from different angles and before enacting any repairs.

- Retain any video surveillance.

  **IMPORTANT:  If video evidence is captured but then deleted or recorded over, it could be perceived as negligence (or that the alleged incident was caused by a business's actions and/or inactions).**

## 3 - IDENTIFY WITNESSES

- Identify individuals who may have witnessed the incident and ask about their willingness to help with the investigation.  NEVER detain anyone against their will.

- Do NOT place blame on employees or third parties.

- Collect contact information and statements from all willing and involved parties.

## 4 - COMPLETE AN INCIDENT REPORT

- Complete a report directly following an incident. (This should be part of company policy.)  Samples can be found online or obtained from us.  Keep the report on file in case a claim needs to be reported.

- Consider characteristics about the injured party that might have contributed to the accident (i.e., footwear, glasses, mental or physical condition).

- Note any service providers that may be responsible for conditions contributing to the incident (i.e., cleaning service, food supplier).

### Ways to Report a Claim



**Call 1-888-NEW-CLMS**
(1-888-639-2567)



Log into our *Policyholder Service Center* at guard.com/pscregister



Get the BHGUARD app from the App Store or Google Play



Visit guard.com to complete an online form

### Legal Correspondence

If legal documents such as a summons, complaint, or other type of notice is received, it should be immediately forwarded to the company's designated legal contact or whomever is responsible for risk management and insurance. NEVER ignore this type of correspondence and be sure we are aware of these documents when reporting the claim.



Liability insurance may be underwritten by AmGUARD Insurance Company®, AZGUARD® Insurance Company (non-admitted in CA and NY), or NorGUARD Insurance Company®, members of Berkshire Hathaway GUARD Insurance Companies ("GUARD") with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701.  The information contained herein is for informational purposes only, shall not be deemed as professional legal or other industry advice, and in no way replaces the terms and conditions of the insurance policy.  Any Liability Incident Report form being provided by GUARD or other entity is for convenience only and does not replace an insured's duties to promptly report a claim or fulfill any other obligation under the insurance contract. Completion of any liability incident report DOES NOT guarantee coverage or payment in the event of a liability claim.  All claims will be evaluated by GUARD upon submission. © 2022.

CLLI080322

# Liability Incident Report

(Designed for a business's use and record-keeping purposes.)

## COMPANY INFORMATION

Building Location: (if multi-site) _____    Manager/Supervisor on duty: _____

Phone/Cell #: _____    Email Address: _____

## CUSTOMER OR THIRD-PARTY INFORMATION

Name: _____

DOB: _____    Sex: ☐ male ☐ female    Est. Height: _____    Est. Weight: _____

Address: _____

Phone/Cell #: _____    Email Address: _____

## INCIDENT DETAILS

Date of Incident: _____    Time of Incident: _____    Location of Incident: _____

Resulted in: ☐ injury ☐ illness ☐ fatality ☐ property damage ☐ vehicle damage ☐ other (please explain below)

_____

Provide a brief description of the incident and resulting injuries and/or damages: _____

_____

_____

Check all that apply regarding the incident:

☐ vehicle        ☐ parking lot      ☐ sidewalk      ☐ steps/stairs    ☐ interior floor    ☐ wet floor

☐ bathroom       ☐ police           ☐ slip & fall   ☐ trip & fall     ☐ food spill        ☐ food borne illness

☐ chemical spill ☐ object in food   ☐ burn          ☐ altercation     ☐ equipment         ☐ furniture

☐ other: _____

List any environmental factors or unsafe conditions that may have contributed to the incident: (poor weather conditions, wet floor, etc.)

_____

_____

List any behavioral factors that may have contributed to the incident:  (reaching, running, under the influence of alcohol/drugs, shoes worn, etc.)

_____

_____

Cite any corrective actions that have been taken or can be taken in the future to prevent a reoccurrence of this incident:

_____

_____

Other Comments: _____

Please attach all media, cleaning, maintenance, or other schedules as pertinent.

## EMPLOYEE WITNESSES

Employee Witness (1) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Employee Witness (2) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Employee Witness (3) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

## MEDICAL INFORMATION

Treatment Needed:  ☐ none  ☐ minor/first-aid by employee  ☐ minor/transported to doctor/clinic  ☐ EMT/paramedic  ☐ hospital

List any physicians/medical providers who responded to the incident:  (name/address/phone number)

_____

_____

## OTHER WITNESSES/INVOLVED PARTIES

Witness (1) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Witness (2) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Witness (3) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Witness (3) Name: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

## PERSON COMPLETING THIS REPORT

Name: _____  Date of Report: _____

Address: _____

Phone/Cell #: _____  Email Address: _____

Reviewed by:  (name) _____  Date of Review: _____

## DOWNLOAD OUR MOBILE APP!
# Policyholder Service Center


Berkshire Hathaway **GUARD** Insurance Companies



*Register Today!*

**www.guard.com/ pscregister/**

## We value our policyholders, so we take advantage of technology to offer fast and easy online self-service solutions.

Available from www.guard.com/pscregister/ or mobile app, our *Policyholder Service Center* is the gateway to a wide range of resources used by our customers to manage their insurance with us. From reporting a claim to making a payment online to reviewing helpful loss control information, our service center is designed to offer convenient access to the tools you use most!

Our BHGUARD mobile app offers many of the same features with the latest technology always in mind. Get the app on Google Play or download from the Apple App Store, today! **Need help? Contact 1-800-673-2465 or csr@guard.com.**

### COVERAGE-SPECIFIC FEATURES

#### Workers' Compensation
- Find a physician
- Complete a premium audit
- Download state posting notices
- Implement a return-to-work program
- Report payroll (self-reporting policy)

#### Commercial Auto
- Access vehicle insurance ID cards
- View all vehicles under a policy

### ACCOUNT MANAGEMENT
- View and print policy documents
- Generate a Certificate of Insurance (COI)
- Download loss control materials
- Search our video library
- Chat online with a representative
- Go paperless
- Access other news and resources

### BILLING & PAYMENTS
- Make a credit card payment
- Transfer funds from your bank
- Submit multi-policy payments
- Set up re-occurring payments
- View billing history

### CLAIMS
- Report a new claim
- Upload photos and documents
- View policy loss history
- Monitor the status of a claim
- Chat with an adjuster

**Visit www.guard.com/pscregister/ or download the BHGUARD app today!**

Download the BHGUARD app  
POLICYHOLDER SERVICE CENTER

 

Some features and resources are only available for specific lines of insurance. Not all features may be currently available on the mobile app. Insurance is underwritten by AmGUARD Insurance Company®, AZGUARD™ Insurance Company (non-admitted in California), EastGUARD Insurance Company®, NorGUARD Insurance Company® or WestGUARD® Insurance Company, members of Berkshire Hathaway GUARD Insurance Companies ("GUARD") with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701.

SSPSC052721

## OUR SERVICES
# Claims Reporting


Berkshire Hathaway
GUARD Insurance Companies

We encourage policyholders to inform us of incidents, accidents, and potential claims as soon as possible so that we can get right to work! Prompt reporting can be key to a successful resolution. Only the administration of emergency care comes first.








### WAYS TO REPORT A CLAIM

**Call 1-888-NEW-CLMS**
(1-888-639-2567)

Log into our *Policyholder Service Center* at guard.com/pscregister

Get the BHGUARD app from the App Store or Google Play

Visit guard.com to complete an online form

### HELPFUL INFORMATION FOR EXPEDITING YOUR CLAIM

- Policy number
- Description of how, when, and where the incident occurred
- Names, addresses, phone numbers of any injured/involved parties or witnesses
- The insured driver's name, address, phone number (for Commercial Auto claims)
- The employer's tax ID number, the injured/ill employee's SSN and personnel file and any accident reports (for Workers' Compensation claims)
- Legal correspondence (for Liability claims)
- Special forms for Disability claims available on guard.com

### TIPS FOR CONTROLLING THE LOSS

❯ Take reasonable steps to protect any covered persons, property, autos, etc., from immediate further harm or damage and keep a record of any expenses incurred in the process for consideration in the settlement. If possible, set property aside for examination.

❯ Allow our adjusters to officially inspect the property/auto before any non-immediate repairs or disposition take place.

❯ Promptly notify the police of any stolen property or suspected illegal activity.

❯ Preserve any closed-circuit surveillance video.

❯ If possible, photograph the scene; cell phone pictures can be helpful.

### CONTACT US
**1-888-NEW-CLMS**
GUARDClaimsTeam@guard.com
Fax: 570-825-0611

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368

Insurance may be underwritten by AmGUARD Insurance Company®, AZGUARD™ Insurance Company, EastGUARD Insurance Company®, NorGUARD Insurance Company®, or WestGUARD® Insurance Company, members of Berkshire Hathaway GUARD Insurance Companies ("GUARD") with principal place of business at 39 Public Square, Wilkes-Barre, PA 18701. All claims will be evaluated upon submission. We will not pay for any subsequent loss or damage resulting from an occurrence that is not a "Covered Cause of Loss." Only the relevant insurance policy and endorsements can provide the actual terms and conditions for an insured. Some restrictions, all state laws, and all company claims/underwriting guidelines apply. © May 2021.

CLRP052721

## NUESTROS SERVICIOS
# Reporte de Reclamos



Alentamos a los tenedores de pólizas a que nos informen de incidentes, accidentes y reclamos potenciales lo antes posible, para que ponernos a trabajar inmediatamente. Una rápida denuncia puede ser importante para una resolución exitosa. Únicamente la administración de la atención de emergencias es más importante.

### FORMAS DE DENUNCIAR UN RECLAMO





**Llame al 1-888-NEW-CLMS**
(1-888-639-2567)



Regístrese en nuestro Centro de Servicio a tenedores de pólizas en guard.com/pscregister



Obtenga la aplicación BHGUARD en la App Store o de Google Play



Visite guard.com para completar el formulario online

### INFORMACIÓN ÚTIL PARA ACELERAR SU RECLAMO

- Número de póliza
- Descripción acerca de cómo, cuándo y dónde ocurrió el incidente
- Nombres, direcciones, números telefónicos de alguna de las partes involucradas/lesionadas o de testigos
- El nombre, dirección, número telefónico del conductor asegurado (para reclamos comerciales de vehículos)
- El número federal del negocio, el número de seguro social del empleado enfermo/lesionado y el archivo personal y cualquier denuncia de accidente (para el reclamo de indemnización del empleado)
- Correspondencia legal (para reclamos de responsabilidad)
- Formularios especiales para reclamos por discapacidad disponibles en guard.com

### CONSEJOS PARA CONTROLAR LAS PÉRDIDAS

❯ Dé pasos razonables para proteger a cualquier persona, propiedad, vehículos, etc. cubiertos, de un daño mayor o perjuicio inmediato y lleve un registro de cualquier gasto en el que incurra en el proceso para su consideración en el acuerdo. De ser posible, reserve la propiedad para su examen.

❯ Permita que nuestros ajustadores inspeccionen de manera oficial la propiedad/vehículo antes de dar lugar a cualquier reparación o disposición de carácter no inmediato.

❯ Notifique inmediatamente a la policía acerca de la propiedad robada o de sospecha de actividad ilegal

❯ Preserve cualquier video de circuito cerrado de vigilancia.

❯ De ser posible, tome fotografías de la escena; las fotos del teléfono celular pueden ser útiles.

### CONTÁCTENOS
**1-888-NEW-CLMS**
GUARDClaimsTeam@guard.com
Fax: 570-825-0611

Berkshire Hathaway GUARD
P.O. Box 1368
Wilkes-Barre, PA 18703-1368

El seguro podrá ser cubierto por AmGUARD Insurance Company®, EastGUARD Insurance Company®, NorGUARD Insurance Company®, WestGUARD® Insurance Company, o AZGUARD™ Insurance Company, miembros de las Compañías de Seguros Berkshire Hathaway GUARD (BHGIC) con sede central en 39 Public Square, Wilkes-Barre, PA 18701. Todos los reclamos serán evaluados una vez presentados. No pagaremos ninguna pérdida o daño sobreviniente como consecuencia de un incidente que no configure una «Causa de pérdida cubierta». Únicamente las pólizas de seguro y los endosos relevantes pueden proporcionar los términos y condiciones efectivos a un asegurado. Son aplicables algunas restricciones, todas las leyes estatales y todos los reclamos de empresas/guías de cobertura. © BHGIC 2020.

CFES052821



**Berkshire Hathaway GUARD** Insurance Companies

**BUSINESSOWNER'S POLICY DECLARATIONS**

### NorGUARD Insurance Company
### A Stock Company

**Issued:** 11/16/2022

**Policy No.:**
DOBP412038

**Renewal of:** DOBP388865

## POLICY INFORMATION PAGE

**[1]** **Named Insured and Mailing Address**
DOH Inc.
3571 Haddon Hall Dr
Buford, GA 30519

**Additional Names of Insured**
DBA Johnny's NY Style Pizza & Subs

**[2]** **Agency**
NORTH ATLANTA INSURANCE
3459 Lawrenceville Suwane Road
Suite A
Suwanee, GA 30024

**[3]** **Policy Period**
From January 5, 2023 to January 5, 2024 - expiring at 12:01 A.M., Standard Time at the insured's mailing address.

**[4]** **Description of Business**
Full-Service Restaurants

**[5]** **Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements (IIT SF 01 05)**.

**[6]** **Premium**
The premium shown below may be subject to adjustment.
Certified Acts of Terrorism
TOTAL POLICY PREMIUM
TOTAL PAYABLE



**[7]** **Payment of Premium**
In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued: 11/16/2022

**Policy No.:** DOBP412038                                         **Effective Date:** 01/05/2023

<div align="center">

**SECTION I – PROPERTY COVERAGES AND LIMITS OF INSURANCE**

</div>

**LOCATION: 001   BUILDING: 001**
**7363 Spout Springs Rd Ste 205A**
**Flowery Branch, GA 30542-5563**
**Hall County**

**Property Deductible: $1,000**
**Wind/Hail Deductible: Property Deductible**
**Optional Coverages/Glass Deductible: $500**
**Classification: 09201 - Pizza Shops w/ Deep Fat Frying**

**COVERAGES:**

**Awnings Coverage**

| | |
|---|---|
| Limit | $2,500 |

**Business Personal Property Coverage**

| | |
|---|---|
| Limit | $81,183 |
| Seasonal Increase Percent | 25 |
| Valuation | Replacement Cost |

**Tenants Improvements and Betterments**

| | |
|---|---|
| Limit | $40,000 |

**Liability**

| | |
|---|---|
| IMPORTANT NOTE | THIS COVERAGE IS RATED BASED ON AN ESTIMATE AND IS SUBJECT TO AUDIT |
| Gross Sales at this Location | $543,984 |
| Limit | Included |

**Accounts Receivable**

| | |
|---|---|
| On-Premises Limit | $25,000 |
| Off-Premises Limit | 25,000 |

**Debris Removal**

| | |
|---|---|
| Limit | 25%/$10,000 |

**Equipment Breakdown Coverage (HSB)**

| | |
|---|---|
| Inspection Contact Name | Scott Harr |
| Phone Number | 678-779-4601 |

**Money and Securities**

| | |
|---|---|
| On Premises Limit | $5,000 |
| Off Premises Limit | $5,000 |

**Ordinance or Law - Increased Cost Of Construction**

| | |
|---|---|
| Limit | $10,000 |

**Outdoor Property**

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued: 11/16/2022

**Policy No.:** DOBP412038      **Effective Date:** 01/05/2023

| | |
|---|---|
| Limit | $10,000 |
| **Outdoor Signs - Optional Coverage** | |
| Limit | $5,000 |
| **Restaurant Coverage** | |
| Endorsement Type | Standard |
| Food contamination Limit | $10,000 |
| Spoilage Per Occurrence Limit | $10,000 |
| Advertising Expense Limit | $3,000 |
| **Valuable Papers and Records** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | $25,000 |
| **Water Back-up and Sump Overflow** | |
| Covered Property Limit | $10,000 |
| Business Income and Extra Expense Limit | $10,000 |

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  11/16/2022

**Policy No.:**  DOBP412038                                    **Effective Date:**  01/05/2023

### SECTION II – LIABILITY COVERAGES AND LIMITS OF INSURANCE

**Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period.  Please refer to Section II – Liability in the Businessowners Coverage form and any attached endorsements.**

| Coverage | Limits of Insurance |
|---|---|
| Liability and Medical Expenses - Each Occurrence | $1,000,000 |
| General Aggregate (Other than Products and Completed Operations) | $2,000,000 |
| Personal & Advertising Injury | Included |
| Products & Completed Operations Aggregate | $2,000,000 |
| Medical Expenses (Each Person) | $5,000 |
| Liability Property Damage Deductible | 0 |
| Liability Deductible - Bodily Injury | None |

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued: 11/16/2022

**Policy No.:** DOBP412038                                      **Effective Date:** 01/05/2023

### POLICY WIDE COVERAGES AND LIMITS OF INSURANCE

**Appurtenant Structures**

| | |
|---|---|
| Limit | $50,000 combined Building/BPP |

**Business Income & Extra Expense**

| | |
|---|---|
| Limit | ALS UP TO 12 MONTHS |

**Business Income Options**

| | |
|---|---|
| Number of Hours Deductible | 72 |
| Extended Business Income Number of Days | 30 |
| Ordinary Payroll Expenses Number of Days | 60 |

**Damage To Premises Rented To You**

| | |
|---|---|
| Limit | $300,000 |

**Electronic Data**

| | |
|---|---|
| Limit | $10,000 |

**Employee Dishonesty**

| | |
|---|---|
| Limit | 10000 |

**Employment-related Practices Liability**

| | |
|---|---|
| Limit | $100,000 |
| Deductible | 500 |
| Retroactive Date | 01/05/2019 |
| Policy Classification | Restaurant |
| Number of Employees | 8 |
| Prior or Pending Litigation Date | 01/05/2019 |
| Malicious Prosecution | 1 |

**Fire Department Service Charge**

| | |
|---|---|
| Limit | 25000 |

**Fire Extinguisher Systems Recharge Expense**

| | |
|---|---|
| Limit | $5,000 |

**Forgery or Alteration**

| | |
|---|---|
| Limit | 10000 |

**Fungi, Wet Rot, Dry Rot & Bacteria (Mold)**

| | |
|---|---|
| Property Limit | $15,000 |
| Business Income/EE Number of Days | 30 |
| Fungi or Bacteria Property Damage Aggregate Limit | $50,000 |

**Glass Expense**

| | |
|---|---|
| Limit | Actual Loss Sustained |

**Hired Automobile**

| | |
|---|---|
| Limit | Included in Liability Limit |

**Interruption of Computer Operations**

| | |
|---|---|
| Limit | $10,000 |

**Liquor Liability**

| | |
|---|---|
| Liquor Liability Option | Liquor Liability Coverage |
| Common Cause Limit | $1,000,000 |
| Aggregate Limit | $2,000,000 |
| Gross Annual Liquor Receipts | $24,000 |
| IMPORTANT NOTE | THIS COVERAGE IS RATED BASED ON AN ESTIMATE AND IS SUBJECT TO AUDIT |

**Loss by Theft of furs, fur garments, garments trimmed with fur**

| | |
|---|---|
| Limit | $2,500 |

**Loss by Theft of jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals**

| | |
|---|---|
| Limit | $5,000 |

**Loss by Theft of patterns, dies, molds and forms**

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued:  11/16/2022

**Policy No.:**  DOBP412038                                    **Effective Date:**  01/05/2023

| | |
|---|---|
| Limit | $2,500 |
| **Money Orders and "Counterfeit Money"** | |
| Limit | $1,000 |
| **Newly Acquired Or Constructed Property - Buildings** | |
| Limit | 25% of Building Limit/Not more than $500,000/Bldg |
| **Newly Acquired Or Constructed Property - Business Personal Property** | |
| Limit | $250,000 |
| **Non-owned Automobile** | |
| Exposure | Without Delivery Service |
| **Personal Effects** | |
| Limit | $5,000 |
| **Personal Property Off Premises** | |
| Limit | $10,000 |
| **Pollutant Clean Up and Removal** | |
| Limit | $10,000 |
| **Preservation of Property** | |
| Limit | Within 30 Days |
| **Terrorism** | |
| Certified Acts | INC |

**IIT DS 10 21**

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued: 11/16/2022

**Policy No.:** DOBP412038                    **Effective Date:** 01/05/2023

## Policy Payment Terms

Payment Option: Direct Bill

Payment is due in our office on the
dates shown below.

Installment Plan
(prepared 11-16-2022)

Down Payment received - $0.00

| Installments* | | Due Date |
|---|---|---|
| | ████████ | 01/04/2023 |
| | ████████ | 02/05/2023 |
| | ████████ | 03/08/2023 |
| | ████████ | 04/05/2023 |
| | ████████ | 05/06/2023 |
| | ████████ | 06/07/2023 |
| | ████████ | 07/06/2023 |
| | ████████ | 08/05/2023 |
| | ████████ | 09/06/2023 |
| | ████████ | 10/06/2023 |
| | ████████ | 11/05/2023 |

*Includes surcharges and state fees, if any.
Policies that are direct billed will be charged a fee of up to
$7.00 per installment. There is no installment fee for
policies set up with Direct Draft.

Any checks returned or attempted bank drafts declined
for insufficient funds or a closed account may be
assessed a fee of up to $20.00.

A late fee may be assessed of up to $10.00 for payments
received after the due date.

A convenience fee of up to $7.00 will be added to credit
card payments.

BP IN 01 01 10

# BUSINESSOWNER'S COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 21 | Business Liability Coverage | 30-32 |
| Accounts Receivable Coverage Extension | 14 | Business Personal Property Coverage | 1 |
| Accounts Receivable Exclusion | 20 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 20-21 |
| Acts Or Decisions Exclusion | 19 | Cancellation Condition | 46 |
| Additional Coverages | 3-12 | Certain Computer-related Losses Exclusion | 16-17 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 19 | Changes Condition | 46 |
| "Advertisement" Definition | 42 | Changes In Or Extremes Of Temperature Exclusion | 18 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 41 | Civil Authority Additional Coverage | 7-8 |
| Aircraft, Auto Or Watercraft Exclusion | 35 | Collapse Additional Coverage | 4-5 |
| Appraisal Property Loss Condition | 21 | Collapse Exclusion | 18 |
| "Auto" Definition | 42 | "Computer" Definition | 28 |
| Bankruptcy General Condition | 41 | Concealment, Misrepresentation Or Fraud Condition | 46 |
| "Bodily Injury" Definition | 42 | Consequential Losses Exclusion | 17 |
| Building Coverage | 1 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 19 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 20 | Contractual Liability Exclusion | 33 |
| Business Income Additional Coverage | 5-7 | Control Of Property General Condition | 25 |
| Business Income And Extra Expense Exclusions | 19-20 | "Counterfeit Money" Definition | 29 |
| Business Income From Dependent Properties Additional Coverage | 9-10 | Coverage Extension – Supplementary Payments (Business Liability Coverage) | 31-32 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extensions – Section **I** – Property | 12-14 | Errors Or Omissions Exclusion | 19 |
| "Coverage Territory" Definition | 42 | Examination Of Your Books And Records Condition | 46 |
| Covered Causes Of Loss | 2 | Exclusions – Section **I** – Property | 14-20 |
| Covered Property | 1 | Exclusions – Section **II** – Liability | 32-40 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 36 | "Executive Officer" Definition | 43 |
| Damage To Property Exclusion | 36 | Expected Or Intended Injury Exclusion | 33 |
| Damage To Your Product Exclusion | 36 | Exposed Property Exclusion | 18 |
| Damage To Your Work Exclusion | 36 | Extended Business Income Coverage (Business Income Additional Coverage) | 6-7 |
| Dampness Or Dryness Of Atmosphere Exclusion | 18 | Extra Expense Additional Coverage | 7 |
| Debris Removal Additional Coverage | 3-4 | False Pretense Exclusion | 18 |
| Deductibles | 21 | Fire Department Service Charge Additional Coverage | 4 |
| Dishonesty Exclusion | 17-18 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 10 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 21-22 | Forgery Or Alteration Additional Coverage | 8 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 41-42 | Frozen Plumbing Exclusion | 17 |
| Earth Movement Exclusion | 15 | "Fungi" Definition | 29 |
| Electrical Apparatus Exclusion | 17 | "Fungi", Wet Rot Or Dry Rot Exclusion | 17 |
| Electrical Disturbance Exclusion | 19 | Glass Expenses Additional Coverage | 10 |
| Electronic Data Additional Coverage | 10-11 | Governmental Action Exclusion | 15 |
| "Electronic Data" Definition | 29 | "Hostile Fire" Definition | 43 |
| Electronic Data Exclusion | 38 | "Impaired Property" Definition | 43 |
| "Employee" Definition | 42 | Increased Cost Of Construction Additional Coverage | 8-9 |
| Employee Dishonesty Optional Coverage | 26-27 | Inspections And Surveys Condition | 47 |
| Employer's Liability Exclusion | 33 | Insurance Under Two Or More Coverages Condition | 47 |
| Equipment Breakdown Protection Optional Coverage | 28-29 | "Insured Contract" Definition | 43 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Installation, Testing, Repair Exclusion | 19 | Money Orders And "Counterfeit Money" Additional Coverage | 8 |
| Interruption Of Computer Operations Additional Coverage | 11 | Mortgageholders Property General Condition | 25 |
| "Leased Worker" Definition | 43 | Neglect Exclusion | 18 |
| Legal Action Against Us General Condition Section II – Liability | 42 | Negligent Work Exclusion | 19 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 22 | Nesting Or Infestation Exclusion | 18 |
| Liability And Medical Expenses Definitions | 42-45 | Newly Acquired Or Constructed Property Coverage Extension | 13 |
| Liability And Medical Expenses General Conditions | 41-42 | No Benefit To Bailee Property General Condition | 25 |
| Liability And Medical Expenses Limits Of Insurance | 41 | Nuclear Energy Liability Exclusion | 38-40 |
| Liberalization Condition | 47 | Nuclear Hazard Exclusion | 15 |
| Limitations | 2-3 | "Occurrence" Definition | 44 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 11-12 | "Operations" Definition | 29 |
| Limits Of Insurance – Section I – Property | 20 | Optional Coverages | 25-29 |
| Liquor Liability Exclusion | 33 | Ordinance Or Law Exclusion | 15 |
| "Loading Or Unloading" Definition | 43 | Other Insurance Condition | 47 |
| Loss Payment Property Loss Condition | 22-24 | Other Types Of Loss Exclusion | 18 |
| "Manager" Definition | 29 | Outdoor Property Coverage Extension | 13 |
| Marring Or Scratching Exclusion | 18 | Outdoor Signs Optional Coverage | 25-26 |
| Mechanical Breakdown Exclusion | 18 | "Period Of Restoration" Definition | 29 |
| Medical Expenses Coverage | 32-33 | "Personal And Advertising Injury" Definition | 44 |
| Medical Expenses Exclusions | 38-40 | Personal And Advertising Injury Exclusion | 37 |
| "Member" Definition | 29 | Personal Effects Coverage Extension | 13 |
| "Mobile Equipment" Definition | 43-44 | Personal Property Off-premises Coverage Extension | 13 |
| Mobile Equipment Exclusion | 35 | Policy Period, Coverage Territory Property General Condition | 25 |
| Money And Securities Optional Coverage | 26 | Pollutant Clean-up And Removal Additional Coverage | 7 |
| "Money" Definition | 29 | "Pollutants" Definition – Section I – Property | 29 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| "Pollutants" Definition – Section **II** – Liability | 44 | "Specified Causes Of Loss" Definition | 30 |
| Pollution Exclusion – Section **I** – Property | 18 | Steam Apparatus Exclusion | 17 |
| Pollution Exclusion – Section **II** – Liability | 33-35 | "Stock" Definition | 30 |
| Premium Audit Condition | 47-48 | "Suit" Definition | 45 |
| Premiums Condition | 47 | "Temporary Worker" Definition | 45 |
| Preservation Of Property Additional Coverage | 4 | Transfer Of Rights Of Recovery Against Others To Us Condition | 48 |
| "Products-completed Operations Hazard" Definition | 44-45 | Transfer Of Your Rights And Duties Under This Policy Condition | 48 |
| Professional Services Exclusion | 35-36 | Utility Services Exclusion | 15-16 |
| "Property Damage" Definition | 45 | Vacancy Property Loss Condition | 24-25 |
| Property Definitions | 29-30 | Valuable Papers And Records Coverage Extension | 14 |
| Property General Conditions | 25 | "Valuable Papers And Records" Definition | 30 |
| Property Loss Conditions | 21-25 | Violation Of Customer Protection Statutes Exclusion | 38 |
| Property Not Covered | 2 | Virus Or Bacteria Exclusion | 17 |
| Recall Of Products, Work Or Impaired Property Exclusion | 37 | "Volunteer Worker" Definition | 45 |
| Recovered Property Loss Condition | 24 | War And Military Action Exclusion | 16 |
| Resumption Of Operations Property Loss Condition | 24 | War Exclusion | 35 |
| Rust Or Other Corrosion Exclusion | 18 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 5 |
| Section **I** – Property | 1-30 | Water Exclusion | 16 |
| Section **II** – Liability | 30-45 | Wear And Tear Exclusion | 18 |
| Section **III** – Common Policy Conditions | 46-48 | Weather Conditions Exclusion | 19 |
| "Securities" Definition | 29 | Who Is An Insured | 40-41 |
| Separation Of Insureds General Condition | 42 | Workers' Compensation And Similar Laws Exclusion | 33 |
| Settling, Cracking, Shrinking Or Expansion Exclusion | 18 | "Your Product" Definition | 45 |
| Smog Exclusion | 18 | "Your Work" Definition | 45 |
| Smoke, Vapor, Gas Exclusion | 17 | | |

# BUSINESSOWNER'S COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**BUSINESSOWNER'S POLICY**

2. **Property Not Covered**

   Covered Property does not include:

   a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

   b. "Money" or "securities" except as provided in the:

      (1) Money And Securities Optional Coverage; or

      (2) Employee Dishonesty Optional Coverage;

   c. Contraband, or property in the course of illegal transportation or trade;

   d. Land (including land on which the property is located), water, growing crops or lawns;

   e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

      (1) Outdoor Property Coverage Extension; or

      (2) Outdoor Signs Optional Coverage;

   f. Watercraft (including motors, equipment and accessories) while afloat;

   g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

   h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

   i. "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software.

   j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

3. **Covered Causes Of Loss**

   Risks of direct physical loss unless the loss is:

   a. Excluded in Paragraph **B.** Exclusions in Section **I**; or

   b. Limited in Paragraph **4.** Limitations in Section **I.**

4. **Limitations**

   a. We will not pay for loss of or damage to:

      (1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

      (2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

      (3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

      (4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

      (5) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

         (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

         (b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

      (1) Animals, and then only if they are killed or their destruction is made necessary.

      (2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

         (a) Glass that is part of the exterior or interior of a building or structure;

         (b) Containers of property held for sale; or

    **(c)** Photographic or scientific instrument lenses.

  **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

    **(1)** $2,500 for furs, fur garments and garments trimmed with fur.

    **(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

  **a. Debris Removal**

    **(1)** Subject to Paragraphs **(3)** and **(4),** we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)** Debris Removal does not apply to costs to:

      **(a)** Extract "pollutants" from land or water; or

      **(b)** Remove, restore or replace polluted land or water.

    **(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

      **(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      **(b)** Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

  **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

  **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| | ($10,000 is 20% of $50,000) |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense | $ 30,000 |

Debris Removal Expense Payable

| | | |
|---|---|---|
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b);**

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

**BUSINESSOWNER'S POLICY**

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you rent, lease or occupy; and

**(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

  **i.** Officers;

  **ii.** Executives;

  **iii.** Department Managers;

  **iv.** Employees under contract; and

  **v.** Additional Exemptions shown in the Declarations as:

    ● Job Classifications; or

    ● Employees.

**(ii)** Include:

  **i.** Payroll;

  **ii.** Employee benefits, if directly related to payroll;

  **iii.** FICA payments you pay;

  **iv.** Union dues you pay; and

  **v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

  **i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

  **ii.** 30 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**BUSINESSOWNER'S POLICY**

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** – Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**BUSINESSOWNER'S POLICY**

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5),** does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than

**BUSINESSOWNER'S POLICY**

fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I** – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(c) Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(3) **Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

b. **Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

c. **Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

d. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

(1) Tools or equipment used in your business; or

(2) Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**BUSINESSOWNER'S POLICY**

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**BUSINESSOWNER'S POLICY**

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above results in a "specified cause of loss" under Section **I –** Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.;**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1),** such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**BUSINESSOWNER'S POLICY**

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

  **(a)** An abrupt falling down or caving in;

  **(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.,** does not apply:

  **(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** The "specified causes of loss";

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

  **(a)** Dampness or dryness of atmosphere;

  **(b)** Changes in or extremes of temperature; or

  **(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion.

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**BUSINESSOWNER'S POLICY**

(2) Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section **I** – Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section **I** – Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

**a.** In accordance with Paragraph **C.4.b.,** the Limit of Insurance for Buildings will automatically increase by 8%, unless a different

percentage of annual increase is shown in the Declarations.

**b.** The amount of increase is calculated as follows:

(1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by:

(a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

(b) .08, if no percentage of annual increase is shown in the Declarations; and

(2) Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example:**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph **5.b.,** the Limit of Insurance for Business Personal Property is automatically increased by:

(1) The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

(2) 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a** will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

   **a.** Money and Securities;

   **b.** Employee Dishonesty;

   **c.** Outdoor Signs; and

   **d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

   **a.** Fire Department Service Charge;

   **b.** Business Income;

   **c.** Extra Expense;

   **d.** Civil Authority; and

   **e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

   **(1)** Notify the police if a law may have been broken.

   **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

   **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

   **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

   **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

   **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

   **(8)** Cooperate with us in the investigation or settlement of the claim.

   **(9)** Resume all or part of your "operations" as quickly as possible.

**BUSINESSOWNER'S POLICY**

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

### 5. Loss Payment

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section **I** − Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**BUSINESSOWNER'S POLICY**

    (iii) An amount to allow for probable bad debts that you are normally unable to collect; and

    (iv) All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

        **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

        **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

            **(ii)** Used by the building owner to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        **(a)** Vandalism;

        **(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section **I** – Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

**BUSINESSOWNER'S POLICY**

      **(1)** Owned by you; or

      **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.,** Covered Causes Of Loss, and Paragraph **B.,** Exclusions in Section **I** – Property, do not apply to this Optional Coverage, except for:

      **(1)** Paragraph **B.1.c.,** Governmental Action;

      **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

      **(3)** Paragraph **B.1.f.,** War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

      **(1)** Wear and tear;

      **(2)** Hidden or latent defect;

      **(3)** Rust;

      **(4)** Corrosion; or

      **(5)** Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

      **(1)** Theft, meaning any act of stealing;

      **(2)** Disappearance; or

      **(3)** Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section **I** – Property, we will not pay for loss:

      **(1)** Resulting from accounting or arithmetical errors or omissions;

      **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

      **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

      **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

         **(a)** In or on the described premises; or

         **(b)** Within a bank or savings institution; and

      **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

  **d.** All loss:

      **(1)** Caused by one or more persons; or

      **(2)** Involving a single act or series of related acts;

    is considered one occurrence.

  **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

  **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

      **(1)** Cause you to sustain loss or damage; and also

      **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

         **(a)** Any employee; or

         **(b)** Any other person or organization.

  **b.** We will not pay for loss or damage:

      **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

      **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

         **(a)** Whether acting alone or in collusion with other persons; or

         **(b)** While performing services for you or otherwise.

      **(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**BUSINESSOWNER'S POLICY**

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2), Limitations,** do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

**(1)** Paragraph **B.2.a. Electrical Apparatus;**

**(2)** Paragraph **B.2.d. Steam Apparatus;** and

**(3)** Paragraph **B.2.l.(6) Mechanical Breakdown.**

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense,** if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or re-instatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, me-chanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the sus-pension will be effective even if we have not yet made or offered a refund.

## H. Property Definitions

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that pro-vides communication, including input and output functions such as printing and auxil-iary functions such as data transmission.

"Computer" does not include those used to op-erate production type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, re-ferred to in the foregoing description of elec-tronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or re-leased by fungi.

**5.** "Manager" means a person serving in a direc-torial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership inter-est, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Busi-ness Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described prem-ises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be re-paired, rebuilt or replaced with rea-sonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of any or-dinance or law that:

**(1)** Regulates the construction, use or re-pair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and non-negotiable instruments or contracts represent-ing either "money" or other property and in-cludes:

**BUSINESSOWNER'S POLICY**

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

12. "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

13. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

14. "Valuable papers and records" means inscribed, printed or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

**SECTION II – LIABILITY**

**A. Coverages**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension – Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**BUSINESSOWNER'S POLICY**

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**i.** Cooperate with us in the investigation, settlement or defense of the "suit";

**ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**iii.** Notify any other insurer whose coverage is available to the indemnitee; and

**iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**i.** Obtain records and other information related to the "suit"; and

**ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments

will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**BUSINESSOWNER'S POLICY**

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property dam-

age" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**BUSINESSOWNER'S POLICY**

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**COVERAGE FORM**

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**BUSINESSOWNER'S POLICY**

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is re-quired to maintain financial protec-tion pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to in-demnity from the United States of America, or any agency thereof, un-der any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous prop-erties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bod-ily injury" or "property damage" resulting from the "hazardous properties" of the "nu-clear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an in-sured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time pos-sessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an in-sured of services, materials, parts or equipment in connection with the plan-ning, construction, maintenance, opera-tion or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or pos-sessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioac-tive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of ura-nium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packag-ing "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloy-ing of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equip-ment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations con-ducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source mate-rial", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fis-sion in a self-supporting chain reaction or to contain a critical mass of fission-able material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**BUSINESSOWNER'S POLICY**

**(10)** "Waste" means any waste material:

  **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

  **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

  **1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

  **2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

  **(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

  you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

  **a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

  **b.** "Personal and advertising injury" sustained by any one person or organization;

  is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

  The most we will pay for:

  **a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

  **b.** All:

   **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **(2)** Plus medical expenses;

   **(3)** Plus all "personal and advertising injury" caused by offenses committed;

   is twice the Liability and Medical Expenses limit.

  Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

  The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

**BUSINESSOWNER'S POLICY**

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II** – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**BUSINESSOWNER'S POLICY**

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**BUSINESSOWNER'S POLICY**

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

      (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

### D. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## E. Inspections And Surveys

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## F. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. Other Insurance

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** – Property.

**2.** Business Liability Coverage is excess over:

**a.** Any other insurance that insures for direct physical loss or damage; or

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

## I. Premiums

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**BUSINESSOWNER'S POLICY**

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**BUSINESSOWNERS POLICY
DECLARATIONS**

Issued: 11/16/2022

**Policy No.:** DOBP412038           **Effective Date:** 01/05/2023

**SCHEDULE OF FORMS AND ENDORSEMENTS**

| Form Number | Title |
|---|---|
| PN 99 MU 06 04 21 | Access or Disclosure Notice |
| PN 99 MU 07 05 21 | Cyber Incident Exclusion Notice |
| IIT DS 10 21 | Businessowners Policy Declarations |
| BP 00 03 01 10 | Businessowners Coverage Form |
| BP IN 01 01 10 | Businessowners Coverage Form Index |
| END SCHD | Schedule Of Forms And Endorsements |
| IL 99 00 08 13 | Authorization and Attestation |
| IL P 001 01 04 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholder |
| PN 99 MU 01 08 19 | Renewal Notice Regarding Exposure Basis |
| PRIV POL | Privacy Policy |
| BP 99 GA 01 18 | GA Policy Customizations |
| BP 01 76 02 15 | Georgia Changes |
| BP 01 99 10 13 | Georgia Changes - Loss Payment |
| BP 04 02 01 06 | Additional Insured - Managers or Lessors of Premises |
| BP 04 04 01 10 | Hired Auto And Non-owned Auto Liability |
| BP 04 12 04 17 | Limitation of Coverage to Designated Premises, Project or Operation |
| BP 04 48 01 06 | Additional Insured - Designated Person or Organization |
| BP 04 89 01 10 | Liquor Liability Coverage |
| BP 04 97 01 06 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| BP 05 01 07 02 | Calculation Of Premium |
| BP 05 15 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 38 01 15 | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap On Losses From Certified Acts Of Terrorism |
| BP 05 88 01 10 | Georgia Limited Fungi Or Bacteria Coverage (Liability) - Small Businesses Endorsement |
| BP 14 88 07 13 | Primary and Noncontributory - Other Insurance Condition |
| BP 15 04 05 14 | Exclusion – Access or Disclosure of Confidential or Personal Information and Data-related Liability - With Limited Bodily Injury Exception |
| BP 99 01 01 19 | Restaurants |
| BP 99 04 01 10 | Equipment Breakdown Coverage |
| BP 99 13 01 10 | Employment-Related Practices Liability Endorsement |
| BP 99 188 06 16 | Deductible Endorsement - Property |
| BP 99 421 03 21 | Cyber Incident Exclusion |
| BP 99 60 03 12 | Water Back-up and Sump Overflow |
| BP 99 64 03 12 | Business Income Changes - Time Period |

**THIS ENDORSEMENT AUTHORIZES THE POLICY.**

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the GUARD insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy. If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

Matthew O'Connor
General Counsel and Secretary

Sy Foguel, ACAS, FILAA
Chief Executive Officer and President

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004



PN 99 MU 01 08 19

# Important Renewal Information for Policyholders Regarding
# Your Sales/Payroll figures

We have automatically adjusted the sales or payroll by 4% which was used to calculate your liability insurance premium in order to more accurately reflect your exposures.

Please review your policy, if you have a more accurate estimate of this year's sales or payroll please contact your agent to adjust accordingly.



**Berkshire Hathaway GUARD** Insurance Companies

P.O. Box A-H
**Wilkes-Barre, PA 18703-0020**
**570-825-9900**
**800-673-2465**
**www.guard.com**

# PRIVACY POLICY

Rev. February, 2020

## WHAT DO BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

| **FACTS** | Berkshire Hathaway GUARD Insurance Companies include:  AmGUARD Insurance Company, AZGUARD Insurance Company, EastGUARD Insurance Company, NorGUARD Insurance Company, WestGUARD Insurance Company, GUARDCo., Inc., (a medical management affiliate). |
|---|---|
| **Why?** | Financial Companies choose how they share your personal information.  Federal and State law gives consumers the right to limit some, but not all, sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend upon the product or service you have with us. This information can include:<br>• **Social Security Number, date of birth, driving record, income**<br>• **Credit history, credit-based insurance scores, insurance claim history, payment history**<br>When you are no longer our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies may need to share customers' personal information to run their everyday business. In the section below, we list the reasons insurance companies share their customers' personal information; the reasons we choose to share; and whether you can limit this sharing. |

| **REASONS WE CAN SHARE YOUR PERSONAL INFORMATION** | **Does Berkshire Hathaway GUARD share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes–**<br>such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, comply with government agency examinations/procedures, or report your creditworthiness. | Yes | No |
| **For our marketing/processing purposes–**<br>to offer our products and services to you.<br>(We may also disclose information received from you with companies that perform services for us.) | Yes | No |
| **For our affiliates' everyday business purposes–**<br>information about your transactions and experiences. | Yes | No |
| **For our affiliates' everyday business purposes–**<br>information about your creditworthiness. | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | Yes | Yes |

| **To limit our sharing** | Call Customer Service at 1-800-673-2465 or visit us online at www.guard.com/privacy/.<br><br>Please note: If you are a new customer, we can begin sharing your information 30 days from the date we provided this notice.  When you are no longer our customer, we continue to share your information as described in this notice in accordance with applicable law. However, you can contact us at any time to limit our sharing in accordance with the table above. |
|---|---|
| **Questions?** | Call Customer Service at 1-800-673-2465. |

Includes Copyrighted Material of the National Association of Insurance Commissioners

**PAGE 2**

| Who we are | |
| --- | --- |
| **Who is providing this notice?** | Berkshire Hathaway GUARD Insurance Companies (including property and casualty licensees AmGUARD Insurance Company, AZGUARD Insurance Company, NorGUARD Insurance Company, EastGUARD Insurance Company, and/or WestGUARD Insurance Company as well as GUARDCo, Inc.) is providing this notice. References in this form to "us", "we" or "our" refers to these companies. |

| What we do | |
| --- | --- |
| **How do we protect your personal information?** | To protect your personal information from unauthorized access and use, we implement security measures that comply with applicable law. These measures include computer safeguards and secured files and buildings. |
| **How do we collect your personal information?** | We collect your personal information, for example, when you:<br>• apply for insurance<br>• pay insurance premiums<br>• file an insurance claim<br>• give us your income information<br>• give us your contact information.<br><br>We also collect your personal information from others (such as credit bureaus, affiliates, or other companies) including, for example, from:<br>• your insurance agent or producer<br>• your transactions with our affiliates listed below or other consumer reporting agencies. |
| **Why can't I limit all sharing?** | Applicable law gives you the right to limit only:<br>• sharing for affiliates everyday business purposes – information about your creditworthiness and insurability<br>• affiliates from using your information to market to you<br>• sharing for non-affiliates to market to you. |
| **What happens when I limit sharing for a policy I hold jointly with someone else?** | Your choices will apply to everyone on your policy. |

| Definitions | |
| --- | --- |
| *Affiliates* | Companies (other than the companies identified in "Facts" above) that are related to us by common ownership or control of Berkshire Hathaway Inc. Affiliates can be financial and nonfinancial companies. |
| *Non-affiliates* | Companies not related to us by common ownership or control, which can be financial and nonfinancial companies. |
| *Marketing* | The promotion or advertising of insurance products or services to you. Marketing partners may include, but are not limited to, insurance licensees such as insurance agents appointed by us or their affiliates. |

| Other Important Information |
| --- |
| **Important Information about Credit Reporting:** We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report. |
| **For California Residents:** If you opt out, we will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account. Please visit www.guard.com/privacy-policy/ to review our California Privacy Policy. |
| **For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. |

Includes Copyrighted Material of the National Association of Insurance Commissioners          BHGIC-672-02-20

<div align="right">

**BUSINESSOWNER'S**
**BP 99 GA 01 18**

</div>

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GA POLICY CUSTOMIZATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

The following is a summary of the coverages and limits provided by this endorsement.  For complete details on specific coverages, see the applicable coverage wording.  The limits of insurance stated in this endorsement apply unless higher limits are shown in the Declarations.

### SCHEDULE OF LIMIT CHANGES
#### Section I – Property

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Accounts Receivable | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |
| Appurtenant Structures | n/a | $50,000 |
| Awnings | Included in Building Limit | $2,500 |
| Business Income Dependent Properties | | |
|     Within 1,000 feet of premises | Included in Dependent Properties | $2,500 |
| Civil Authority – Curfew | Included in Civil Authority | $5,000 |
| Employee Dishonesty | Optional | $10,000 |
| Fire Department Service Charge | $2,500 | $25,000 |
| Forgery Or Alteration | $2,500 | $10,000 |
| Loss or Damage by Theft | | |
|     Jewelry, Watches, etc. | $2,500 | $5,000 |
| Newly Acquired Or Constructed Property | | |
|     Buildings | $250,000 | 25% Buildings Limit/<br>$500,000 each Building |
|     Business Personal Property | $100,000 | $250,000 |
| Outdoor Property / any one tree, shrub or plant | $2,500 / $500 | $10,000 / $1,000 |
| Outdoor Signs | Optional | $5,000 |
| Personal Effects | $2,500 | $5,000 |
| Premises Boundary Increased | 100 feet | 1,000 feet |
| Valuable Papers And Records | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |

#### Section II – Liability

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Supplementary Payments - Cost Of Bail Bonds | $250 | $1,000 |
| Supplementary Payments - Loss Of Earnings | $250 | $500/day |

---

**GA POLICY CUSTOMIZATIONS**

Any reference in **Section I — Property** of the Businessowner's Coverage Form to within 100 feet of the described premises is amended to read within 1,000 feet of the described premises.

**Section I – Property, A.1., Covered Property** is amended as follows:

    **1.** The following is added to Paragraph **a.**

        **(7)** Building Glass, meaning glass that is part of a building or structure.

**Section I – Property, A.4., Limitations** is amended as follows:

    **1.** Paragraph **b.(2)** is deleted.

    **2.** Paragraph **c.** is deleted and replaced with the following:

        **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

            **(1)** $2,500 for furs, fur garments and garments trimmed with fur.

            **(2)** $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item.

            **(3)** $2,500 for patterns, dies, molds and forms.

    **3.** Paragraph **d.** is added:

        **d.** For loss or damage by any covered cause of loss, we will only pay up to $2,500 per occurrence for awnings.

**Section I – Property, A.5., Additional Coverages** is amended as follows:

    **1.** Paragraph **c. Fire Department Service Charge** is replaced with the following:

    When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

        **(1)** Assumed by contract or agreement prior to loss; or

        **(2)** Required by local ordinance.

    **2.** The following is added to Paragraph **i. – Civil Authority**:

The most we will pay for loss of Business Income or Extra Expense caused by a reduction in your normal hours of operation required to comply with an action of civil authority that imposes a curfew in the area in which the premises are located is $5,000.

    **3.** Paragraph **k. - Forgery Or Alteration -** Paragraph **(4)** is replaced with the following:

        **(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000, unless a higher Limit of Insurance is shown in the Declarations.

    **4.** Paragraph **A.5.m. Business Income From Dependent Properties** in **Section I – Property** is amended as follows:

        **a.** Paragraph **(1)** is deleted and replaced with the following:

            **(1)** We will pay for the actual loss of Business Income you sustain due to a direct result of physical loss or damage at the premise of a dependent property caused by or resulting from any Covered Cause of Loss.

            However, this Additional Coverage does not apply to loss of Business Income incurred as a result of unfavorable business conditions or as a result of damage (other than damage at the premises of a dependent property) caused by the impact of the Covered Cause of Loss in the area where the dependent properties are located.

            However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

            The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

        **b.** Paragraph **(4)** is deleted and replaced with the following:

            **(4)** Dependent property means property owned by others whom you depend on to:

                **(a)** Deliver materials or services to you, or to others for your account. But

**GA POLICY CUSTOMIZATIONS**

services does not mean water, communication or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business provided such property is located within 1,000 feet of the premises described in the Declarations or is the property of the lead tenant in a shopping center or shopping mall that includes such premises. The most we will pay under this paragraph **(d)** is $2,500.

The dependent property must be located in the coverage territory of this policy.

**Section I – Property, A.6., Coverage Extensions** is amended as follows:

**1.** The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(1) Buildings** is replaced with the following:

The most we will pay in any one occurrence for loss or damage under this Extension is 25% of the Limit of Insurance for Buildings shown in the Declarations, but not more than $500,000 at each building.

**2.** The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(2) Business Personal Property** is replaced with the following:

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**3.** The last sentence in Paragraph **b. – Personal Property Off-premises** is amended as follows:

The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Personal Property Off-premises is shown in the Declarations.

**4.** Paragraph **c. - Outdoor Property** is replaced with the following:

**c. Outdoor Property**
You may extend the insurance provided by this policy to apply to your outdoor:
**(1)** Fences, trees, shrubs and plants, including debris removal expense. Loss or

damage must be caused by or result from any of the following causes of loss:
**(a)** Fire;
**(b)** Lightning;
**(c)** Explosion;
**(d)** Riot or Civil Commotion; or
**(e)** Aircraft.

**(2)** Radio and television antennas (including satellite dishes), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
**(a)** Fire;
**(b)** Lightning;
**(c)** Windstorm (unless there is an exclusion endorsement excluding Windstorm applicable to the location where this endorsement also applies);
**(d)** Ice, Snow, Sleet or Hail (with respect to Hail, unless there is an exclusion endorsement excluding Hail applicable to the location where this endorsement also applies);
**(e)** Explosion;
**(f)** Riot or Civil Commotion; and
**(g)** Aircraft.

The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

**5.** Paragraph **d. – Personal Effects** is replaced with the following:

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:
**(1)** Tools or equipment; or
**(2)** Loss or damage by theft.
The most we will pay for loss or damage under this Extension is $5,000 at each described premises.

**6.** Paragraph **e. – Valuable Papers And Records** Paragraph **(3)** is replaced with the following:

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

**GA POLICY CUSTOMIZATIONS**

For "valuable papers and records" not at the described premises, the most we will pay is $25,000.

**7.** Paragraph **f. – Accounts Receivable** Paragraph **(2)** is replaced with the following:

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $25,000.

**8.** Paragraph **f. – Accounts Receivable** Paragraph **(3)** is replaced with the following:

**(3)** Paragraph **B. Exclusions** in **SECTION I – PROPERTY** does not apply to this Coverage Extension except for:
  **(a)** Paragraph **B.1.c. Governmental Action**;
  **(b)** Paragraph **B.1.d. Nuclear Hazard**;
  **(c)** Paragraph **B.1.f. War And Military Action**;
  **(d)** Paragraph **B.2.f. Dishonesty**;
  **(e)** Paragraph **B.2.g. False Pretense**;
  **(f)** Paragraph **B.2.o. Electrical Disturbance**
  **(g)** Paragraph **B.3.**; and
  **(h)** Paragraph **B.6. Accounts Receivable Exclusion.**

**9.** Paragraph **g. – Appurtenant Structures** is added:

**g. Appurtenant Structures**

**(1)** When there is a Building Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to incidental appurtenant structures within 1,000 feet of the described premises.

**(2)** When there is a Business Personal Property Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to Business Personal Property within incidental appurtenant structures within 1,000 feet of the described premises.

**(3)** Incidental appurtenant structures include storage buildings, carports, garages and similar structures which have not been specifically described in the Declarations.

The most we will pay for loss or damage under this Coverage Extension in any one occurrence for any combination of loss or damage to Building and Business Personal Property is $50,000.

**Section I – Property, B. Exclusions 2.** is amended as follows:

**1.** Paragraph **q. Asbestos** is added:

**q. Asbestos**
Any loss, damage or expense which would not have occurred in whole or in part but for the presence of asbestos.

**Section I – Property, G. Optional Coverages** is amended as follows:

**1.** Paragraph **1. Outdoor Signs** Paragraph **d.** is replaced with the following:

**2.** The most we will pay for loss of or damage in any one occurrence is $5,000, unless a higher Limit of Insurance for Outdoor Signs is shown in the Declarations.

**Section I – Property, G. Optional Coverages** is amended as follows:

**1.** Paragraph **3. – Employee Dishonesty** Paragraph **c.** is replaced with the following:

The most we will pay for loss or damage in any one occurrence is $10,000, unless a higher Limit of Insurance for Employee Dishonesty is shown in the Declarations.

**Section II – Liability, A. Coverages** is amended as follows:

**1.** Under **Business Liability** Paragraph **f., Coverage Extension – Supplementary Payments,** Paragraph **(1)**, sections **(b), (c)** and **(d)** are replaced with the following:

**(b)** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**Section II – Liability, B. Exclusions** is amended as follows:

1. Under **1., Applicable To Business Liability Coverage,** Paragraph **a., Expected Or Intended Injury** is deleted and replaced with the following:

   **a.   Expected Or Intended Injury**
   "Bodily injury" or "property damage" (including any unexpected or unintended portion thereof) if any "bodily injury" or "property damage" was expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. Under **1., Applicable To Business Liability Coverage,** Paragraph **j., Professional Services (8)** and **(9)** are amended and **(10)** is added as follows:

   **(8)** Any body piercing services (not including ear lobe piercing), tattooing and similar services;
   **(9)** Services in the practice of pharmacy; and
   **(10)** Computer or software design, advice or consultation, programming services including virus protection, firewall or web site design.

3. Under **1., Applicable To Business Liability Coverage,** Paragraph **k., Damage To Property,** the following is added to the last paragraph:

   Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

4. Under **1., Applicable To Business Liability Coverage,** Paragraph **m., Damage To Your Work,** the following is deleted:

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

5. Under **1., Applicable To Business Liability Coverage,** Paragraph **p. Personal And Advertising Injury,** Paragraph **(1)** is deleted and replaced with the following:

**(1)** Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

6. Under **1., Applicable To Business Liability Coverage,** Paragraph **p., Personal and Advertising Injury**, the following is added:

   **(14)** Arising out of:
      **(a)** Your placement of advertising for others on your web site or a link to or a reference to a web site or web address of others on your web site.
      **(b)** Your placement of content or company brand or product information from others on your web site or on any frame or border within your web site.
      **(c)** Software or programming related to your web site's design, appearance or functions.

   **(15)** Arising out of discrimination, harassment or humiliation by an officer, director, member or partner of the insured.

   **(16)** Arising out of representations made by you or your agents regarding the value or suitability of any securities, or the fluctuation in value or price of any stocks, bonds or other securities.

   **(17)** Violation of antitrust laws, state and federal laws governing restrictions on trade, unfair competition or deceptive advertising.

7. Under **1., Applicable To Business Liability Coverage,** Paragraph **r. Criminal Acts** is deleted and replaced with the following:

   **r.   Criminal Acts**
   "Bodily injury", "property damage", or "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

8. Under **1., Applicable To Business Liability Coverage,** Paragraphs **t., u. and v.** are added as follows:

   **t.   Asbestos**
   **(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

(2) Any damages, judgments, settlements, loss, costs or expenses that:
  (a) May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the presence of asbestos;
  (b) Arise out of any request, demand, order to statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos presence; or
  (c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effect of an asbestos presence.

**u.  Nuclear Hazard**
Nuclear reaction or radiation, or radioactive contamination, however caused. But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**Section II – Liability, D, Liability And Medical Expenses Limits Of Insurance** is amended as follows:

1. Paragraph **2.** is replaced with the following:

2. The most we will pay for the sum of all damages because of all:
   **a.** "Bodily injury", "property damage" and medical expenses, arising out of any one "occurrence" including "Bodily injury" and "property damage" under the "products-completed operations hazard"; and
   **b.** "Personal and advertising injury" sustained by any one person or organization;

   is the Liability and Medical Expenses – Each Occurrence limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

2. Paragraph **4.** is replaced with the following:

4.  **Aggregate Limits**

Regardless of the number of occurrences and subject to the Liability and Medical Expenses-Each Occurrence limit, the most we will pay for:
**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses-Each Occurrence limit. This limit is shown in the declarations as "Products and Completed Operations Aggregate".
**b.** All:
  (1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";
  (2) Plus medical expenses;
  (3) Plus all "personal and advertising injury" caused by offenses committed;

  is twice the Liability and Medical Expenses-Each Occurrence limit shown in the Declarations. This limit is shown in the declarations as "General Aggregate (other than Products and Completed Operations Aggregate)".

Subject to Paragraph a. or b. above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section II – Liability, E. Liability And Medical Expense General Conditions** is amended as follows:

1. Under **2., Duties In The Event Of Occurrence, Offense, Claim Or Suit,** Paragraphs **e.** and **f.** are added as follows:

   **e.** If we cover a claim or "suit" under this coverage that may also be covered by other in-

**GA POLICY CUSTOMIZATIONS**

surance available to an additional insured, such insurance if any, shall be primary, and such additional insured must submit such claim or suit to the other insurer for defense and indemnity.

**f.** Paragraphs **a.** and **b.** apply to you or to any additional insured only when such "occurrence," offense, claim or suit is known to you or any additional insured or your or any additional insured's partner, limited liability company manager, executive officer, trustee or political official if you or any additional insured is a political subdivision or agency. This Paragraph **f.** applies separately to you and any additional insured.

**2.** Paragraph **5. Representations** is added as follows:

**5. Representations**
When You Accept This Policy
By accepting this policy, you agree:

**a.** The statements in the Declaration are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

BUSINESSOWNERS
BP 01 76 02 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.  Section I – Property** is amended as follows:

1.  The following explanation is added with respect to application of the Exclusion of "Fungi", Wet Rot Or Dry Rot and the Limited Coverage of the same title:

    With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungi", wet rot or dry rot, Paragraphs **B.1.i.** Exclusions and **A.5.r.** Limited Coverage For "Fungi", Wet Rot And Dry Rot will not serve to limit the amount of recovery for such repair or replacement.

    However, the Exclusion and Limited Coverage shall continue to apply to:

    **a.** The cost to treat, contain, remove or dispose of "fungi", wet rot or dry rot beyond that which is required to repair or replace Covered Property;

    **b.** The cost of testing as described in the Limited Coverage; and

    **c.** Any increase in loss under Business Income and/or Extra Expense forms resulting from **a.** or **b.** above.

    Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain remove, dispose of or test for "fungi", wet rot or dry rot, is the applicable Limit of Insurance on the affected Covered Property.

2.  The following is added to Paragraph **B.2. Exclusions:**

    **a.** We will not pay for loss or damage arising out of any act committed:

    **(1)** By or at the direction of any insured; and

    **(2)** With the intent to cause a loss.

    **b.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

    **(1)** Is otherwise covered under this Policy; and

    **(2)** Arose out of an act of family violence by an insured, against whom a family violence complaint is brought for such act.

    **c.** If we pay a claim pursuant to Paragraph **1.b.,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

  © Insurance Services Office, Inc., 2014

**B. Section III – Common Policy Conditions** is amended as follows:

**1.** Paragraph **A. Cancellation** is amended as follows:

   **a.** Paragraph **1.** is replaced by the following:

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation by confirming the date and time of cancellation in writing to the first Named Insured.

   **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

   **(1)** 10 days from the date of mailing or delivering our notice; or

   **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

   **b.** Paragraph **5.** is replaced by the following:

   **5. Premium Refund**

   **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

   **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

   **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   **d.** If the first Named Insured cancels, the refund may be less than pro rata.

   **e.** The cancellation will be effective even if we have not made or offered a refund.

   **c.** The following is added to Paragraph **A.** and supersedes any other provisions to the contrary:

   If we decide to:

   **(1)** Cancel or nonrenew this policy; or

   **(2)** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

   **(3)** Change any policy provision which would limit or restrict coverage;

   then:

   We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **d.** or **e.** below, we will mail or deliver notice at least:

   **(1)** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

   **(2)** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

   **(3)** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

© Insurance Services Office, Inc., 2014
**BP 01 76 02 15**

**d.** The following provisions apply to insurance covering residential real property only if the Named Insured is a natural person. With respect to such insurance, the following is added to Paragraph **A.** and supersedes any provisions to the contrary except as applicable as described in Paragraph **e.:**

**(1)** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

**(a)** Nonpayment of premium, whether payable to us or to our agent;

**(b)** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**(d)** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **(b)**, **(c)** or **(d)** above.

**e.** With respect to a policy that is written to permit an audit, the following is added to Paragraph **A.:**

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**(1)** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**(2)** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 01 99 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – LOSS PAYMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **5.a. Loss Payment** in **Section I – Property** is replaced by the following:

**a.** In the event of loss or damage covered by this policy, at our option we will either:

**(1)** Repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, as limited by paragraph **E.5.d.(1)(e)** of this Loss Payment Condition and any other applicable policy provision, such as the Limit of Insurance provision; or

**(2)** Take all or any part of the property at an agreed or appraised value.

With respect to Paragraph **a.(1)**, this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 02 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| **A.** | **Designation Of Premises (Part Leased To You):** |
| | 7363 Spout Springs Rd Ste 205A |
| | Flowery Branch, GA 30542-5563 |
| **B.** | **Name Of Person Or Organization (Additional Insured):** |
| | Towne Square at Spout Springs, LLC |
| | 35 Johnson Ferry Rd |
| | |
| | Marietta, GA 30068 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

    **3.** The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

**B.** The following exclusions are added to **Section II – Liability:**

This insurance does not apply to:

    **1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

    **2.** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule.

 © ISO Properties, Inc., 2004 ☐

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 02 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| **A.** | **Designation Of Premises (Part Leased To You):** |
| | 7363 Spout Springs Rd Ste 205A |
| | Flowery Branch, GA 30542-5563 |
| **B.** | **Name Of Person Or Organization (Additional Insured):** |
| | Retail Planning Corporation |
| | 35 Johnson Ferry Rd |
| | Marietta, GA 30068 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

    **3.** The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

**B.** The following exclusions are added to **Section II – Liability:**

This insurance does not apply to:

    **1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

    **2.** Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule.

© ISO Properties, Inc., 2004 ☐

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 04 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A.  Hired Auto Liability** | ████ |
| **B.  Non-owned Auto Liability** | ████ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

   **1. Hired Auto Liability**

   The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

   **2. Non-owned Auto Liability**

   The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

   **1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II – Liability,** other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

   **a.** "Bodily injury" to:

      **(1)** An "employee" of the insured arising out of and in the course of:

         **(a)** Employment by the insured; or

         **(b)** Performing duties related to the conduct of the insured's business; or

   **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

   This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

   **(1)** Liability assumed by the insured under an "insured contract"; or

   **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

   **b.** "Property damage" to:

   **(1)** Property owned or being transported by, or rented or loaned to the insured; or

   **(2)** Property in the care, custody or control of the insured.

© Insurance Services Office, Inc., 2009

2. Paragraph **C. Who Is An Insured** in **Section II – Liability** is replaced by the following:

   1. Each of the following is an insured under this endorsement to the extent set forth below:

      **a.** You;

      **b.** Any other person using a "hired auto" with your permission;

      **c.** For a "non-owned auto":

         **(1)** Any partner or "executive officer" of yours; or

         **(2)** Any "employee" of yours;

         but only while such "non-owned auto" is being used in your business; and

      **d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

   2. None of the following is an insured:

      **a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

      **b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

      **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

      **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

      **e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III – Common Policy Conditions** is replaced by the following:

   This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

**D.** The following additional definitions apply:

   1. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

   2. "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

   3. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 04 12 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| **A.  Premises:** |
| 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| **B.  Project Or Operation:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Liability** is amended as follows:

**A.** Paragraph **A.1.b.(1)** is replaced by the following:

(1) To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

(a) The "bodily injury" or "property damage":

(i) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(ii) Arises out of the project or operation shown in the Schedule;

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**B.** Paragraph **A.1.b.(2)** is replaced by the following:

(2) To "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

(a) The offense arises out of your business:

(i) Performed on the premises shown in the Schedule; or

**(ii)** In connection with the project or operation shown in the Schedule; and

**(b)** The offense was committed during the policy period.

However, with respect to Paragraph **A.1.b.(2)(a)(i),** if the "personal and advertising injury" is caused by:

**(a)** False arrest, detention or imprisonment; or

**(b)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**C.** Paragraph **A.2.a. Medical Expenses** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    © Insurance Services Office, Inc., 2016    **BP 04 12 04 17**

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 48 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Towne Square at Spout Springs, LLC and Retail Planning Corporation |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

**3.** Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 89 01 10**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIQUOR LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| **A.  Liquor Liability Aggregate Limit:**<br>     $   2,000,000 |
| **B.  Each Common Cause Limit:**<br>     $   1,000,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Liability** is amended as follows:

**A.** The insurance provided under Paragraph **A.1. Business Liability** also applies to all "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages.

**B.** For the insurance provided by this endorsement only, Paragraph **B. Exclusions** is amended as follows:

   **1.** Paragraph **1. Applicable To Business Liability Coverages,** other than Exclusions **a. Expected Or Intended Injury, d. Workers' Compensation And Similar Laws** and **e. Employer's Liability,** does not apply.

   **2.** The following exclusions are added:

   This insurance does not apply to:

   **a.** "Bodily injury" or "property damage" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

   **b.** "Bodily injury" or "property damage" arising out of "your product". This exclusion does not apply to "bodily injury" or "property damage" for which the insured or the insured's indemnities may be held liable by reason of:

     **(1)** Causing or contributing to the intoxication of any person;

     **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

     **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   **c.** Any "bodily injury" or "property damage" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the Limits of Insurance.

   This exclusion does not apply if the other insurance responds to liability for "bodily injury" or "property damage" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**C.** The following are added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

   **D.  Liability And Medical Expenses Limits Of Insurance**

   **5.** The Liquor Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" as the result of the selling, serving or furnishing of alcoholic beverages.

© Insurance Services Office, Inc., 2009

**6.** Subject to the Liquor Liability Aggregate Limit, the Each Common Cause Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of alcoholic beverages to any one person.

Neither the Liability And Medical Expenses Limit of Insurance shown in the Declarations nor its aggregate limits apply to damages arising out of the selling, serving or furnishing of alcoholic beverages.

© Insurance Services Office, Inc., 2009
**BP 04 89 01 10**    ☐

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 97 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| Towne Square at Spout Springs, LLC |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III – Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

       © ISO Properties, Inc.,  2004         □

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 04 97 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name Of Person Or Organization: |
|---|
| Retail Planning Corporation |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III – Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© ISO Properties, Inc.,  2004

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

POLICY NUMBER:

BUSINESSOWNERS
BP 05 15 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO
# TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**   |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses**     80 **%**    **Year:** 2023 <br>(Refer to Paragraph **B.** in this endorsement.) <br><br>**Federal share of terrorism losses**     80 **%**    **Year:** 2024 <br>(Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

 © Insurance Services Office, Inc., 2015

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2015 **BP 05 15 01 15**

BUSINESSOWNERS
BP 05 23 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

        © Insurance Services Office, Inc., 2015

BUSINESSOWNERS
BP 05 38 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

  **a.** Physical injury that involves a substantial risk of death; or

  **b.** Protracted and obvious physical disfigurement; or

  **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

    © Insurance Services Office, Inc., 2015

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

  a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

  b. The act resulted in damage:

    (1) Within the United States (including its territories and possessions and Puerto Rico); or

    (2) Outside of the United States in the case of:

      (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

      (b) The premises of any United States mission; and

  c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

  Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2015 **BP 05 38 01 15**

POLICY NUMBER: DOBP412038

**BUSINESSOWNERS**
**BP 05 88 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA – LIMITED FUNGI OR BACTERIA COVERAGE (LIABILITY) – SMALL BUSINESSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| |
|---|
| **Fungi And Bacteria Property Damage Aggregate Limit:  $** 50,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following provisions are added to **Section II – Liability:**

**A.** The following is added to Paragraph **B.1.p.(10) Exclusions:**

**(c)** Abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**B.** The following is added to Paragraph **B.1.p. Exclusions:**

**(14)** Arising out of a "fungi or bacteria incident".

**C.** The following is added to Paragraph **B.1. Exclusions:**

**t. Bodily Injury**

"Bodily Injury" arising out of:

**(1)** A "fungi or bacteria" incident; or

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**D.** Coverage provided by this insurance for "property damage", arising out of a "fungi or bacteria incident", is subject to the Fungi And Bacteria Property Damage Aggregate Limit as described in Paragraph **E.** of this endorsement.

**E.** The following are added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

**1.** The Fungi And Bacteria Property Damage Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all "property damage" arising out of a "fungi or bacteria incident".

**2.** Paragraphs **D.2.** and **D.3.** of the Liability And Medical Expenses Limits Of Insurance continue to apply to "property damage" arising out of a "fungi or bacteria incident" but only if, and to the extent that, limits are available under the Fungi And Bacteria Liability Aggregate Limit.

**F.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions:**

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

BUSINESSOWNERS
BP 14 88 07 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to Paragraph **H. Other Insurance** of **Section III – Common Policy Conditions** and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

 © Insurance Services Office, Inc., 2013

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**BUSINESSOWNER'S
BP 99 01 01 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# RESTAURANTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

Any references in the ISO Businessowner's manual or ISO forms, as adopted and modified by GUARD, that refer to the ISO Restaurants Endorsement BP 07 78 will apply to this form.

**A.** The following are added to Paragraph **A.5. Additional Coverages** of **Section I – Property:**

 **a.  Reward Payment**

  **(1)** We will reimburse you for rewards paid as follows:

   **(a)** Up to $5,000 to an eligible person for information leading to the arrest and conviction of any person or persons committing a crime resulting in loss of or damage to Covered Property from a Covered Cause of Loss. However, we will pay no more than the lesser of the following amounts:

    **(i)** Actual cash value of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

    **(ii)** The amount determined by the loss settlement procedure applicable to the Covered Property under the Loss Payment Condition.

   **(b)** Up to $5,000 to an eligible person for the return of stolen Covered Property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

    **(i)** Actual cash value based on the condition of the Covered Property at the time it is returned, but not more than the amount required to repair or replace it; or

    **(ii)** The amount determined by the loss settlement procedure applicable to the returned Covered Property under the Loss Payment Condition.

  **(2)** This Additional Coverage applies subject to the following conditions:

   **(a)** An eligible person means that person designated by a law enforcement agency as being the first to voluntarily provide the information leading to the arrest and conviction or return of the stolen Covered Property, and who is not:

    **(i)** You or any family member;

    **(ii)** Your employee or any of his or her family members;

    **(iii)** An employee of a law enforcement agency;

    **(iv)** An employee of a business engaged in property protection;

    **(v)** Any person who had custody of the Covered Property at the time the theft was committed; or

    **(vi)** Any person involved in the crime.

   **(b)** No reward will be reimbursed unless and until the person(s) committing the crime is (are) convicted or the Covered Property is returned.

   **(c)** The lesser of the amount of the reward or $5,000 is the most we will reimburse for loss under this Additional Coverage in any one occurrence.

 **b.  Brands And Labels**

  **(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

   **(a)** Stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

   **(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

---

**(2)** We will pay reasonable costs you incur to perform the activity described in Paragraph **(a)** or **(b)** above. But the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.

**c. Ordinance Or Law – Equipment Coverage**

**(1)** Subject to Paragraph **(2)**, if a Covered Cause of Loss occurs to equipment that is Covered Property, we will pay to repair or replace the equipment as required by law.

**(2)** If a Covered Cause of Loss occurs to refrigeration equipment that is Covered Property, we will pay:

**(a)** The cost to reclaim the refrigerant as required by law;

**(b)** The cost to retrofit the equipment to use a non-CFC refrigerant as required by the Clean Air Act of 1990, and any amendments thereto or any other similar laws; and

**(c)** The increased cost to recharge the system with a non-CFC refrigerant.

**(3)** The terms of this coverage apply separately to each piece of covered equipment.

**(4)** We will not pay under this Additional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(5)** Loss to the equipment will be determined as follows:

**(a)** If the equipment is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**(i)** The amount you actually spend to repair the equipment, but not for more than the amount it would cost to replace the equipment with equipment of the same kind and quality; or

**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered Building or Business Personal Property.

**(b)** If the equipment is not repaired or replaced, we will not pay more than the lesser of:

**(i)** The actual cash value of the equipment at the time of loss; or

**(ii)** The Limit of Insurance shown in the Declarations as applicable to the Building or Business Personal Property.

**(c)** We will not pay for loss due to any ordinance or law that:

**(i)** You were required to comply with before the loss, even if the equipment was undamaged; and

**(ii)** You failed to comply with.

**d. Lock Replacement**

**(1)** We will pay for the cost to repair or replace locks at the described premises due to theft or other loss to keys.

**(2)** The most we will pay under this Additional Coverage for all loss or damage in any one occurrence is $1,000.

**(3)** A per occurrence deductible of $100 will apply.

**e. Spoilage Coverage**

If endorsement BP 99 72 Spoilage Coverage is attached to the policy, this coverage does not apply to those buildings for which a limit of insurance is scheduled on the Spoilage Coverage endorsement.

**(1)** We will pay for the loss of "perishable stock" caused by:

**(a)** A change in temperature or humidity resulting from mechanical breakdown or failure of refrigeration, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described premises;

**(b)** Contamination by a refrigerant; and

**(c)** Power outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**(2)** The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000 at each described premises.

**(3)** The value of the "perishable stock" will be the actual cash value, as if no loss or damage had occurred.

**BUSINESSOWNER'S - Restaurants**

**(4)** We will not pay for spoilage caused directly or indirectly by any of the following. Such spoilage is excluded from coverage regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**(a)** Earth movement;

**(b)** Governmental action;

**(c)** Nuclear hazard;

**(d)** War and military action;

**(e)** Water;

**(f)** The disconnection of any refrigerating, cooling or humidity control system from the source of power;

**(g)** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current;

**(h)** The purposeful and/or preemptive disconnection or deactivation of electrical power by an electrical utility.

**(i)** The inability of an electrical utility company or other power source to provide sufficient power due to:

  **(i)** Lack of fuel; or

  **(ii)** Governmental order;

**(j)** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand; and

**(k)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

Exclusions **(a)** through **(e)** above shall have the same meaning as the Exclusions bearing those headings in Paragraph **B. Exclusions** under **Section I - Property** of the Businessowner's Coverage Form (BP 00 03). The full text of those Exclusions is expressly incorporated by reference into this paragraph.

**(5)** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $500. We will then pay the amount of loss or damage in excess of that deductible, up to the applicable Limit of Insurance. No other deductible in this policy applies to the coverage provided by this Additional Coverage.

**(6)** You must maintain a refrigeration maintenance or service agreement. If you voluntarily terminate this agreement and do not notify us within 10 days, the spoilage coverage provided under Paragraphs **(1)(a)** and **(1)(b)** will be automatically suspended at the involved location.

However, coverage provided under Paragraphs **(1)(a)** and **(1)(b)** is restored upon:

**(1)** Reinstatement of the applicable refrigeration maintenance or service agreement; or

**(2)** Procurement of a replacement refrigeration maintenance or service agreement.

A refrigeration maintenance agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the insured location, and the servicing and repair of the equipment, including emergency response at the insured location.

**f. Food Contamination**

**(1)** If your business at the described premises is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination", we will pay:

**(a)** Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

**(b)** Your expense to replace food which is, or is suspected to be, contaminated;

**(c)** Your expense to provide necessary medical tests or vaccinations for your infected employees. However, we will not pay for any expense that is otherwise covered under a Workers' Compensation Policy;

**(d)** The loss of Business Income you sustain due to the necessary suspension of your "operations". The coverage for Business Income will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority; and

**(e)** Additional advertising expenses you incur to restore your reputation.

**(2)** The definition of Business Income in the **Business Income Additional Coverage** also applies to this Food Contamination Additional Coverage.

**(3)** The most we will pay for all loss in any one occurrence under Paragraphs **(1)(a)** through **(1)(d),** including Business Income, is $10,000, unless a higher Food Contamination Limit of Insurance is indicated in the Declarations.

The most we will pay for all loss in any one occurrence under Paragraph **(1)(e)** is $3,000, unless a higher Additional Advertising Expenses Limit of Insurance is indicated in the Declarations.

**(4)** We will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination at the described premises.

**(5)** With respect to the coverage provided under this Paragraph **f.,** Exclusion **B.1.j. Virus Or Bacteria** in **Section I – Property** does not apply.

**g. Fine Arts Coverage**
**(1)** We will pay for direct loss of or damage to Fine Arts, whether owned by:
    **(a)** You; or
    **(b)** Others, and in your care, custody or control.
**(2)** Fine arts includes, but is not limited to, antiques, paintings, etchings, drawings, tapestries, sculptures and fragile property such as porcelains, china and marble.
**(3)** The most we will pay for loss in any one occurrence under this Additional Coverage is $25,000 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property. The amount payable under this Additional Coverage is additional insurance over the insurance available for Business Personal Property.
**(4)** The value of fine arts will be the least of the following amounts:
    **(a)** The actual cash value of that property at the time of loss;
    **(b)** The cost of reasonably restoring that property to its condition immediately before loss; or
    **(c)** The cost of replacing that property with substantially identical property.
**(5)** In the event of loss, the value of property will be determined as of the time of loss.
**(6)** The following are added to **Paragraph E. Property Loss Conditions** under **Section I – Property:**
    **(a)** In case of covered loss to a Fine Arts to any part of a pair or set we will:

        **(i)** Repair or replace any part to restore the pair or set to its value before the loss; or
        **(ii)** Pay the difference between the value of the pair or set before and after the loss.
    **(b)** You must arrange for Fine Arts to be packed and unpacked by competent packers.

**h. Credit Card Slips**

We will pay for amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as the result of a Covered Cause of Loss.

It is your responsibility to establish the amount of the loss under this Additional Coverage. If it is not possible, the amount of the loss will be determined as follows:

**(1)** If you have been in business for more than twelve months at the location of the loss, one-thirtieth (1/30) of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location.

The twelve months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

**(2)** If you have been in business for less than twelve months at the location of the loss, the average daily credit card slips shall be one-thirtieth (1/30) of the average monthly amount of credit card slips for the number of months you have been in business at that location.

**(3)** The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Additional Coverage during each policy period is $10,000.

**B.** If the Employee Dishonesty Optional Coverage is shown as an applicable coverage in the Declarations, the following is added to Paragraph **3. Employee Dishonesty** of Paragraph **G. Optional Coverages** of **Section I – Property** and is subject to the provisions of that Paragraph:

**BUSINESSOWNER'S - Restaurants**

**3. Employee Dishonesty**

We will also pay for loss of or damage to "money", "securities" and "other property" sustained by your customer resulting directly from theft committed by an identified employee, acting alone or in collusion with other persons.

The property covered under this coverage is limited to property:

**a.** That your customer owns or leases; or

**b.** That your customer holds for others.

Coverage applies only while the property is in a Covered Building at the premises described in the Declarations.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your customer. Any claim for loss that is covered under this coverage must be presented by you.

**C.** For coverage provided under this endorsement the following definitions are added to Paragraph **H. Property Definitions** of **Section I – Property:**

**1.** "Food contamination" means an incidence of food poisoning to one or more of your customers as a result of:

**a.** Tainted food you purchased;

**b.** Food which has been improperly stored, handled or prepared; or

**c.** A communicable disease transmitted through one or more of your employees.

**2.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property specifically excluded under this policy.

**3.** "Perishable stock" means property:

**a.** Maintained under controlled temperature or humidity conditions for its preservation; and

**b.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

**D.** The following are added to Paragraph **A. Coverages** of **Section II – Liability:**

**1. Delivery Errors And Omissions Coverage**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of a failure to deliver or a misdelivery of items you hold for sale by you, any of your "employees" or by a concessionaire trading under your name. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for delivery errors and omissions to which this insurance does not apply. We may, at our discretion, investigate the circumstances of any misdelivery or failure to deliver and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **1.e.** below;

**(2)** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance for this coverage; and

**(3)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Delivery Errors And Omissions Coverage.

**b.** This coverage applies only to errors in deliveries that take place or omissions of such deliveries that should have taken place in the "coverage territory" and during the policy period.

**c.** This coverage does not apply to:

**(1)** Intentional error or intentional misdelivery or failure to deliver "your product".

**(2)** "Bodily injury", "property damage" or "personal and advertising injury".

**(3)** Discrimination based on a customer's race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition or residence location.

**d.** The **Supplementary Payments** provision applicable to the Bodily Injury, Property Damage, and Personal And Advertising Injury Liability Coverages also applies to this **Delivery Errors And Omissions Coverage.**

**BUSINESSOWNER'S - Restaurants**

**e.** The most we will pay for the sum of all damages under this coverage because of all failures or misdeliveries is $10,000 in any annual period starting with the beginning of the policy period shown in the Declarations. This limit applies separately to each premises described in the Declarations.

**f.** The following Condition replaces the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition under Paragraph **E. Liability And Medical Expenses General Conditions** of **Section II – Liability** for the **Delivery Errors Or Omissions Coverage:**

**Duties In The Event Of A Delivery Error Or Omission**

**(1)** You must see to it that we are notified as soon as practicable of an error or omission which may result in a claim. To the extent possible, notice should include:

**(a)** How, when and where the error or omission took place; and

**(b)** The name(s) and address(es) of the affected customer(s).

**(2)** If a claim is made or "suit" is brought against any insured, you must:

**(a)** Immediately record the specifics of the claim or "suit" and the date received; and

**(b)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**(3)** You and any other involved insured must:

**(a)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(b)** Authorize us to obtain records and other information;

**(c)** Cooperate with us in our investigation or settlement of the claim or defense against the "suit"; and

**(d)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of error or omission to which this insurance may apply.

**(4)** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**2. Merchandise Withdrawal Expenses Coverage**

**a.** We will reimburse you for "merchandise withdrawal expenses" incurred because of "merchandise withdrawal" to which this insurance applies.

**b.** This insurance applies to a "merchandise withdrawal" only if the "merchandise withdrawal" is initiated in the "coverage territory" during the policy period because:

**(1)** You determine that the "merchandise withdrawal" is necessary; or

**(2)** An authorized government entity has ordered you to conduct a "merchandise withdrawal".

**c.** The initiation of a "merchandise withdrawal" will be deemed to have been made only at the earliest of the following times:

**(1)** When you first announced, in any manner, to the general public, your vendors or to your "employees" (other than those "employees" directly involved in making the determination) your decision to conduct or participate in a "merchandise withdrawal". This applies regardless of whether the determination to conduct a "merchandise withdrawal" is made by you or is requested by a third party; or

**(2)** When you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "merchandise withdrawal".

**d.** "Merchandise withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "merchandise withdrawal".

**e.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance for this coverage.

**f.** This insurance does not apply to "merchandise withdrawal expense" arising out of:

**(1)** Any "merchandise withdrawal" initiated due to:

**(a)** The failure of "your product" to accomplish its intended purpose, including any breach of warranty of any kind, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury".

**BUSINESSOWNER'S - Restaurants**

    **(b)** Copyright, patent, trade secret, trade dress or trademark infringement.

    **(c)** Transformation of a chemical nature, deterioration, or decomposition of "your product". This exclusion does not apply if it is caused by:

      **(i)** An error in manufacturing, design, or processing;

      **(ii)** Transportation of "your product"; or

      **(iii)** "Merchandise tampering".

    **(d)** Expiration of the designated shelf life of "your product"; or

**(2)** A "defect" in "your product" known to exist by you or your "executive officers", prior to the date this endorsement was first issued to you or prior to the time "your product" leaves your control or possession.

**(3)** Recall of any specific product for which "bodily injury" or "property damage" is excluded under Paragraph **A. Coverages** of **Section II – Liability** by endorsement.

**(4)** Recall when "your product" or a component contained within "your product" has been:

    **(a)** Banned from the market by an authorized government entity prior to the policy period; or

    **(b)** Distributed or sold by you subsequent to any governmental ban.

**(5)** The defense of a claim or "suit" against you for liability arising out of a "merchandise withdrawal".

**(6)** The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

**g.** The most we will reimburse you for the sum of all "merchandise withdrawal expenses" incurred for all "merchandise withdrawals" initiated during the policy period is $25,000.

**h.** The following Condition replaces the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition under Paragraph **E. Liability And Medical Expenses General Conditions** of **Section II – Liability** for the **Merchandise Withdrawal Expenses Coverage:**

    **Duties In The Event Of A Defect Or A Merchandise Withdrawal**

    **(1)** You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product" or any governmental investigation, that may result in a "merchandise withdrawal". To the extent possible, notice should include:

      **(a)** How, when and where the "defect" was discovered;

      **(b)** The names and addresses of any injured persons and witnesses; and

      **(c)** The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

    **(2)** If a "merchandise withdrawal" is initiated, you must:

      **(a)** Immediately record the specifics of the "merchandise withdrawal" and the date it was initiated; and

      **(b)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the "merchandise withdrawal" as soon as practicable.

    **(3)** You must promptly take all reasonable steps to mitigate the expenses associated with a "merchandise withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "merchandise withdrawal expenses".

    **(4)** You and any other involved insured must:

      **(a)** Immediately send us copies of pertinent correspondence received in connection with the "merchandise withdrawal";

      **(b)** Authorize us to obtain records and other information; and

      **(c)** Cooperate with us in our investigation of the "merchandise withdrawal".

**E.** For coverage provided under this endorsement the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** of **Section II – Liability:**

**1.** "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

**2.** "Merchandise tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury".

    When "merchandise tampering" is known, suspected or threatened, a "merchandise withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

**3.** "Merchandise withdrawal" means the recall or withdrawal:

    **a.** From the market; or

    **b.** From use by any other person or organization;

**BUSINESSOWNER'S - Restaurants**

of "your products" or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "product tampering", which has caused or is reasonably expected to cause "bodily injury".

4. "Merchandise withdrawal expenses" means those reasonable and necessary extra expenses listed below, paid and directly related to a "merchandise withdrawal":

   **a.** Costs of notification;

   **b.** Costs of stationery, envelopes, production of announcements and postage or facsimiles;

   **c.** Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees including costs of transportation and accommodations;

   **d.** Costs of computer time;

   **e.** Costs of hiring independent contractors and other temporary employees;

   **f.** Costs of transportation, shipping or packaging;

   **g.** Costs of warehouse or storage space; or

   **h.** Costs of proper disposal of "your products" or products that contain "your products" that cannot be reused, not exceeding your purchase price or your cost to produce the products.

5. "Profit" means the positive gain from business operation after subtracting for all expenses.

**F.** With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed in conjunction with the conduct of your restaurant operation, when conducted by you or on your behalf, Paragraph **a.** of the definition of "products-completed operations hazard" in Paragraph **F. Liability And Medical Expenses Definitions** of **Section II – Liability** is replaced by the following:

"Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

        Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.        **BP 99 01 01 19**

**BUSINESSOWNER'S**
**BP 99 04 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**A.** The following is added to **Paragraph A.3. Covered Causes of Loss** in **SECTION I – PROPERTY**:

**Additional Coverage-- Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   **a.** mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **b.** artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

   **c.** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   **d.** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **e.** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   **a. Expediting Expenses**
   With respect to your damaged Covered Property, we will pay the reasonable extra cost to:
   **(1)** make temporary repairs; and
   **(2)** expedite permanent repairs or permanent replacement.
   The most we will pay for loss or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

   **b. Hazardous Substances**
   We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

   This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.c.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

**c. Spoilage**

    **(1)** We will pay:

        **(a)** for physical damage to "perishable goods" due to spoilage;

        **(b)** for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

        **(c)** any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    **(2)** If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

**d. Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

**e. Service Interruption**

    **(1)** Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    **(2)** Unless otherwise shown in a Schedule, coverage for any loss of Business Income you sustain that results from the interruption of utility services will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident." If the interruption exceeds 24 hours, coverage will begin at the time of the interruption and the deductible applicable to Business Income will apply.

    **(3)** The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f. Business Income and Extra Expense**

Any insurance provided under this policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a Schedule, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule will apply.

The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a Schedule.

**B.** The following is added to **Paragraph B. Exclusions**:

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

1. The following exclusions are modified:

   a. As respects this endorsement only, the next to the last paragraph in **Exclusion B.1.h.** is deleted and replaced with the following:

      However, if excluded loss or damage, as described in **Paragraph (1)** above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

   b. As respects this endorsement only, the last paragraph of **Exclusion B.2.l.** is deleted and replaced with the following:

      But if an excluded cause of loss that is listed in 2.l.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

   c. The following is added to **Exclusions B.2.m.** and **B.2.n**:

      We will also pay for direct physical loss or damage caused by an "accident."

2. The following exclusions are added:

   a. We will not pay for loss, damage or expense caused by or resulting from:

      (1) a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

      (2) any of the following:

         (a) defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind; or

         (b) misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

      However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

   b. With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

   c. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

      (1) loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

      (2) any increase in loss resulting from an agreement between you and your customer or supplier.

**C. Deductibles**

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule.  If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. Deductibles** is deleted and replaced with the following:

1. **Deductibles for Each Coverage**

   a. Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

   b. We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule. We will then

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

**c.** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

**2.** <u>Direct and Indirect Coverages</u>

**a.** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.

**b.** Unless more specifically indicated in the Schedule:
**(1)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and
**(2)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**3.** <u>Application of Deductibles</u>

**a.** **Dollar Deductibles**
We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

**b.** **Time Deductible**
If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

**c.** **Multiple of Average Daily Value (ADV)**
If a deductible is expressed as a number times ADV, that amount will be calculated as follows:
The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration". The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

**d.** **Percentage of Loss Deductibles**
If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**D. Conditions**
The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

**1.** **Suspension**
Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

**a.** your last known address; or

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

**b.** the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**2. Jurisdictional Inspections**

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**3. Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**4. Coinsurance**

If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**E. The following definitions are added:**

**1.** "Boilers and vessels" means:

    **a.** Any boiler, including attached steam, condensate and feedwater piping; and

    **b.** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

**2.** "Covered equipment"

    **a.** "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:
      **(1)** that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
      **(2)** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

    **b.** None of the following is "covered equipment":
      **(1)** structure, foundation, cabinet, compartment or air supported structure or building;
      **(2)** insulating or refractory material;
      **(3)** sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
      **(4)** water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
      **(5)** "vehicle" or any equipment mounted on a "vehicle";
      **(6)** satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
      **(7)** dragline, excavation or construction equipment; or
      **(8)** equipment manufactured by you for sale.

**BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement**

3.  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

4.  "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

5.  "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

6.  "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus. This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

7.  "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

**BUSINESSOWNER'S**
**BP 99 13 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE AND REPORTED COVERAGE.
PLEASE READ THE ENTIRE FORM CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**SCHEDULE**

| | | |
|---|---|---|
| **Employment-related Practices Liability Annual Aggregate Limit Of Insurance:** | **$** | 100,000 |
| **Supplemental Limit:** | **$** | n/a |
| **Deductible Amount:** | **$** | 500 |

| | |
|---|---|
| **Prior Or Pending Litigation Date:**   01/05/2019 | |
| ☐  **Employment-related Malicious Prosecution** Include | |
| **Retroactive Date:**   01/05/2019 | |

| ☐ | **Extended Reporting Period** | **Extended Reporting Premium** |
|---|---|---|
| **From:** | | **$** |
| **To:** | At 12:01 A.M.*Standard | |

* Exceptions: 12:00 noon in Maine, Michigan and North Carolina.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

For the purposes of the coverage provided by this endorsement, **Section II – Liability** is amended as follows:

**A.** The following is added to Paragraph **A. Coverages:**

**1. Insuring Agreement**

**a.** We will pay those sums the insured becomes legally obligated to pay as damages resulting from a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any incident that may result from a "wrongful act". We may, with your written consent, settle any "claim" that may result. But:

**(1)** The amount we will pay for damages and "defense expenses" is limited as described in Paragraph **D.1. Employment-related Practices Liability Annual Aggregate Limit Of Insurance** and Paragraph **D.2. Deductible** of this endorsement; and

**(2)** The coverage and duty to defend provided by this endorsement will end when we have used the applicable Limit of Insurance for "defense expenses" or the payment of judgments or settlements.

No other obligation or liability to pay sums, such as civil or criminal fines, imposed on you or any other insured, or to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "wrongful acts" only if:

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

**(1)** The "wrongful act" takes place in the "coverage territory";

**(2)** The "wrongful act" did not commence before the Retroactive Date, if any, shown in the Schedule, or after the end of the policy period; and

**(3)** A "claim" against any insured for damages because of the "wrongful act" is first made during the policy period, or an Extended Reporting Period provided under Paragraph **F.** of this endorsement, in accordance with Paragraphs **c.** and **d.** below.

**c.** A "claim" will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" after being received by any insured is reported to us in writing; or

**(2)** When a "claim" against an insured is made directly to us in writing.

A "claim" received by the insured during the policy period and reported to us within 30 days after the end of the policy period will be considered to have been reported within the policy period. However, this 30-day grace period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would have been covered but for exhaustion of the amount of insurance applicable to such "claims".

**d.** If during the policy period you become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim" against any insured, you must provide notice to us in accordance with the provisions of Paragraph **E.2 Duties In The Event Of A Claim Or Wrongful Act That May Result In A Claim**. If such notice is provided, then any "claim" subsequently made against any insured arising out of that "wrongful act" shall be deemed under this policy to be a "claim" made during the policy period in which the "wrongful act" was first reported to us.

**e.** All "claims" for damages because of a "wrongful act" committed against the same person, including damages claimed by any person for care, loss of services or death resulting at any time from the "wrongful act", will be deemed to have been made at the time the first of such "claims" is made, regardless of the number of "claims" subsequently made.

**B.** For the purposes of the coverage provided by this endorsement, the following is added to Paragraph **B. Exclusions,** Subparagraph **1. Applicable To Business Liability Coverage:**

This insurance does not apply to:

**a. Criminal, Fraudulent Or Malicious Acts**

An insured's liability arising out of criminal, fraudulent or malicious acts or omissions by that insured.

This exclusion does not affect our duty to defend, in accordance with Paragraph **A.1.** of this endorsement, an insured prior to determining, through the appropriate legal processes, that that insured is responsible for a criminal, fraudulent or malicious act or omission.

**b. Contractual Liability**

Any "wrongful act" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**c. Violation Of Laws Applicable To Employers**

A violation of your responsibilities or duties required by any other federal, state or local statutes, rules or regulations, and any rules or regulations promulgated therefor or amendments thereto, except for the following, and including amendments thereto: Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Pregnancy Discrimination Act of 1978, the Immigration Reform Control Act of 1986, the Family and Medical Leave Act of 1993 and the Genetic Information Nondiscrimination Act of 2008 or any other similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

However, this insurance does not apply to a "wrongful act" arising out of your failure to comply with any of the accommodations for the disabled required of you by, or any expenses incurred as the result of physical modifications made to accommodate any person pursuant to, the Americans With Disabilities Act, or any amendments thereto, or any similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

This exclusion does not apply to any "claim" for retaliatory treatment by an insured against any person making a "claim" pursuant to such person's rights under any statutes, rules or regulations.

**d. Strikes And Lockouts**

Any "wrongful act" committed against any striking or locked-out "employee", or to an "employee" who has been temporarily or permanently replaced due to any labor dispute.

 Includes copyrighted material of the Insurance Services Office, Inc., used with its permission    BP  99 13 01 10

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

**e. Prior Or Pending Litigation**

Any "claim" or "suit" against any insured which was pending on, or existed prior to, the applicable Pending Or Prior Litigation Date shown in the Schedule, or any "claim" or "suit" arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or "suit".

**f. Prior Notice**

Any "wrongful act" alleged or contained in any "claim" which has been reported, or for which, in any circumstance, notice has been given, under any prior insurance policy providing essentially the same type of coverage.

**C.** For the purposes of the coverage provided by this endorsement, **Section II – Who Is An Insured** is amended to include as an insured:

**1.** Your "employees", unless otherwise excluded in this endorsement.

**2.** Your former "employees", unless otherwise excluded in this endorsement, but only with respect to "wrongful acts" committed while in your employ.

**D.** For the purposes of the coverage provided by this endorsement, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**1. Employment-related Practices Liability Annual Aggregate Limit Of Insurance**

**a.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay, regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought; or

**(3)** Persons, organizations or government agencies making "claims" or bringing "suits".

**b.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of:

**(1)** All damages; and

**(2)** All "defense expenses"

because of all "wrongful acts" to which this insurance applies.

The Employment-related Practices Liability Annual Aggregate Limit Of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

**2. Deductible**

**a.** We will not pay for our share of damages and "defense expenses" until the amount of damages and "defense expenses" exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of damages and "defense expenses" in excess of the Deductible, up to the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

**Example No. 1**

Deductible: $5,000

Limit of Insurance: $100,000

Damages and "Defense Expenses": $75,000

The Deductible will be subtracted from the amount of damages and "defense expenses" in calculating the amount payable:

$75,000 - $5,000 = $70,000 Amount Payable

**Example No. 2**

Deductible: $5,000

Limit of Insurance: $100,000

Damages and "Defense Expenses": $120,000

The Deductible will be subtracted from the amount of damages and "defense expenses" ($120,000 - $5,000 = $115,000). Since the amount of the damages and "defense expenses" minus the Deductible exceeds the Limit of Insurance, the policy will pay the full Limit of Insurance ($100,000).

**b.** The Deductible amount shown in the Schedule applies to all "claims" arising out of:

**(1)** The same "wrongful act"; or

---

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

**(2)** A series of "wrongful acts", circumstances or behaviors which arise from a common cause regardless of the number of persons, organizations or government agencies making such "claims".

**c.** We may pay any part or all of the Deductible amount to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

**E.** For the purposes of the coverage provided by this endorsement, the following are added to Paragraph **E. Liability And Medical Expenses General Conditions:**

**1. Consent To Settle**

If we recommend a settlement to you which is acceptable to the claimant, but to which you do not consent, the most we will pay as damages in the event of any later settlement or judgment is the amount for which the "claim" could have been settled, to which you did not give consent, less any deductible.

**2. Duties In The Event Of A Claim Or Wrongful Act That May Result In A Claim**

**a.** If a "claim" is received by any insured, you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Notify us, in writing, as soon as practicable.

**b.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of a "wrongful act" to which this insurance may also apply.

**c.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

**d.** If you become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim" and for which a "claim" has not yet been received, you must notify us, in writing, as soon as practicable. Such notice must provide:

**(1)** A description of the "wrongful act", including all relevant dates;

**(2)** The names of the persons involved in the "wrongful act", including names of the potential claimants;

**(3)** Particulars as to the reasons why you became aware of and reasonably expect a "claim" which may result from such "wrongful act";

**(4)** The nature of the alleged or potential damages arising from such "wrongful act"; and

**(5)** The circumstances by which the insured first became aware of the "wrongful act".

**3. Representations**

By accepting this policy, you agree that:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**4. If You Are Permitted To Select Defense Counsel**

If, by mutual agreement or court order, the insured is given the right to select defense counsel and the Limit of Insurance has not been used up, the following provisions apply:

**a.** We retain the right, at our discretion, to:

**(1)** Settle, approve or disapprove the settlement of any "claim"; and

**(2)** Appeal any judgment, award or ruling at our expense.

**b.** You and any other involved insured must:

**(1)** Continue to comply with Paragraph **E.2. Duties In The Event Of A Claim Or Wrongful Act That May Result In A Claim** Condition of this endorsement as well as the other provisions of this policy; and

**(2)** Direct defense counsel of the insured to:

**(a)** Furnish us with the information we request to evaluate those "suits" for coverage under this policy; and

**(b)** Cooperate with any counsel we may select to monitor or associate in the defense of those "suits".

**c.** If we defend you under a reservation of rights, both your and our counsel will be required to maintain records pertinent to your "defense expenses". These records will be used to determine the allocation of any "defense expenses" for which you may be solely responsible, including defense of an allegation not covered by this insurance.

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

**5.  Transfer Of Duties When Limit Of Insurance Is Used Up**

**a.** If we conclude that, based on "claims" which have been reported to us and to which this insurance may apply, the Employment-related Practices Liability Annual Aggregate Limit Of Insurance is likely to be used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will notify the first Named Insured, in writing, to that effect.

**b.** When the Employment-related Practices Liability Annual Aggregate Limit Of Insurance has actually been used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will:

**(1)** Notify the first Named Insured in writing, as soon as practicable, that such a limit has actually been used up, and that our duty to defend the insured against "suits" seeking damages subject to that limit has also ended;

**(2)** Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "suits" for which the duty to defend has ended for the reason described in preceding Paragraph **5.b.(1)** and which are reported to us before that duty to defend ended; and

**(3)** Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

**c.** If the circumstances described in Paragraph **5.b.(1)** have occurred, the first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must:

**(1)** Cooperate in the transfer of control of "suits"; and

**(2)** Arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**d.** We will take no action with respect to defense for any "claim" if such "claim" is reported to us after the Employment-related Practices Liability Annual Aggregate Limit Of Insurance has been used up. It becomes the responsibility of the first Named Insured, and any other insured involved in such a "claim", to arrange defense for such "claim".

**e.** The first Named Insured will reimburse us as soon as practicable for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **5.b.**

**f.** The exhaustion of the Employment-related Practices Liability Annual Aggregate Limit Of Insurance and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this Condition.

**F.  Extended Reporting Period**

**1.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**a.** You will have the right to purchase an Extended Reporting Period from us if:

**(1)** This endorsement is cancelled or not renewed for any reason; or

**(2)** We renew or replace this endorsement with insurance that:

**(a)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(b)** Does not apply to "wrongful acts" on a claims-made basis.

**b.** An Extended Reporting Period, as specified in Paragraph **F.1.a.** above, lasts up to three years and is available only for an additional premium.

**c.** The Extended Reporting Period starts with the end of the policy period. It does not extend the policy period or change the scope of the coverage provided. It applies only to "claims" to which the following applies:

**(1)** The "claim" is first made during the Extended Reporting Period;

**(2)** The "wrongful act" occurs before the end of the policy period; and

**(3)** The "wrongful act" did not commence before the Retroactive Date.

**d.** You must give us a written request for the Extended Reporting Period within 30 days after the end of the policy period or the effective date of cancellation, whichever comes first.

**e.** The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and any premium or deductible you owe us for coverage provided under this endorsement. Once in effect, the Extended Reporting Period may not be cancelled.

**f.** We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**(1)** The exposures insured;

**(2)** Previous types and amounts of insurance;

**(3)** Limit of Insurance available under this endorsement for future payment of damages; and

**(4)** Other related factors.

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

The additional premium will not exceed 200% of the annual premium for this endorsement.

**g.** When the Extended Reporting Period is in effect, we will provide a Supplemental Limit of Insurance for any "claim" first made during the Extended Reporting Period.

The Supplemental Limit of Insurance will be equal to the dollar amount shown in the Schedule of this endorsement under the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly.

**2.** If the Extended Reporting Period is chosen by checking the appropriate box in the Schedule of this endorsement, the provisions of this Paragraph **2.** supersede any other provisions of this endorsement to the contrary.

**a.** An Extended Reporting Period is provided, as described in Paragraph **F. Extended Reporting Period.**

**b.** A Supplemental Limit of Insurance applies, as set forth in Paragraph **F.2.c.** below, to "claims" first made during the Extended Reporting Period. The limit is equal to the Employment-related Practices Liability Annual Aggregate Limit Of Insurance entered in the Schedule.

**c.** Paragraph **D.1.b.** of this endorsement is replaced by the following:

**b.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of:

**(1)** All damages; and

**(2)** All "defense expenses"

because of all "wrongful acts" to which this insurance applies.

However, the Employment-related Practices Liability Annual Aggregate Limit Of Insurance does not apply to "claims" to which the Supplemental Limit Of Insurance applies.

**d.** The following is added to Paragraph **D.1.** of this endorsement:

**c.** The Supplemental Limit Of Insurance is the most we will pay for the sum of:

**(1)** All damages; and

**(2)** All "defense expenses"

because of all "wrongful acts" for "claims" first made during the Extended Reporting Period.

**e.** Paragraph **D.1. Employment-related Practices Liability Annual Aggregate Limit Of Insurance,** as amended by Paragraphs **F.2.c.** and **F.2.d.,** is otherwise unchanged and applies in its entirety.

**f.** The Extended Reporting Period will not take effect unless the additional premium for it, as set forth in Paragraph **F. Extended Reporting Period,** is paid when due. If that premium is paid when due, the Extended Reporting Period may not be cancelled.

**G.** For the purposes of the coverage provided by this endorsement, the following is added to Paragraph **F. Liability And Medical Expenses Definitions** of the policy:

**1.** "Claim" means a "suit" or demand made by or for a current, former or prospective "employee" for damages because of an alleged "wrongful act".

**2.** "Defense expenses" means payments allocated to a specific "claim" we investigate, settle or defend, for its investigation, settlement or defense, including:

**a.** Fees and salaries of attorneys and paralegals we retain, including attorneys and paralegals who are our "employees".

**b.** Fees of attorneys the insured retains when, by our mutual agreement or court order (or when required by administrative hearing or proceeding), the insured is given the right to retain defense counsel to defend against a "claim".

**c.** All other litigation or administrative hearing expenses, including fees or expenses of expert witnesses hired either by us or by the defense attorney retained by an insured.

**d.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work.

**e.** Costs taxed against the insured in a "suit".

"Defense expenses" does not include salaries and expenses of our "employees" or the insured's "employees" (other than those described in Paragraphs **a.** and **d.** of this definition).

**3.** "Discrimination" means violation of a person's civil rights with respect to such person's race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition, or any other protected class or characteristic established by any federal, state or local statutes, rules or regulations.

**4.** "Wrongful act" means one or more of the following offenses, but only when they are employment-related:

**a.** Wrongful demotion or failure to promote, negative evaluation, reassignment, or discipline of your current "employee" or wrongful refusal to employ;

**b.** Wrongful termination, meaning the actual or constructive termination of an "employee":

**BUSINESSOWNER'S  – Employment-related Practices Liability Endorsement**

**(1)** In violation or breach of applicable law or public policy; or

**(2)** Which is determined to be in violation of a contract or agreement, other than an employment contract or agreement, whether written, oral or implied, which stipulates financial consideration if such financial consideration is due as the result of a breach of the contract;

**c.** Wrongful denial of training, wrongful deprivation of career opportunity, or breach of employment contract;

**d.** Negligent hiring or supervision which results in any of the other offenses listed in this definition;

**e.** Retaliatory action against an "employee" because the "employee" has:

**(1)** Declined to perform an illegal or unethical act;

**(2)** Filed a complaint with a governmental authority or a "suit" against you or any other insured in which damages are claimed;

**(3)** Testified against you or any other insured at a legal proceeding; or

**(4)** Notified a proper authority of any aspect of your business operation which is illegal;

**f.** Coercing an "employee" to commit an unlawful act or omission within the scope of that person's employment;

**g.** Harassment;

**h.** Libel, slander, invasion of privacy, defamation or humiliation; or

**i.** Verbal, physical, mental or emotional abuse arising from "discrimination".

**H.** If Employment-related Malicious Prosecution is chosen by checking the appropriate box in the Schedule of this endorsement, then the following provisions apply:

**1.** Paragraph **B.a.** of this endorsement is replaced by the following:

This insurance does not apply to:

**a. Criminal, Fraudulent Or Malicious Acts**

An insured's liability arising out of criminal, fraudulent or malicious acts or omissions by that insured.

However, this exclusion does not apply to malicious prosecution of "employees" by that insured. This exclusion does not affect our duty to defend, in accordance with Paragraph **A.1.** of this endorsement, an insured prior to determining, through the appropriate legal processes, that that insured is responsible for a criminal, fraudulent or malicious act or omission.

**2.** The following is added to Paragraph **G.4.** of this endorsement:

**j.** Malicious prosecution.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission

**BUSINESSOWNER'S**
**BP 99 188 06 16**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT - PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

Paragraph **D.1. Deductibles** of **SECTION I – PROPERTY** is replaced with the following:

**D. Deductibles**

1. We will not pay for loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss as a result of one occurrence until the amount of such loss or damage exceeds the applicable Deductible shown in the Declarations or as set forth below.  We will then pay the amount of such loss or damage in excess of the Deductible up to the applicable Limit of Insurance of **Section 1 - Property**.  In the event of loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss at one or more buildings at the same location, as a result of one occurrence, only the single largest deductible scheduled for loss at such building(s) will apply to all such loss or damage regardless of the number of buildings involved in the loss.  However, this Paragraph **D.1** does not apply to loss or damage from Earthquake or Windstorm or Hail causes of loss.

   **EXAMPLES**

   **Example 1** - Loss at multiple buildings, same location.

   A fire damages Buildings 1 and 2 which results in a spoilage loss at Buildings 3 and 4 due to a power outage from the fire.

   | | |
   |---|---|
   | Property Deductible – Building 1: | $250 |
   | Property Deductible – Building 2: | $250 |
   | Limit of Insurance – Building 1: | $60,000 |
   | Limit of Insurance – Building 2: | $80,000 |
   | Loss to Building 1: | $50,100 |
   | Loss to Building 2: | $70,000 |

| | |
|---|---|
| Spoilage Deductible – Building 3 : | $500 |
| Spoilage Deductible – Building 4 : | $500 |
| Spoilage Limit of Insurance – Building 3: | $5,000 |
| Spoilage Limit of Insurance – Building 4: | $2,000 |
| Spoilage loss at Building 3: | $2,500 |
| Spoilage loss at Building 4: | $1,500 |

The largest deductible involved in the occurrence was the $500 spoilage deductible and will be subtracted from the total Loss Payable:

```
  $  50,100 – Building 1 loss
+ $  70,000 – Building 2 loss
+ $   2,500 – Spoilage loss at Building 3
+ $   1,500 – Spoilage loss at Building 4
  $ 124,100 – Total loss
- $     500 – Largest deductible involved in loss
  $ 123,600 – Total loss payable
```

**Example 2** - Identical loss occurs but only at building 1, no loss at other buildings (same deductibles and limits)

| | |
|---|---|
| Property Deductible – Building 1: | $250 |
| Limit of Insurance – Building 1: | $60,000 |
| Loss to Building 1: | $50,100 |
| Spoilage Loss at Building 1: | $2,500 |

The largest deductible involved in the occurrence was the $500 spoilage deductible for Building 1 and will be subtracted from the total Loss Payable.

```
  $  50,100 - Building 1 loss
+ $   2,500 - Spoilage loss at Building 1
  $  52,600 - Total Loss at Building 1
- $     500 - Largest deductible involved in loss
  $  52,100 - Total loss payable.
```

**BUSINESSOWNER'S**
**BP 99 421 03 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**Section I – Property** is amended as follows:

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including "electronic data").

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including "electronic data") and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including "electronic data") or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Computer Fraud And Funds Transfer Fraud Endorsement**

The exclusion in Paragraph **A.** does not apply to the Computer Fraud And Funds Transfer Fraud endorsement or other endorsement that includes the Computer Fraud And Funds Transfer Fraud coverage when attached to your policy.

**4. Cyber Suite Coverage Endorsement**

The exclusion in Paragraph **A.** does not apply to the Cyber Suite Coverage endorsement when attached to your policy.

**5. Data Compromise Coverage Endorsement**

The exclusion in Paragraph **A.** does not apply to the Data Compromise Coverage endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism:

Vandalism does not include a cyber incident as described in Paragraph **A.**

**D. Spoilage Coverage**

The exclusion in Paragraph **A.** shall apply to any endorsement providing Spoilage Coverage when attached to your policy.

---

Includes copyrighted material of the Insurance Services Office, Inc., with permission.
© WestGUARD Insurance Company, All rights reserved.

**BUSINESSOWNER'S**
**BP 99 60 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**SCHEDULE**

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| Location 001, Building 001 | $10,000 | $10,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section **I** – Property, caused by or resulting from:

**1.** Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

**2.** Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **A.2.,** we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

***THIS IS NOT FLOOD INSURANCE.  We will not pay for loss or damage from water or other materials that back up or overflow  from any sewer, drain or sump that itself is caused, directly or indirectly, in whole or in part, by any flood.  Flood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not.***

**B.** The coverage described in Paragraph **A.** of this endorsement does not apply to loss or damage resulting from an insured's failure to:

**1.** Keep a sump pump or its related equipment in proper working condition; or

**2.** Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**C.** The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**D.** The following provisions apply to **Section I – Property** and supersede any provisions to the contrary:

The most we will pay under:

**BUSINESSOWNER'S – Water Back-Up and Sump Overflow Endorsement**

**1.** Paragraph **A.5.f. Business Income** Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

**2.** Paragraph **A.5.g. Extra Expense** Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

**E.** With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I – Property** is replaced by the following exclusion:

**Water**

**1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** Mudslide or mudflow; or

**3.** Water under the ground surface pressing on, or flowing or seeping through:

  **a.** Foundations, walls, floors or paved surfaces;

  **b.** Basements, whether paved or not; or

  **c.** Doors, windows or other openings; or

**4.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**BUSINESSOWNER'S**
**BP 99 64 03 12**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESS INCOME CHANGES – TIME PERIOD

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**SCHEDULE**

| Number of Hours | 72 |
| --- | --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section I – Property** is amended as follows:

**A.** Paragraph **A.5.i. Civil Authority** Additional Coverage is amended by deleting the second paragraph and replacing it with the following:

Civil Authority coverage for Business Income will begin the number of hours shown in the Schedule of this endorsement after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

**B.** Paragraph **A.5.m.(5)(a) Business Income From Dependent Properties** Additional Coverage is replaced by the following:

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins the number of hours shown in the Schedule of this endorsement after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises of the dependent property; and

**C.** Paragraph **H.9.a.(1)(a)** of the "period of restoration" definition is replaced by the following:

**(a)** The number of hours shown in the Schedule of this endorsement after the time of direct physical loss or damage for Business Income Coverage; or

 

**BUSINESSOWNER'S
BP IN 01 01 10**

# BUSINESSOWNER'S COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 21 | Business Liability Coverage | 30-32 |
| Accounts Receivable Coverage Extension | 14 | Business Personal Property Coverage | 1 |
| Accounts Receivable Exclusion | 20 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 20-21 |
| Acts Or Decisions Exclusion | 19 | Cancellation Condition | 46 |
| Additional Coverages | 3-12 | Certain Computer-related Losses Exclusion | 16-17 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 19 | Changes Condition | 46 |
| "Advertisement" Definition | 42 | Changes In Or Extremes Of Temperature Exclusion | 18 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 41 | Civil Authority Additional Coverage | 7-8 |
| Aircraft, Auto Or Watercraft Exclusion | 35 | Collapse Additional Coverage | 4-5 |
| Appraisal Property Loss Condition | 21 | Collapse Exclusion | 18 |
| "Auto" Definition | 42 | "Computer" Definition | 28 |
| Bankruptcy General Condition | 41 | Concealment, Misrepresentation Or Fraud Condition | 46 |
| "Bodily Injury" Definition | 42 | Consequential Losses Exclusion | 17 |
| Building Coverage | 1 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 19 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 20 | Contractual Liability Exclusion | 33 |
| Business Income Additional Coverage | 5-7 | Control Of Property General Condition | 25 |
| Business Income And Extra Expense Exclusions | 19-20 | "Counterfeit Money" Definition | 29 |
| Business Income From Dependent Properties Additional Coverage | 9-10 | Coverage Extension – Supplementary Payments (Business Liability Coverage) | 31-32 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extensions – Section **I** – Property | 12-14 | Errors Or Omissions Exclusion | 19 |
| "Coverage Territory" Definition | 42 | Examination Of Your Books And Records Condition | 46 |
| Covered Causes Of Loss | 2 | Exclusions – Section **I** – Property | 14-20 |
| Covered Property | 1 | Exclusions – Section **II** – Liability | 32-40 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 36 | "Executive Officer" Definition | 43 |
| Damage To Property Exclusion | 36 | Expected Or Intended Injury Exclusion | 33 |
| Damage To Your Product Exclusion | 36 | Exposed Property Exclusion | 18 |
| Damage To Your Work Exclusion | 36 | Extended Business Income Coverage (Business Income Additional Coverage) | 6-7 |
| Dampness Or Dryness Of Atmosphere Exclusion | 18 | Extra Expense Additional Coverage | 7 |
| Debris Removal Additional Coverage | 3-4 | False Pretense Exclusion | 18 |
| Deductibles | 21 | Fire Department Service Charge Additional Coverage | 4 |
| Dishonesty Exclusion | 17-18 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 10 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 21-22 | Forgery Or Alteration Additional Coverage | 8 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 41-42 | Frozen Plumbing Exclusion | 17 |
| Earth Movement Exclusion | 15 | "Fungi" Definition | 29 |
| Electrical Apparatus Exclusion | 17 | "Fungi", Wet Rot Or Dry Rot Exclusion | 17 |
| Electrical Disturbance Exclusion | 19 | Glass Expenses Additional Coverage | 10 |
| Electronic Data Additional Coverage | 10-11 | Governmental Action Exclusion | 15 |
| "Electronic Data" Definition | 29 | "Hostile Fire" Definition | 43 |
| Electronic Data Exclusion | 38 | "Impaired Property" Definition | 43 |
| "Employee" Definition | 42 | Increased Cost Of Construction Additional Coverage | 8-9 |
| Employee Dishonesty Optional Coverage | 26-27 | Inspections And Surveys Condition | 47 |
| Employer's Liability Exclusion | 33 | Insurance Under Two Or More Coverages Condition | 47 |
| Equipment Breakdown Protection Optional Coverage | 28-29 | "Insured Contract" Definition | 43 |

BIZGUARD PLUS

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Installation, Testing, Repair Exclusion | 19 | Money Orders And "Counterfeit Money" Additional Coverage | 8 |
| Interruption Of Computer Operations Additional Coverage | 11 | Mortgageholders Property General Condition | 25 |
| "Leased Worker" Definition | 43 | Neglect Exclusion | 18 |
| Legal Action Against Us General Condition Section **II** – Liability | 42 | Negligent Work Exclusion | 19 |
| Legal Action Against Us Property Loss Condition – Section **I** – Property | 22 | Nesting Or Infestation Exclusion | 18 |
| Liability And Medical Expenses Definitions | 42-45 | Newly Acquired Or Constructed Property Coverage Extension | 13 |
| Liability And Medical Expenses General Conditions | 41-42 | No Benefit To Bailee Property General Condition | 25 |
| Liability And Medical Expenses Limits Of Insurance | 41 | Nuclear Energy Liability Exclusion | 38-40 |
| Liberalization Condition | 47 | Nuclear Hazard Exclusion | 15 |
| Limitations | 2-3 | "Occurrence" Definition | 44 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 11-12 | "Operations" Definition | 29 |
| Limits Of Insurance – Section **I** – Property | 20 | Optional Coverages | 25-29 |
| Liquor Liability Exclusion | 33 | Ordinance Or Law Exclusion | 15 |
| "Loading Or Unloading" Definition | 43 | Other Insurance Condition | 47 |
| Loss Payment Property Loss Condition | 22-24 | Other Types Of Loss Exclusion | 18 |
| "Manager" Definition | 29 | Outdoor Property Coverage Extension | 13 |
| Marring Or Scratching Exclusion | 18 | Outdoor Signs Optional Coverage | 25-26 |
| Mechanical Breakdown Exclusion | 18 | "Period Of Restoration" Definition | 29 |
| Medical Expenses Coverage | 32-33 | "Personal And Advertising Injury" Definition | 44 |
| Medical Expenses Exclusions | 38-40 | Personal And Advertising Injury Exclusion | 37 |
| "Member" Definition | 29 | Personal Effects Coverage Extension | 13 |
| "Mobile Equipment" Definition | 43-44 | Personal Property Off-premises Coverage Extension | 13 |
| Mobile Equipment Exclusion | 35 | Policy Period, Coverage Territory Property General Condition | 25 |
| Money And Securities Optional Coverage | 26 | Pollutant Clean-up And Removal Additional Coverage | 7 |
| "Money" Definition | 29 | "Pollutants" Definition – Section **I** – Property | 29 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| "Pollutants" Definition – Section **II** – Liability | 44 | "Specified Causes Of Loss" Definition | 30 |
| Pollution Exclusion – Section **I** – Property | 18 | Steam Apparatus Exclusion | 17 |
| Pollution Exclusion – Section **II** – Liability | 33-35 | "Stock" Definition | 30 |
| Premium Audit Condition | 47-48 | "Suit" Definition | 45 |
| Premiums Condition | 47 | "Temporary Worker" Definition | 45 |
| Preservation Of Property Additional Coverage | 4 | Transfer Of Rights Of Recovery Against Others To Us Condition | 48 |
| "Products-completed Operations Hazard" Definition | 44-45 | Transfer Of Your Rights And Duties Under This Policy Condition | 48 |
| Professional Services Exclusion | 35-36 | Utility Services Exclusion | 15-16 |
| "Property Damage" Definition | 45 | Vacancy Property Loss Condition | 24-25 |
| Property Definitions | 29-30 | Valuable Papers And Records Coverage Extension | 14 |
| Property General Conditions | 25 | "Valuable Papers And Records" Definition | 30 |
| Property Loss Conditions | 21-25 | Violation Of Customer Protection Statutes Exclusion | 38 |
| Property Not Covered | 2 | Virus Or Bacteria Exclusion | 17 |
| Recall Of Products, Work Or Impaired Property Exclusion | 37 | "Volunteer Worker" Definition | 45 |
| Recovered Property Loss Condition | 24 | War And Military Action Exclusion | 16 |
| Resumption Of Operations Property Loss Condition | 24 | War Exclusion | 35 |
| Rust Or Other Corrosion Exclusion | 18 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 5 |
| Section **I** – Property | 1-30 | Water Exclusion | 16 |
| Section **II** – Liability | 30-45 | Wear And Tear Exclusion | 18 |
| Section **III** – Common Policy Conditions | 46-48 | Weather Conditions Exclusion | 19 |
| "Securities" Definition | 29 | Who Is An Insured | 40-41 |
| Separation Of Insureds General Condition | 42 | Workers' Compensation And Similar Laws Exclusion | 33 |
| Settling, Cracking, Shrinking Or Expansion Exclusion | 18 | "Your Product" Definition | 45 |
| Smog Exclusion | 18 | "Your Work" Definition | 45 |
| Smoke, Vapor, Gas Exclusion | 17 | | |




BUSINESSOWNER'S
BP 00 03 01 10

# BUSINESSOWNER'S COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in

**BUSINESSOWNER'S COVERAGE FORM**

your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns;

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software.

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in Paragraph **B.** Exclusions in Section **I;** or

**b.** Limited in Paragraph **4.** Limitations in Section **I.**

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

    **(b)** Containers of property held for sale; or

    **(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

    **(1)** $2,500 for furs, fur garments and garments trimmed with fur.

    **(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

  **a. Debris Removal**

    **(1)** Subject to Paragraphs **(3)** and **(4),** we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)** Debris Removal does not apply to costs to:

      **(a)** Extract "pollutants" from land or water; or

      **(b)** Remove, restore or replace polluted land or water.

    **(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

      **(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      **(b)** Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    **(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

    **(5) Examples**

    **Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| | ($10,000 is 20% of $50,000) |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

    **Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 30,000 |

**BUSINESSOWNER'S COVERAGE FORM**

Debris Removal Expense
Payable

| | |
|---|---|
| Basic Amount | $ 10,500 |
| Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

**BUSINESSOWNER'S COVERAGE FORM**

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you rent, lease or occupy; and

**(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

● Job Classifications; or

● Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2)** **Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 30 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**BUSINESSOWNER'S COVERAGE FORM**

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** – Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**BUSINESSOWNER'S COVERAGE FORM**

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than

**BUSINESSOWNER'S COVERAGE FORM**

fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I** – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(c)** Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**BUSINESSOWNER'S COVERAGE FORM**

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

**a. Ordinance Or Law**

**(1)** The enforcement of any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**BUSINESSOWNER'S COVERAGE FORM**

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above results in a "specified cause of loss" under Section **I** – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i.  "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j.  Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.;**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1),** such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.  Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b.  Consequential Losses**

Delay, loss of use or loss of market.

**c.  Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.  Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e.  Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f.  Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**BUSINESSOWNER'S COVERAGE FORM**

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion.

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**BUSINESSOWNER'S COVERAGE FORM**

**(2)** Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; and

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section **I** – Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section **I** – Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

**a.** In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example:**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a** will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**BUSINESSOWNER'S COVERAGE FORM**

   **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

   **a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

   **a.** At our option, we will either:

     **(1)** Pay the value of lost or damaged property;

     **(2)** Pay the cost of repairing or replacing the lost or damaged property;

     **(3)** Take all or any part of the property at an agreed or appraised value; or

     **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

   **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

   **c.** We will not pay you more than your financial interest in the Covered Property.

   **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

     **(1)** At replacement cost without deduction for depreciation, subject to the following:

       **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

         **(i)** The Limit of Insurance under Section **I** – Property that applies to the lost or damaged property;

         **(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

           **i.** Of comparable material and quality; and

           **ii.** Used for the same purpose; or

         **(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

       If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

       **(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

         **(i)** The actual cash value of the lost or damaged property; or

         **(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

      **(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

      **(d)** We will not pay on a replacement cost basis for any loss or damage:

        **(i)** Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**BUSINESSOWNER'S COVERAGE FORM**

  **(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

  **(iv)** All unearned interest and service charges.

 **e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

 **f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

 **g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

  **(1)** We have reached agreement with you on the amount of loss; or

  **(2)** An appraisal award has been made.

 **h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

 If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** – Property.

**7. Resumption Of Operations**

 We will reduce the amount of your:

 **a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

 **b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

 **a. Description Of Terms**

  **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

   **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

    **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

    **(ii)** Used by the building owner to conduct customary operations.

  **(2)** Buildings under construction or renovation are not considered vacant.

 **b. Vacancy Provisions**

  If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

  **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

   **(a)** Vandalism;

   **(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will re- duce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not af- fect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not af- fect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trus- tee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mort- gageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss pay- ment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in owner- ship, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you be- cause of your acts or because you have failed to comply with the terms of this pol- icy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgage- holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mort- gage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non- payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, hav- ing custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section I – Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the fol- lowing Optional Coverages also apply. These cov- erages are subject to the terms and conditions ap- plicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the de- scribed premises:

**BUSINESSOWNER'S COVERAGE FORM**

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.,** Covered Causes Of Loss, and Paragraph **B.,** Exclusions in Section **I** – Property, do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.,** Governmental Action;

    **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.,** War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section **I** – Property, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

      **(a)** In or on the described premises; or

      **(b)** Within a bank or savings institution; and

    **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

  **d.** All loss:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of related acts;

  is considered one occurrence.

  **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

  **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    **(1)** Cause you to sustain loss or damage; and also

    **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

      **(a)** Any employee; or

      **(b)** Any other person or organization.

  **b.** We will not pay for loss or damage:

    **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

    **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

      **(a)** Whether acting alone or in collusion with other persons; or

      **(b)** While performing services for you or otherwise.

    **(3)** The only proof of which as to its existence or amount is:

**BIZGUARD PLUS**

    **(a)** An inventory computation; or

    **(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of acts;

    is considered one occurrence.

**e.** If any loss is covered:

    **(1)** Partly by this insurance; and

    **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

    the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

    We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

    **(1)** You; or

    **(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

    of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

    **(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

    **(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

    **(1)** This Optional Coverage as of its effective date; or

    **(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

    **(1)** Any natural person:

        **(a)** While in your service or for 30 days after termination of service;

        **(b)** Who you compensate directly by salary, wages or commissions; and

        **(c)** Who you have the right to direct and control while performing services for you;

    **(2)** Any natural person who is furnished temporarily to you:

        **(a)** To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

        **(b)** To meet seasonal or short-term workload conditions;

    **(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

    **(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

    **(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

    But employee does not mean:

**BUSINESSOWNER'S COVERAGE FORM**

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2), Limitations,** do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

**(1)** Paragraph **B.2.a. Electrical Apparatus;**

**(2)** Paragraph **B.2.d. Steam Apparatus;** and

**(3)** Paragraph **B.2.l.(6) Mechanical Breakdown.**

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense,** if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**BUSINESSOWNER'S COVERAGE FORM**

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss of or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

    **a.** Documents;

    **b.** Manuscripts; and

    **c.** Records;

    including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

**SECTION II – LIABILITY**

**A. Coverages**

    **1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

    **b.** This insurance applies:

      **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension – Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**BUSINESSOWNER'S COVERAGE FORM**

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

  **(i)** Agrees in writing to:

   **i.** Cooperate with us in the investigation, settlement or defense of the "suit";

   **ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **iii.** Notify any other insurer whose coverage is available to the indemnitee; and

   **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(ii)** Provides us with written authorization to:

   **i.** Obtain records and other information related to the "suit"; and

   **ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

  **(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

  **(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

    **(a)** The accident takes place in the "coverage territory" and during the policy period;

    **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

    **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

  **1. Applicable To Business Liability Coverage**

   This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**BUSINESSOWNER'S COVERAGE FORM**

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

     (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

     **(i)** Any insured; or

     **(ii)** Any person or organization for whom you may be legally responsible; or

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

     **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property dam-

age" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

     **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

     **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 51 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

  **(b)** The operation of any of the following machinery or equipment:

    **(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**BUSINESSOWNER'S COVERAGE FORM**

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

  **(a)** Advertising, broadcasting, publishing or telecasting;

  **(b)** Designing or determining content of websites for others; or

  **(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

  **(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**BUSINESSOWNER'S COVERAGE FORM**

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in Section **II** – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of uranium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**BUSINESSOWNER'S COVERAGE FORM**

**(10)** "Waste" means any waste material:

  **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

  **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

  **1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

  **2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

  **(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

   **a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

   **b.** "Personal and advertising injury" sustained by any one person or organization;

   is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

4. **Aggregate Limits**

   The most we will pay for:

   **a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

   **b.** All:

   **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

**BUSINESSOWNER'S COVERAGE FORM**

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II** – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

BIZGUARD PLUS

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**BUSINESSOWNER'S COVERAGE FORM**

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**BUSINESSOWNER'S COVERAGE FORM**

**SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

       **(a)** Seasonal unoccupancy; or

       **(b)** Buildings in the course of construction, renovation or addition.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   **(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

       **(a)** Have not started, and

       **(b)** Have not been contracted for,

   within 30 days of initial payment of loss.

   **(3)** The building has:

       **(a)** An outstanding order to vacate;

       **(b)** An outstanding demolition order; or

       **(c)** Been declared unsafe by governmental authority.

   **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

   **(5)** Failure to:

       **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

       **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** – Property.

**2.** Business Liability Coverage is excess over:

**a.** Any other insurance that insures for direct physical loss or damage; or

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**BUSINESSOWNER'S COVERAGE FORM**

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# Exhibit D

r r

**VIA CERTIFIED MAIL/RRR:**

r rr d rr

dd r
rd

r

r d
M

r

r r r r r
r r r d r r d r
d r
r r d r d
r r d rr r r d
r r d r r r r r
r d r

**RESERVATION OF RIGHTS**

d r r r r r r r d r
r r d rr
d d

r r r r r r d r r r d
r r r r d r
d d

EXHIBIT D

**SECTION II – LIABILITY**
**A. COVERAGES**

r d d
d " d r " " r r d " r
" r d d r r " r
r d d d d r d " "
d r d d d
r d " " d r " d r "
" r r d " r " r d d r r "
r d r d r
" rr " r d r " "
r

r d d d r d
r r d M d r
d
r r d d d d d d
r d r
r d
r r r r r r r
r d r d d r d r r r r
r

**EXCLUSIONS**

r
r d

r r r r r
" d r " r " r r d " r
r r r r
r r " " r r r d r r d r r d r
d r d d r d " d r
d "

r
r r d r r
r r r r r d
" rr " d " d r " r " r r
d " d r r
r r r r " " r r r
d r r d r r d r d r d





d r r r r r
r d d d r d
r r
d r r r d r " r d d r
r " r r d r d r
r d

**C. Who Is An Insured**

r d d r
d d d r r r d r
d r r
r r r r r r d r r r
r r d r r r d r
d r
d r r d r r r
r d r d r r
r r r d r r d r
r
d r r r r r r d
r r d r " r " d d r r r
r d r r d r r r d r r
r d r r r d r r
d r
r r r d r r r r d
r r d r

**HIRED AUTO AND NON-OWNED AUTO LIABILITY**

d r d r r d d d r

M

r r d d r r r r
r r r d

r d



r r d d d r r r
" d r " r " r r d " r
r " r d " r r " "
r r

d
r r d d d r r r
" d r " r " r r d " r
" d " r r

r r r d r d

r d d r d r

r

r r " r d " r r
r " d "
r r r " r" r r
" " r " d "
d r d
d r r r r r r
r r d d r r
r d
r d r r r r
" d r " " " r r d
r r d r r r r r
" " " d r " r r
r d r r
d r
r r r " r" r " " d
r r r r r r r r d
r d r r d d
" " r "
" r
d r r r " r d "
r r " d " r r " "
r r r
r r r r d rr r
r r r r d r d
r

r d d d r r r d
r r r r r r r d r r
d r r d r r r r d r
d d r r

r r r d
r r r d dd
r r d r r r r r
r r d
r r r d
r r r r d r d r

r

r r
r r

# Exhibit E



**SUTTON T. SLOVER**
*Attorney at Law*
5901 Peachtree Dunwoody Road, Suite A220
Atlanta, GA 30328
P: 404-768-0292
F: 404-419-6011
WWW.SLOVERLAW.NET

October 31, 2023

**VIA CERTIFIED MAIL** # 9589 0710 5270 0736 5219 99
**RETURN RECEIPT REQUESTED**
**AND EMAIL: claims3@guard.com**
Berkshire Hathaway GUARD
Attn: Melissa Ruggiano
P.O. Box 1368
Wilkes-Barre, PA 18703-1368

Re:     **Claim Number:**      **DOBP412038 – 001-001-001**
        **Our Client:**       **Jason S. McKinzie**
        **Insured:**          **DOH, Inc. d/b/a Johnny's New York Style**
                              **Pizza, 7363 Spout Springs Rd**
                              **Flowery Branch, GA 30542**
        **Date of Loss:**     **September 2, 2023**

<u>**OFFER TO SETTLE TORT CLAIM PURSUANT TO O.C.G.A. § 9-11-67.1**</u>
<u>**PLEASE READ THE ENTIRE DEMAND**</u>

Dear Ms. Ruggiano:

As you know, our office was retained to represent Jason S. McKinzie with respect to his tort claims for personal injury caused by the September 2, 2023 roadway incident involving Mr. McKinzie and Jeffery Scott Harr. In connection with that incident, Mr. McKinzie asserts tort claims against DOH, Inc., and its owners, officers, and employees, pursuant to Georgia's Dram Shop Act, O.C.G.A. § 51-1-40. It is our understanding that Berkshire Hathaway GUARD Insurance Companies ("GUARD") provides DOH, Inc. with a commercial liability insurance policy that affords coverage (e.g., Liquor Liability) for Mr. McKinzie's asserted claims. Therefore, this letter is being delivered to GUARD in attempt to settle a tort claim before filing of a civil action, as contemplated by O.C.G.A. § 9-11-67.1, and it is being presented in the course of compromise negotiations.

Pursuant to O.C.G.A.§ 9-11-67.1, we are providing a reasonable opportunity to settle Mr. McKinzie's claims against DOH, Inc., and its owners, officers, and employees, arising out of the above-referenced incident for the amount of the applicable insurance coverage policy limits to the extent provided in the attached Limited Liability Release. **By timely accepting the Offer to Settle set out herein and below, GUARD will protect its insureds' assets from exposure to an excess judgment.** Please consider the following when evaluating this demand for settlement:

EXHIBIT E

Scanned By: WEvans On: 11/14/2023 11:46 AM

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 2 of 15

## MATERIAL FACTS OF THE INCIDENT

Jeffery Scott Harr and Jill E. Harr own and operate DOH, Inc., which is a franchisee of Johnny's New York Style Pizza, i.e., a pizzeria and bar located at 7363 Spout Springs Rd., Flowery Branch, GA 30542. On the evening of Friday, September 1, 2023, Mr. Harr was present at that business' premises in his official capacity and was involved in closing the business for the night. While at the business' premises, Mr. Harr was furnished and/or served, and did consume, alcoholic beverages. He then departed the business premises and operated a motor vehicle on the roadways of Georgia.

At approximately 12:34 a.m. on Saturday, September 2, 2023, Mr. Harr was operating a motor vehicle owned by Jill E. Harr westbound on Tuggle Road in Gwinnett County, Georgia. Tuggle Road is a two-lane rural/residential road that connects heavier traveled roads, mainly Sardis Church Road to the east and Hamilton to the west. In the area where the subject incident occurred, Tuggle Road primarily consists of private driveways to residential single-family homes.



As Mr. Harr traveled west and approached Hamilton Mill, Mr. Harr's actions or omissions caused the vehicle he was driving to enter the eastbound lane of travel on Tuggle Road, i.e., the opposite lane of Mr. Harr's travel. In that eastbound lane of Tuggle Road, Mr. Harr encountered a motorized go-kart operated by Mr. McKinzie. Mr. Harr's vehicle struck the go-kart and ran over its occupant, Mr. McKinzie.

On Friday, September 1, 2023, Mr. McKinzie purchased a motorized go-kart from a seller on Facebook Marketplace. After he brought that go-kart home, Mr. McKinzie departed to ride around offroad trails near his home. Later that evening, he ended up in the undeveloped neighborhood called Hamilton Crossing. Realizing that he would have difficulty finding his way

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 3 of 15

home on the offroad trails in the dark, Mr. McKinzie left Hamilton Crossing via its exit onto Tuggle Road and began to drive the go-kart in the eastbound lane of Tuggle towards his home.

Mr. McKinzie encountered the Ford Escape driven by Mr. Harr just west of a curve in the roadway on Tuggle Road. At that time, Mr. McKinzie and his go-kart were entirely in the eastbound lane. The Ford Escape hit the go-kart, running up and over the left side of the go-kart and Mr. McKinzie's body.

## POLICE INVESTIGATION OF THE INCIDENT

Mr. Harr called 911 from the scene of the incident to request dispatch of law enforcement and emergency personnel. Gwinnett County police officers arrived at the scene approximately 10 minutes after the occurrence of the incident. When the investigating officers made contact with Mr. Harr, he admitted that he "<u>may have crossed the center line into the other lane around the curve</u>." (*See,* Motor Vehicle Crash Report, Case No. GP230068318). The officers also observed road scarring and skid marks on the scene that corroborated that Mr. Harr's vehicle did cross the center line and entered into the eastbound where the incident occurred. (*See,* Motor Vehicle Crash Report).

When law enforcement arrived at the scene, they observed Mr. McKinzie severely injured and receiving medical treatment from EMS. Mr. McKinzie left the scene by ambulance transport to Northside Hospital Gwinnett.

While law enforcement interviewed Mr. Harr at the scene, Mr. Harr showed multiple manifestations of being impaired. (*See,* Motor Vehicle Crash Report). Mr. Harr consented to field sobriety evaluations. After completing the field sobriety evaluations, it was determined that Mr. Harr was under the influence of alcohol, and he was arrested for DUI *per se*. Furthermore, based upon Mr. Harr's statements and the objective markings on the roadway, the officers determined that Mr. Harr violated O.C.G.A. 40-6-81, i.e., "Failure to Maintain Lane," and he was issued a citation for the same. (*See,* Motor Vehicle Crash Report).

## COMPARATIVE NEGLIGENCE ANALYSIS

At the time of the subject accident, Mr. McKinzie was driving a homemade motorized go-kart on a public roadway. We understand that your position is that Mr. McKinzie's decision to drive his go-kart on the roadway was negligent; however, with regard to legal liability for this incident, it is our client's position that his actions and/or omissions were not the **proximate cause** of this incident and his injuries. For the reasons set out below, Mr. Harr's actions and/or omissions were the sole proximate cause of this incident. Therefore, Mr. Harr is liable for Mr. McKinzie's injuries resulting from this incident.

I.    **Mr. Harr's negligence while operating a motor vehicle was the sole proximate cause of this incident.**

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. (<u>Suggested Pattern Jury</u>

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 4 of 15

Instructions, Vol. 1: Civil Cases, 5th ed., 60.200 Torts; Proximate Cause; Definition (August 2020)). When Mr. Harr came around the curve on Tuggle Road the night of the incident, he could have encountered any number of possibilities in the eastbound lane of travel --- an automobile, a pedestrian, a cyclist, a man on a horse, or a boy in a go-kart. In all instances, under the same conditions of this incident, any person located in the eastbound lane of Tuggle Road would have been safe "but for" Mr. Harr negligently causing his vehicle to cross the center line and enter the eastbound lane. Here, Mr. McKinzie's injuries were the result of a danger that every user of this public road, whether permissive or impressive, would have encountered when Mr. Harr's vehicle crossed the center line. Being hit by a vehicle traveling into the wrong lane is *not* an inherent risk of driving a go-kart on the roadway. Moreover, at the time of the incident, Mr. McKinzie was abiding by the Rules of the Road as if he were in an authorized motor vehicle on the roadway and was traveling entirely within the eastbound lane. Therefore, Mr. Harr's negligence was the sole proximate cause of this incident and Mr. McKinzie's injuries.

## II.    Comparison of Mr. Harr's and Mr. McKinzie's alleged intoxication.

We acknowledge that Mr. Harr and Mr. McKinzie were each cited for DUI in connection with the subject incident. We further understand that, at this time, both parties are involved in criminal proceedings related to those charges, they are contesting said charges, and they are presumed innocent under the law. Nevertheless, the evidence available at this time regarding these parties' alleged intoxication is critical to the evaluation of our client's demand, herein.

While Mr. McKinzie admitted to the investigating law enforcement officers that he had consumed alcohol and marijuana prior to the incident, there is no further evidence of his intoxication at the time of this incident. Moreover, there is no act or omission by Mr. McKinzie that caused or contributed to the occurrence of this incident that can be connected to alleged intoxication.

On the other hand, Mr. Harr showed multiple manifestations of being impaired at the scene of the incident. Mr. Harr's speech was slurred at times. He used a patrol vehicle at the scene to brace himself while speaking and did not follow instructions from the investigating officers. During field sobriety evaluations, Mr. Harr exhibited several clues of intoxication. For example, he was unable to balance on a straight line and deviated course while attempting to walk a straight line. Due to the multiple clues of intoxication, it was determined that Mr. Harr was under the influence of alcohol, and he was placed under arrest.

Mr. Harr was taken to Gwinnett County Police Department's Northside Precinct where Mr. Harr underwent a state breath test. After two tests, the tests yielded a result of .121 BAC. While in the intoxilyzer room, Mr. Harr stated to the officer performing the breath test that he had consumed "*two beers prior to driving as he had worked at a bar*." While this statement is an admission to alcohol consumption, it is medically and scientifically improbable, if not impossible, that Mr. Harr only consumed "*two beers*." While many factors impact a person's blood alcohol level when consuming alcohol, the number of drinks that correspond to BAC level can generally be predicted based upon gender and weight. As seen in the table below, a male approximately of Mr. Harr's weight (185) would consume between 5-6 drinks to reach a BAC of .121 like Mr. Harr registered. Moreover, a body metabolizes alcohol over time. Therefore, during the period of time

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 5 of 15

that Mr. Harr traveled from the pizzeria to the site of this incident, was present at the scene of the incident, and then was taken to the police precinct prior to the breath test, Mr. Harr's BAC level likely began to fall.  Accordingly, it is probable that Mr. Harr consumed <u>more</u> than 5-6 drinks prior to this incident for his breath test to result in a .121.

| Drinks | FEMALE | | | | | | | | | MALE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | \multicolumn Body Weight in Pounds | | | | | | | | | | | | | | | | | |
| | 90 | 100 | 120 | 140 | 160 | 180 | 200 | 220 | 240 | 100 | 120 | 140 | 160 | 180 | 200 | 220 | 240 | |
| | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | |
| 1 | .05 | .05 | .04 | .03 | .03 | .03 | .02 | .02 | .02 | .04 | .03 | .02 | .02 | .02 | .02 | .02 | .02 | IMPAIRMENT BEGINS |
| 2 | .10 | .09 | .08 | .07 | .06 | .05 | .05 | .04 | .04 | .08 | .06 | .05 | .05 | .04 | .04 | .03 | .03 | |
| 3 | .15 | .14 | .11 | .10 | .09 | .08 | .07 | .06 | .06 | .11 | .09 | .08 | .07 | .06 | .06 | .05 | .05 | DRIVING SKILLS |
| 4 | .20 | .18 | .15 | .13 | .11 | .10 | .09 | .08 | .08 | .15 | .12 | .11 | .09 | .08 | .08 | .07 | .06 | SIGNIFICANTLY AFFECTED |
| 5 | .25 | .23 | .19 | .16 | .14 | .13 | .11 | .10 | .09 | .19 | .16 | .13 | .12 | .11 | .09 | .09 | .08 | POSSIBLE CRIMINAL |
| 6 | .30 | .27 | .23 | .19 | .17 | .15 | .14 | .12 | .11 | .23 | .19 | .16 | .14 | .13 | .11 | .10 | .09 | PENALTIES |
| 7 | .35 | .32 | .27 | .23 | .20 | .18 | .16 | .14 | .13 | .26 | .22 | .19 | .16 | .15 | .13 | .12 | .11 | — |
| 8 | .40 | .36 | .30 | .26 | .23 | .20 | .18 | .17 | .15 | .30 | .25 | .21 | .19 | .17 | .15 | .14 | .13 | LEGALLY INTOXICATED |
| 9 | .45 | .41 | .34 | .29 | .26 | .23 | .20 | .19 | .17 | .34 | .28 | .24 | .21 | .19 | .17 | .16 | .14 | CRIMINAL |
| 10 | .51 | .45 | .38 | .32 | .28 | .25 | .23 | .21 | .19 | .38 | .31 | .27 | .23 | .21 | .19 | .17 | .16 | PENALTIES |

Source: West Virginia Alcohol Beverage Control Administration

Moreover, according to our initial research, this is not Mr. Harr's first DUI charge.  On August 13, 2000, Mr. Harr was charged with DUI.  Ultimately, that charge was dismissed pursuant to what appears to be a plea deal.  However, on April 4, 2009, Mr. Harr was again charged with DUI, which ultimately led to a Guilty verdict at trial in 2011.  Therefore, we believe that we have a case of habitual drunk-driving in this case, rather than a one-off event.

**III.     Even if there is contributory negligence by Mr. McKinzie, the likely allocation of fault on Mr. Harr puts him and DOH, Inc. at significant risk of liability for substantial damages.**

It remains our client's position that he, by his own negligence or consent, <u>did not</u> proximately cause his own injuries.  However, we acknowledge that Mr. McKinzie had a duty to use ordinary care to avoid the consequences of Mr. Harr's negligence.  Nonetheless, we do not view Mr. McKinzie's contribution to this incident as being equal to or greater than Mr. Harr's negligence.

In Georgia, a plaintiff's comparative negligence may reduce the amount of recovery in the proportion that the plaintiff's negligence compares with the defendant's negligence.  Here, even if Mr. Harr's proportion of negligence is just 50.01%, that proportion puts Mr. Harr and DOH, Inc. at significant risk of liability for substantial damages.  Even if Mr. McKinzie's total damages are reduced by some proportion of his negligence, the remaining amount of damages is likely to exceed the insurance coverages available to DOH, Inc. and Mr. Harr.  Please carefully review the section, further below, regarding Mr. McKinzie's total damages associated with is claims.

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 6 of 15

---

### DOH, INC.'s LIABILITY

In Georgia, an injured party may recover damages against a provider of alcohol if he proves that the provider:

1. knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle …

2. and the sale, furnishing, or serving is the proximate cause of such injury or damage.

O.C.G.A. § 51-1-40 ("Georgia's Dram Shop Act"). The Dram Shop Act imposes liability on the provider of alcohol if the person served is noticeably intoxicated. Whether the patron's intoxication was noticeable has subjective as well as objective elements. Proof of a patron's conduct while being served alcohol, or even scientific evidence based on the level of alcohol in the patron's blood, may lead to the conclusion that the patron's intoxication was actually known by the server, which will satisfy the statute's requirement for the server's liability. Hulsey v. Northside Equities Inc., 249 Ga.App. 474, 548 S.E.2d 41 (2001) aff'd Northside Equities Inc. v. Hulsey, 275 Ga. 364, 567 S.E.2d 4 (2002) ("scientific evidence of a driver's blood alcohol level, adduced in opposition to direct eyewitness testimony that the driver was not noticeably intoxicated, can create a question of fact whether the driver was noticeably intoxicated"). However, liability under the statute does not require that the server actually realized that the patron was intoxicated. A provider of alcohol is deemed to have knowledge if, in the exercise of reasonable care he, should have known of the patron's noticeable intoxication.

Here, it is indisputable that Mr. Harr was furnished and/or served alcoholic beverages at Johnny's New York Style Pizza, 7363 Spout Springs Rd., Flowery Branch, GA 30542. Without any other evidence being necessary, his state of noticeable intoxication while at the pizzeria can be adduced from his BAC level, which was taken long after his departure from the restaurant. Moreover, if the offer to settle herein is rejected, we anticipate conducting extensive discovery in litigation on this issue, including deposing employees of the pizzeria, demanding surveillance video footage, and demanding documentation that would further show Mr. Harr's noticeable state of intoxication at the pizzeria before departing in his vehicle.

Among other civil liabilities that DOH, Inc. may have for this incident, our client has a meritorious Dram Shop Act claim against it.

### OUR CLIENT'S INJURIES AND DAMAGES

As a result of the subject incident, Mr. McKinzie suffered a catastrophic left leg injury that resulted in amputation (amputation of both lower left leg bones). Additionally, he sustained fractures in his right ankle, ligament tear of right ankle, broken right shin bone, tibiofibular joint injury, hip socket fracture, abdominal wall laceration, sciatic nerve damage, and left arm injury.

Mr. McKinzie was admitted to the hospital for several days while he underwent and recovered from multiple surgeries. After being discharged home, Mr. McKinzie had to return to the hospital due to complications from a catheter, which required further surgical intervention.

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 7 of 15

Additionally, Mr. McKinzie underwent another surgery on his right leg on October 20, 2023 to remove pins and hardware previously installed. Mr. McKinzie's recovery from the injuries sustained in the subject incident is nowhere near over.

Mr. McKinzie is entitled to recover compensation for the injuries and damages proximately caused by the negligence of Mr. Harr and DOH, Inc. Mr. McKinzie's damages include, but are not limited to, the following:

### SPECIAL DAMAGES/MEDICAL EXPENSES (PAST AND FUTURE)

As in all cases in Georgia, Mr. McKinzie's necessary medical expenses resulting from his injuries are a legitimate item of damages. I am enclosing copies of Mr. McKinzie's medical bills that he has received thus far. To-date, we have documentation of $606,358.50 in medical expenses associated with necessary treatment of Mr. McKinzie's injuries sustained in the subject incident. We anticipate that amount to significantly increase as we collect additional bills and as Mr. McKinzie continues to require medical care.

### PAST AND FUTURE PAIN AND SUFFERING

In Georgia, pain and suffering is a legal item of damages. Mr. McKinzie has suffered for approximately since this accident, and, in light of the permanent injuries and the loss of a limb, he will continue to experience some level of suffering in the future as a proximate result of this accident. Not only has Mr. McKinzie experienced actual, severe physical pain and suffering, but Mr. McKinzie has also experienced mental suffering associated with interference with normal living; interference with enjoyment of life; loss of capacity to labor and earn money; impairment of bodily health and vigor; fear of extent of injury; shock of impact; and mental anguish.

### FUTURE LOST EARNINGS

Mr. McKinzie's injuries, specifically the loss of limb, will undoubtedly affect his ability to labor in the future. His earning capacity will be permanently reduced for the remainder of his life. Mr. McKinzie's lost earnings, past and future, as well as lost earning capacity, is a legal item of damages proximately caused by Mr. Harr and DOH, Inc.'s negligence.

### TOTAL DAMAGES

When all of Mr. McKinzie's items of damages are considered, *particularly the general damages left to the enlightened consciousness of impartial jurors*, Mr. McKinzie' total damages are reasonably expected to exceed $1,000,000.00. In fact, in a 2017 auto accident case tried in the State Court of Gwinnett County, i.e., the venue where Mr. McKinzie's case against Mr. & Mrs. Harr is filed, a jury returned a verdict of $47,000,000.00 in a case involving a leg amputation and a business entity behind the individual tortfeasor. There are several more examples of leg amputation cases in Georgia resulting in outcomes of $5,000,000.00 or greater.

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 8 of 15

---

## LIMITS OF LIABILITY INSURANCE COVERAGE

It is our understanding that the available liability coverage limit to protect GUARD's insureds in this incident is $1,000,000.00. This understanding is predicated on information provided by you, and we are expressly relying on your representation that the policy limits are the amount stated herein. If you, your insureds, or GUARD contend the applicable policy limits are greater or less than the amount specified herein, please let us know that position within ten (10) days of receipt of this letter, as this information will alter the material terms of the Offer to Settle made in this demand, thereby voiding the Offer entirely.

## DUTY OF A LIABILITY INSURER

In view of the fact that GUARD's policy limits are insufficient to compensate for the total amount of damages, past and future, incurred by Mr. McKinzie as a result of the subject incident, it is your duty to offer your policy limits to avoid endangering your insureds' financial well-being. In fact, when there is a likelihood that damages in excess of the policy limits will be awarded and the insurer has an opportunity to settle a case within its policy limits, it is clear that the insurer must act with the utmost good faith on behalf of its insured in attempting to dispose of the claim against him. In addition, the Georgia Court of Appeals has stated that,

> As a professional in the defense of suits, [the insurer] must use a degree of skill commensurate with such professional standards. As the champion of the insured, [the insurer] must consider as paramount his interests, rather than its own, and may not gamble with his funds".

United States Fidelity & Guaranty Co. v. Evans, 116 Ga.App. 93, 156 S.E.2d 809, 811, quoting 7A Appleman, Insurance Law and Practice 533, 4711, aff'd, 223 Ga. 789, 158 S.E.2d 243 (1967).

The court in Evans held that when an insurer is considering its own self-interest regarding whether or not to settle a case within the policy limits, the insurer must give at least equal consideration to the interests of its insured. 156 S.E.2d at 812. See also, Southern General Insurance Co. v. Holt, 262 Ga. 267, 416 S.E.2d 274 (1992).

In a 1984 Georgia Supreme Court decision, Chief Justice Hill approvingly cited Evans and held that,

> "…where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limits of liability. The reason for this rule is that the insurer may not gamble with the funds of its insured by refusing to settle within the policy limits." McCall v. Allstate Ins. Co., 251 Ga. 869, 310 S.E.2d 513, 514-15 (1984).

The court in Evans further stated,

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 9 of 15

---

"The insurer is negligent in failing to settle if choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk – that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results." Evans, 156 S.E.2d at 811, quoting Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1447.

It is clear in this case that the chances of unfavorable results for your insureds are out of reasonable proportion to the chances of favorable results. Refusal to settle within policy limits would be taking an unreasonable risk by gambling with the funds of your insured.

There is no doubt that a verdict in favor of Mr. McKinzie would exceed the limits of the applicable policy of GUARD. This will inevitably expose DOH, Inc. to a verdict in excess of GUARD's policy limits. It is now GUARD's decision that will determine whether or not your insured is going to be exposed to liability above and beyond the policy limits. Failure in this case to immediately offer to pay its policy limits would constitute a breach of your duty to protect the interest of your insured. The Supreme Court of Georgia spoke of such a duty in McCall:

"In defending against the claims of a person injured by the insured, the insurer's duty to protect the interests of the insured arises because the liability of the insured is not fully protected by the terms of the liability policy." 310 S.E.2d at 515.

The only rational reason for GUARD to refuse to immediately offer its policy limits to Mr. McKinzie is that GUARD has decided to consider its own interests above the interests of its insured, a position which is contrary to the dictates of the Georgia Supreme Court and Georgia law. Georgia law requires the insurer to give at least equal consideration to the interests of the insured, and to accord it's insured the same faithful consideration it gives its own interest. Evans, 156 S.E.2d at 812; National Emblem Ins. Co. v. Pritchard, 140 Ga.App. 350, 231 S.E.2d 126 (1976); see also, Great American Ins. Co. v. Exum, 123 Ga.App. 515, 181 S.E.2d 704, 708 (1971) (affirming a verdict in excess of the policy limits where the insurer was aware of the seriousness of the injuries and considered the case "a dangerous one").

Finally, the Georgia Court of Appeals has clearly held that bad faith refusal to protect an insured can subject the insurer to punitive damages. In Thomas v. Atlanta Casualty Co., 253 Ga.App. 199, 588 S.E.2d 432 (2001) the court held: "Where there has been such entire want of care amounting to a conscious indifference to the consequences, this may constitute tortuous conduct making punitive damages authorized in any action for negligence or intentional tort of bad faith; this creates a jury question as to whether clear and convincing evidence exists as to such conduct by Atlanta Casualty. OCGA § 51-12-5.1; Brown v. StarMed Staffing, 227 Ga.App. at 768-770(6), 409 s.e.2D 852, rev'd in part on other grounds." Following the trial of Thomas v. Atlanta Casualty Co., the jury returned a verdict of $5,600,000.00. Having studied all available bad faith law in the State of Georgia, there is little doubt that a refusal to pay policy limits in this case would lead to later punitive exposure against the insurer.

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 10 of 15

<hr>

### OUR CLIENT'S OFFER TO SETTLE

**On behalf of Jason S. McKinzie, we are demanding payment of $1,000,000.00, i.e., the limit of GUARD's applicable liability coverage, to settle Mr. McKinzie's claims against GUARD's insureds, subject to a Limited Liability Release and the Material Terms of Settlement provide below.**

#### MATERIAL TERMS OF SETTLEMENT

(1) Acceptance of this Offer, in its entirety, must be made in writing to: The Law Office of Sutton T. Slover, PC, 5901 Peachtree Dunwoody Road NE, Suite A220, Atlanta, Georgia 30328, or 404-419-6011 (FAX), or kevin@sloverlaw.net (email)

(2) This Offer to Settle must be accepted, *in writing*, within thirty (30) days from the receipt of this Offer. The 30-day period shall be conclusively established by the certified-return-receipt requested provided by the U.S. Postal Service.

(3) Payment in the amount of One-Million Dollars (<u>$1,000,000.00</u>) must be made payable to "<u>Jason S. McKinzie and The Law Office of Sutton T. Slover, P.C.</u>," and delivered to our office within forty (40) days from the receipt of this offer. **Timely payment is an essential element of acceptance and must be in our hands within the stated 40 days.**

(4) At the same time that payment is delivered, a statement, under oath, must be provided regarding whether all liability and casualty insurance issued by GUARD that provides coverage, or that may provide coverage, for the claim at issue in this letter has been disclosed to us.

(5) If this Offer to Settle is accepted, DOH, Inc., and its owners, officers, and employees, will be released from liability subject to the <u>Limited Liability Release</u> enclosed herewith.

(6) The claims released by accepting this Offer are itemized in the enclosed Limited Liability Release.

### CONCLUSION

We recognize that this tragedy has severely impacted two families. There is opportunity here to bring some degree of security and closure to both families. However, this will be GUARD's one and only opportunity to obtain a limited liability release of Mr. McKinzie's claims against its insureds within the applicable policy limits. We will not extend the time for acceptance nor ever give GUARD another opportunity to resolve this case within its insureds' policy limits. If GUARD chooses to gamble with the funds of its insureds by refusing to accept this Offer *strictly on the materials terms provided herein*, we will seek a judgment against GUARD's insureds for our client's total damages, which will far exceed the coverage limit on the stated liability policy. Our firm has successfully obtained excess judgments, resulting in bad-faith penalties on the insurer, in cases presenting far less exposure than this. Please govern yourself wisely.

OFFER TO SETTLE TORT CLAIM
Re: Claim No. **DOBP412038 – 001-001-001 (Jason McKinzie)**
Page 11 of 15

Our firm's Tax Identification Number is <u>26-2815616.</u> We will be happy to provide a signed W-9 upon your request, but your request does not extend any time limits under this offer. Please contact me to discuss any further needs. Otherwise, we look forward to your timely response.

Sincerely,

**Kevin W. Burkhart, Esq.**
kevin@sloverlaw.net

CC: Client
Encl.

## LIMITED LIABILITY RELEASE
### Pursuant to O.C.G.A. §33-24-41.1

KNOW ALL MEN by these presents that <u>Jason S. McKinzie</u>, "the Undersigned," for and in consideration of the sum of <u>$1,000,000.00</u>, to the Undersigned, in hand paid, receipt and sufficiency of which is hereby acknowledged, does hereby and for the heirs, executors, administrators, successors, and assigns of the Undersigned acquit, remise, release, and forever discharge <u>Berkshire Hathaway GUARD Insurance Companies</u>, "Insurance Carrier," with regard to Policy No. _____ only, and does hereby acquit, remise, release, and forever discharge <u>DOH, Inc, and each of its directors, officers, employees, representatives or agents</u>, except to the extent other insurance coverage is available which covers the claim or the claims of the Undersigned against the Limited Liability Releasee, from any other claim or claims of the Undersigned against the Limited Liability Releasee, from any and all claims, demands, rights, causes of action of whatsoever kind and nature relating to the bodily injuries of the Undersigned, specifically including, but not limited to, all known and unknown bodily and personal injuries of the Undersigned, all hospital bills, doctor bills, drug bills, and other medical expenses that belong to the Undersigned or which may hereafter accrue to the Undersigned on account of or resulting from the accident, casualty, or event which occurred on or about <u>September 2, 2023 in Buford, Georgia involving Jeffery Scott Harr</u>.

This Limited Liability Release does not release Insurance Carrier for any other policies of insurance it has issued to Limited Liability Releasees or any other person or entity, including the Undersigned, and the Undersigned maintains all rights against Insurance Carrier to pursue recovery against Insurance Carrier regarding any and all policies not specifically identified by policy number herein.

IT IS UNDERSTOOD AND AGREED that this Limited Liability Release is entered into pursuant to the provisions set forth in O.C.G.A. § 33-24-41.1, and it is intended that the force and effect of this Limited Liability Release shall be as intended by the aforesaid Code Sections.  This release shall operate as a full and final release of the Insurance Carrier with regard to Policy No. _____ from all claims for bodily injuries or damages relating to the bodily injuries of the Undersigned arising out of the above described accident, casualty, or event and a release of the Limited Liability Releasee regarding bodily injuries except that this Limited Liability Release shall not bar any claims the Undersigned has against the Limited Liability Releasee to the extent other insurance coverage is available which cover the claim or claims of the Undersigned against the Limited Liability Releasee.  This Limited Liability Release shall not operate as a release of the Undersigned's claim(s) against any other tortfeasor or insurance carrier not named in this Limited Liability Release, nor does this operate as a release of any claims for property damage that the Undersigned may have against the Insurance Carrier or the Limited Liability Releasee.

It is expressly understood and agreed that this Limited Liability Release is a settlement of claims for which the parties released hereby deny all liability and that, by this release, the parties released hereby intend merely to avoid litigation.  This Limited Liability Release in no way prejudices the rights of the released parties to deny liability in any action based upon said accident, casualty, or event.

All agreement and understandings between the parties hereto are embodied and expressed herein, and the terms of the Limited Liability Release are contractual and not mere recitals.

The Undersigned is 18 years of age or older, of sound mind, and laboring under no disabilities.

The Undersigned agrees to take reasonable steps to satisfy valid liens accrued as a result of the Undersigned's alleged injuries arising out of the aforementioned incident as required by law.

The Undersigned understands that the injuries sustained are or may be permanent and progressive and the recovery therefrom is uncertain and indefinite, and the Undersigned understands that the consideration paid pursuant to this Limited Liability Release does not provide full compensation or satisfaction for the injuries and damages of the Undersigned. It is understood and agreed that the Undersigned relied wholly upon the judgment of the Undersigned and the belief and knowledge of the Undersigned as to the nature, extent, effect, and duration of said injuries and liability, if any, and such is made without reliance upon any statement or representation of the parties hereby released or their representative or by any physician or surgeon.

The Undersigned further declares and represents that no promise, inducement or agreement not herein expressed has been made to the Undersigned and that this Limited Liability Release contains the entire agreement between the parties.

All the foregoing representations are made in order for the parties released hereby to rely upon them in effecting this Limited Liability Release and compromise.

The undersigned hereby acknowledges receipt of this Limited Liability Release and that it is notice in writing of lack of consent of the Limited Liability Releasee to this settlement and that the Limited Liability Releasee are not precluded from further assertion of claims against the Undersigned by virtue of this Limited Liability Release.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

Witness the hand and seal, this _____ day of _____, 2023.


_____
JASON S. MCKINZIE

Sworn to and subscribed before me, this
_____ day of _____ 2023.



_____
Notary Public

| Agency Case Number<br>GP230068318 | Agency NCIC Number<br>GA0670200 | GEORGIA<br>MOTOR VEHICLE CRASH REPORT | County<br>GWINNETT | Date Rec. by GDOT |
|---|---|---|---|---|

**Estimated Crash** — Date 09/02/2023, Time 00:34
**Dispatch** — Date 09/02/2023, Time 00:34
**Arrival** — Date 09/02/2023, Time 00:45
Vehicles 2 | Total Number of Injuries 1 | Fatalities 0 | Inside City Of

Road of Occurrence: TUGGLE RD NE
At Its Intersection With:
☐ Corrected Report

Not At Its Intersection But .5 | ☒ Miles ☐ Feet | ☐ North ☐ South | ☒ East ☐ West | Of HAMILTON MILL RD NE
☐ Sup To Original

Latitude (Y) (Format): 34.092098  00.00000
Longitude (X) (Format): -83.929111  -00.00000
☐ Hit and Run

| Unit # 1 | ☒ Driver ☐ Ped ☐ Bike | LAST NAME HARR | FIRST JEFFERY | MIDDLE SCOTT | Unit # 2 | ☒ Driver ☐ Ped ☐ Bike | LAST NAME MCKINZIE | FIRST JASON | MIDDLE SANFOR |
|---|---|---|---|---|---|---|---|---|---|

☒ Susp At Fault | Address 3571 HADDON HALL DR | | ☐ Susp At Fault | Address 4112 TUGGLE RD

| City BUFORD | State GA | Zip 30519-7304 | DOB 09/15/1977 | City BUFORD | State GA | Zip 30518 | DOB 07/22/2004 |
|---|---|---|---|---|---|---|---|

| Driver's License No. 050864971 | Class CP | State GA | Country US | Driver's License No. 061563204 | Class CP | State GA | Country |
|---|---|---|---|---|---|---|---|

| Insurance Co. USAA | Policy No. 015728612 C 071 | Telephone No. (678) 779-4601 | Insurance Co. | Policy No. | Telephone No. |
|---|---|---|---|---|---|

| Year 2005 | Make Ford | Model Escape | Year 2010 | Make | Model |
|---|---|---|---|---|---|

| VIN 1FMCU93115KA16340 | Vehicle Color Blue | VIN | Vehicle Color Red |
|---|---|---|---|

| Tag # BTI4679 | State GA | County GWINNETT | Year 24 | Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|

| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|

| ☐ Same as Driver | Owner's Last Name HARR | First JILL | Middle EMILY | ☐ Same as Driver | Owner's Last Name MCKINZIE | First JASON | Middle SANFOR |
|---|---|---|---|---|---|---|---|

Address 3571 HADDON HALL DR | Address 938 CENTURY OAK DR

| City BUFORD | State GA | Zip 30519-7304 | City WINDER | State GA | Zip 30680-3503 |
|---|---|---|---|---|---|

Removed By: WILLARD WRECKER | ☐ Request ☐ List | Removed By: | ☐ Request ☐ List

| Alco Test: Yes | Type: Breath | Results: .121 | Drug Test: No | Type: | Results: | Alco Test: No | Type: | Results: | Drug Test: No | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 4 | First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 10 |
|---|---|---|---|---|---|

| Operator Contributing Factors: 2  11 | | Operator Contributing Factors: 2 | |
|---|---|---|---|

| Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 | Vehicle Contributing Factors: 4 | Roadway Contributing Factors: |
|---|---|---|---|

| Direction of Travel: 4 | Vehicle Maneuver: 10 | Non-Motor Maneuver: | Direction of Travel: 3 | Vehicle Maneuver: 10 | Non-Motor Maneuver: |
|---|---|---|---|---|---|

| Vehicle Class: 1 | Vehicle Type: 11 | Vision Obscured: 1 | Vehicle Class: 1 | Vehicle Type: 23 | Vision Obscured: 1 |
|---|---|---|---|---|---|

| Number of Occupants: 1 | Area of Initial Contact: 12 | Damage to Veh: 3 | Number of Occupants: 1 | Area of Initial Contact: 12 | Damage to Veh: 4 |
|---|---|---|---|---|---|

| Traffic-Way Flow: 1 | Road Comp: 2 | Road Character: 4 | Traffic-Way Flow: 1 | Road Comp: 2 | Road Character: 4 |
|---|---|---|---|---|---|

| Number of Lanes: 2 | Posted Speed: 45 | Work Zone: 0 | Number of Lanes: 2 | Posted Speed: 45 | Work Zone: 0 |
|---|---|---|---|---|---|

| Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No | Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No |
|---|---|---|---|

**Citation Information:**
Citation # PEOO255722 — O.C.G.A. § 40-6-391(a)(5)
Citation # PE00255723 — O.C.G.A. § 40-6-48(1)
Citation # — O.C.G.A. §

**Citation Information:**
Citation # PE00255724 — O.C.G.A. § 40-6-391(a)(1)
Citation # PE00255725 — O.C.G.A. § 40-5-121(A)
Citation # PE00255726 — O.C.G.A. § 40-8-7

## COMMERCIAL MOTOR VEHICLES ONLY

| Carrier Name: | Carrier Name: |
|---|---|

| Address | City | State | Zip | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|

| U.S. D.O.T. # | No. of Axles | G.V.W.R. | U.S. D.O.T. # | No. of Axles | G.V.W.R. |
|---|---|---|---|---|---|

| Cargo Body Type | Vehicle Config. | ☐ Interstate ☐ Intrastate | Fed. Reportable ☐ Yes ☒ No | Cargo Body Type | Vehicle Config. | ☐ Interstate ☐ Intrastate | Fed. Reportable ☐ Yes ☒ No |
|---|---|---|---|---|---|---|---|

| C.D.L.? ☐ Yes ☒ No | C.D.L. Suspended? ☐ Yes ☒ No | C.D.L.? ☐ Yes ☒ No | C.D.L. Suspended? ☒ Yes ☐ No |
|---|---|---|---|

| Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☒ No | Vehicle Placarded? ☐ Yes ☒ No | Hazardous Materials? ☐ Yes ☒ No |
|---|---|---|---|

Haz Mat Released? ☐ Yes ☒ No | Haz Mat Released? ☐ Yes ☒ No

If YES: Name or four Digit Number from Diamond or Box: _____
One Digit Number from Bottom of Diamond: _____

If YES: Name or four Digit Number from Diamond or Box: _____
One Digit Number from Bottom of Diamond: _____

☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units | ☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units

GDOT-523 (07/17)

## COLLISION FIELDS

| Manner of Collision: 2 | Location at Area of Impact: 1 | Weather: 2 | Surface Condition: 1 | Light Condition: 5 |
|---|---|---|---|---|

## NARRATIVE

D1 STATED HE WAS DRIVING EAST ON TUGGLE ROAD APPROACHING HAMILTON MILL AND WAS UNABLE TO STOP IN TIME BEFORE HITTING A GO-CART THAT WAS IN THE ROAD THAT HE WAS UNABLE TO SEE. D1 STATED HE "MAY HAVE CROSSED THE CENTER LINE INTO THE OTHER LANE AROUND THE CURVE. D1 STATED HE ATTEMPTED TO SWERVE OUT OF THE WAY HOWEVER HE HAD ALREADY HIT THE GO-CART. D1 SHOWED MULTIPLE MANIFESTATIONS OF BEING IMPAIRED AND CONSENTED TO FIELD SOBRIETY EVALUATIONS. AFTER COMPLETING THE FIELD SOBRIETY EVALUATIONS, IT WAS DETERMINED THAT D1 WAS UNDER THE INFLUENCE OF ALCOHOL AND WAS ARRESTED FOR DUI PER SE. D1 ALSO RECEIVED A CITATION FOR FAILURE TO MAINTAIN LANE BASED OF THE ROAD SCARRING AND SKID MARKS ON SCENE.

## DIAGRAM

INDICATE NORTH

See Full Page Diagram

## PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle: | Owner: |
|---|---|

## WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| | | | | | |

## OCCUPANT INFORMATION

| 1 | Name (Last, First): HARR, JEFFERY | | | Address: 3571 HADDON HALL DR, BUFORD, GA 30519-7304 | | | | |
|---|---|---|---|---|---|---|---|---|
| | Age: 45 | Sex: M | Unit # 1 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 2 | Injury: 0 | Taken for Treatment: 2 |
| | Injured Taken To: | By: | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | Hospital Arrival Time (Fatality Only): |

| 2 | Name (Last, First): MCKINZIE, JASON | | | Address: 4112 TUGGLE RD, BUFORD, GA 30518 | | | | |
|---|---|---|---|---|---|---|---|---|
| | Age: 19 | Sex: M | Unit # 2 | Position: 2 | Safety Eq: 0 | Ejected: 3 | Extricated: 2 | Air Bag: 0 | Injury: 2 | Taken for Treatment: 1 |
| | Injured Taken To: Northside Gwinnett Medical | By: EMS Personnel | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | Hospital Arrival Time (Fatality Only): |

| 3 | Name (Last, First): | | | Address: | | | | |
|---|---|---|---|---|---|---|---|---|
| | Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| | Injured Taken To: | By: | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | Hospital Arrival Time (Fatality Only): |

| 4 | Name (Last, First): | | | Address: | | | | |
|---|---|---|---|---|---|---|---|---|
| | Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| | Injured Taken To: | By: | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | Hospital Arrival Time (Fatality Only): |

## ADMINISTRATIVE

| Photos Taken: ☐ Yes ☒ No | By: | *Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404) 635-2963.* |
|---|---|---|
| Report By: | Agency: Gwinnett County Police Dep. | Report Date: | Checked By: Richey, Justin C | Date Checked: 09/02/2023 |

GDOT-523 (07/17)     *MAIL TO: Georgia Department of Transportation, CRASH REPORTING UNIT, 935 East Confederate Ave., Atlanta, GA 30316-2590*

**SUPPLEMENT**
**GEORGIA MOTOR VEHICLE CRASH REPORT**

| Agency Case Number: GP230068318 | Estimated Crash Date: 09/02/2023 00:34 | Officer Name: |
|---|---|---|

**NARRATIVE CONTINUED**

D2 WAS DRIVING WEST ON TUGGLE RD AND WAS STRUCK BY D1 IN HIS CORRECT LANE OF TRAVEL. D2 WAS OPERATING A HOMEMADE GO-CART WITH NO SAFETY EQUIPMENT. D2 WAS SEVERELY INJURED AND WAS RECEIVING MEDICAL TREATMENT FROM EMS PERSONNEL WHILE I WAS ON SCENE. D2 ADMITTED TO ANOTHER OFFICER ON SCENE THAT HE HAD BEEN DRINKING AS WELL AS SMOKING MARIJUANA BEFORE DRIVING. I OBSERVED AN UNOPENED 12OZ "TWISTED TEA" IN D2'S BAG AS WELL AS A SMOKING PIPE AT IN HIS PERSONAL ITEMS AT THE HOSPITAL. I CITED D2 WITH DUI LESS SAFE, OPERATING AN UNSAFE MOTOR VEHICLE AND DRIVING ON A SUSPENDED LICENSE.

SEE INCIDENT REPORT GP230068318.

BWC WAS ACTIVE.

**ADDITIONAL CITATION INFORMATION**

Unit # ____:

Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____

Unit # ____:

Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____
Citation # _____  O.C.G.A. § _____

**ADDITIONAL OCCUPANT INFORMATION**

| Name (Last, First): | | | | Address: | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | EMS Notified Time (Fatality Only): | | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address: | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | EMS Notified Time (Fatality Only): | | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address: | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | EMS Notified Time (Fatality Only): | | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address: | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | EMS Notified Time (Fatality Only): | | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address: | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | EMS Notified Time (Fatality Only): | | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

ADDITIONAL or FULL PAGE DIAGRAM





GWINNETT COUNTY
POLICE DEPARTMENT
INCIDENT REPORT
CASE NUMBER: GP230068318

## Premise

| Reported Date | Incident Start Date | Incident End Date | Family Violence |
|---|---|---|---|
| 09/02/2023 00:34:00 | 09/02/2023 00:34:38 | 09/02/2023 03:12:00 | NO |

| Commonplace Name |
|---|

| Incident Address | | Cross Street | | Apartment | Building |
|---|---|---|---|---|---|
| TUGGLE RD NE | | HAMILTON MILL RD NE | | | |

| City | County | State | Zip | Precinct | Zone |
|---|---|---|---|---|---|
| BUFORD | GWINNETT | GA | 30519 | NORTH SIDE | 341 |

### Administrative Section

| Gun Involved | Juvenile(s) Involved | Gang Related | Use of Force | First Aid Administered |
|---|---|---|---|---|
| NO - GUN NOT INVOLVED | NO | NO | NO | NONE |

| Overdose | Overdose Death | Possible Mental Health Issue | Human Trafficking | Surveillance System |
|---|---|---|---|---|
| NO | | NO | NO | NONE |

| Premise Vacant | Premise Under Construction | Victim will Prosecute | Case Status |
|---|---|---|---|
| N/A | N/A | YES | CLOSED / ARREST - ADULT |

| Exceptional Clearance | Clearance Date |
|---|---|
| NOT APPLICABLE (NOT CLEARED EXCEPTIONALLY) | |

| Solvability | Uniform Follow-up | Photos Taken | CSI Called |
|---|---|---|---|
| KNOWN SUSPECTS | NO | NO | NO |

| CID Called | Forward to CID | Impound | Written Statement(s) | Related to a Gwinnett County Loss Notice | Which Loss Type |
|---|---|---|---|---|---|
| NO | NO | YES | NO | NO | |

## Offense 1

| GA Statute | Statute Description | | | | |
|---|---|---|---|---|---|
| 40-5-121(A) | DRIVING WHILE LICENSE IS SUSPENDED OR REVOKED [99] [MIS] | | | | |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | Location Type | |
|---|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | | |

| Bias Motivation | Offender Suspected of Using | Cargo Theft |
|---|---|---|
| NONE | ALCOHOL | |

| Criminal Activity/Gang Info |
|---|

| Weapon Types |
|---|

| Weapon Automatic 1 | Weapon Automatic 2 | No. Premises Entered | Method of Entry |
|---|---|---|---|

## Offense 2

| GA Statute | Statute Description |
|---|---|
| 40-6-391(A)(5) | DRIVING UNDER THE INFLUENCE OF ALCOHOL - PER SE [90D] [MIS] |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | Location Type |
|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | HIGHWAY/ROAD/ALLEY/STREET/SIDEWALK |

| Bias Motivation | Offender Suspected of Using | Cargo Theft |
|---|---|---|
| NONE | ALCOHOL | |

| Criminal Activity/Gang Info |
|---|

| Weapon Types |
|---|

| Weapon Automatic 1 | Weapon Automatic 2 | No. Premises Entered | Method of Entry |
|---|---|---|---|

## Offense 3

| GA Statute | Statute Description |
|---|---|
| 40-6-48(1) | UNSAFE LANE CHANGE / FAILURE TO DRIVE WITHIN A SINGLE LANE [99] [MIS] |

| Felony/Misdemeanor | Degree | Counts | Attempted/Completed | Location Type |
|---|---|---|---|---|
| MISDEMEANOR | | 1 | COMPLETED | HIGHWAY/ROAD/ALLEY/STREET/SIDEWALK |

| Offense 3 | Bias Motivation<br>NONE | | | | Offender Suspected of Using<br>ALCOHOL | | Cargo Theft |
|---|---|---|---|---|---|---|---|
| | Criminal Activity/Gang Info | | | | | | |
| | Weapon Types | | | | | | |
| | Weapon Automatic 1 | Weapon Automatic 2 | | No. Premises Entered | | Method of Entry | |

## Offense 4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Offense 4 | GA Statute<br>40-6-391(A)(1) | Statute Description<br>DRIVING UNDER THE INFLUENCE OF ALCOHOL - LESS SAFE [90D] [MIS] | | | | | |
| | Felony/Misdemeanor<br>MISDEMEANOR | Degree | Counts<br>1 | Attempted/Completed<br>COMPLETED | Location Type | | |
| | Bias Motivation<br>NONE | | | | Offender Suspected of Using<br>ALCOHOL | | Cargo Theft |
| | Criminal Activity/Gang Info | | | | | | |
| | Weapon Types | | | | | | |
| | Weapon Automatic 1 | Weapon Automatic 2 | | No. Premises Entered | | Method of Entry | |

## Offense 5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Offense 5 | GA Statute<br>40-8-7 | Statute Description<br>OPERATING UNSAFE VEHICLE [99] | | | | | |
| | Felony/Misdemeanor<br>MISDEMEANOR | Degree | Counts<br>1 | Attempted/Completed<br>COMPLETED | Location Type<br>HIGHWAY/ROAD/ALLEY/STREET/SIDEWALK | | |
| | Bias Motivation<br>NONE | | | | Offender Suspected of Using<br>ALCOHOL | | Cargo Theft |
| | Criminal Activity/Gang Info | | | | | | |
| | Weapon Types | | | | | | |
| | Weapon Automatic 1 | Weapon Automatic 2 | | No. Premises Entered | | Method of Entry | |

## Suspect 1

**Related Offense 1**
40-6-391(A)(5) DRIVING UNDER THE INFLUENCE OF ALCOHOL - PER SE [90D] [MIS]

**Related Offense 2**
40-6-48(1) UNSAFE LANE CHANGE / FAILURE TO DRIVE WITHIN A SINGLE LANE [99] [MIS]

| Name (Last, First, Middle, Suffix)<br>HARR, JEFFERY SCOTT | | | | | | Moniker | |
|---|---|---|---|---|---|---|---|
| Race<br>WHITE | | Ethnicity<br>NON-HISPANIC | Sex<br>MALE | Date of Birth<br>Perso 1977 | Age<br>45 | SSN | |
| License Number<br>050864971 | License State<br>GA | Hair Color | Eye Color<br>GREEN | | Weight<br>185 | Height<br>6'00" | |
| Build | Facial Hair | | Teeth | | Suspect Resident of Jurisdiction<br>RESIDENT | | |

### Suspect Scars Marks Tattoos

| SMT | NCIC Code | Description | Location |
|---|---|---|---|
| No Suspect SMT | | | |

| Home Phone | Cell Phone | Email | |
|---|---|---|---|
| Misc. ID Type | Misc. ID State | Misc ID Number | |

| Address<br>3571 HADDON HALL DR | | | Apartment | Building |
|---|---|---|---|---|
| City<br>BUFORD | State<br>GA | Zip<br>30519-7304 | | |

### Alias Information

| Suspect Alias | | SSN | Date of Birth | Sex |
|---|---|---|---|---|
| No Known Alias | | | | |

## Clothing Information

## Occupation Information

| Occpuation Code/Description | Employer Name | | Phone | |
|---|---|---|---|---|
| Address | | Suite | | Building |
| City | State | Zip | | |

## Suspect 2

**Related Offense 1**
40-6-391(A)(1) DRIVING UNDER THE INFLUENCE OF ALCOHOL - LESS SAFE [90D] [MIS]

**Related Offense 2**
40-8-7 OPERATING UNSAFE VEHICLE [99]

**Related Offense 3**
40-5-121(A) DRIVING WHILE LICENSE IS SUSPENDED OR REVOKED [99] [MIS]

| Name (Last, First, Middle, Suffix) | | | | | | | Moniker | |
|---|---|---|---|---|---|---|---|---|
| MCKINZIE, JASON SANFORD | | | | | | | | |

| Race | | Ethnicity | Sex | Date of Birth | Age | SSN |
|---|---|---|---|---|---|---|
| WHITE | | NON-HISPANIC | MALE | Perso 2004 | 19 | |

| License Number | License State | Hair Color | Eye Color | Weight | Height |
|---|---|---|---|---|---|
| 061563204 | GA | | HAZEL | 170 | 5'07" |

| Build | Facial Hair | Teeth | Suspect Resident of Jurisdiction |
|---|---|---|---|
| | | | RESIDENT |

### Suspect Scars Marks Tattoos

| SMT | NCIC Code | Description | Location |
|---|---|---|---|
| No Suspect SMT | | | |

| Home Phone | Cell Phone | Email | |
|---|---|---|---|
| | Personal Info | | |
| Misc. ID Type | Misc. ID State | Misc ID Number | |

| Address | | Apartment | Building |
|---|---|---|---|
| 938 CENTURY OAK DR | | | |

| City | State | Zip | |
|---|---|---|---|
| WINDER | GA | 30680-3503 | |

### Alias Information

| Suspect Alias | | SSN | Date of Birth | Sex |
|---|---|---|---|---|
| No Known Alias | | | | |

### Clothing Information

### Occupation Information

| Occpuation Code/Description | Employer Name | | Phone | |
|---|---|---|---|---|
| Address | | Suite | | Building |
| City | State | Zip | | |

## Victim - Business 1

**Related Offense 1**
40-5-121(A) DRIVING WHILE LICENSE IS SUSPENDED OR REVOKED [99] [MIS]

**Related Offense 2**
40-6-391(A)(1) DRIVING UNDER THE INFLUENCE OF ALCOHOL - LESS SAFE [90D] [MIS]

**Related Offense 3**
40-6-391(A)(5) DRIVING UNDER THE INFLUENCE OF ALCOHOL - PER SE [90D] [MIS]

**Related Change 4**
40-6-48(1) UNSAFE LANE CHANGE / FAILURE TO DRIVE WITHIN A SINGLE LANE [99] [MIS]

**Related Offense 5**
40-8-7 OPERATING UNSAFE VEHICLE [99]

| Involvement Type | Victim Type | Phone |
|---|---|---|
| VICTIM OF INCIDENT | GOVERNMENT (FEDERAL, STATE, COUNTY, CITY) | |

**Organization Name**
LAWS OF STATE OF GA

| Address | | Suite |
|---|---|---|
| | | |

| City | State | Zip |
|---|---|---|
| | | |

## Vehicle 1

**Vehicle Involvement**
SUSPECT

**Related To 1**
HARR, JEFFERY SCOTT

| NIBRS Class | License Plate Number | License Plate State |
|---|---|---|
| AUTOMOBILES | BTI4679 | GA |

**Status**

| Type | Year | Make | Model |
|---|---|---|---|
| 2 OR 4 DOOR SEDAN (PASSENGER) | 2005 | FORD | ESCAPE |

| VIN | Color(s) | Value |
|---|---|---|
| 1FMCU93115KA16340 | BLUE | |

### Owner Information

| Name (Last, First Middle Suffix) | Business Name |
|---|---|
| , | |

**Address**

| City | State | Zip | Phone |
|---|---|---|---|
| | | | |

### Insurance Information

| Insured By | Policy Number | Phone |
|---|---|---|
| | | |

### Vehicle Recovery Information

| Recoverd Date | Recovered Location | Recovered Value |
|---|---|---|
| | | |

| Condition | Original Reporting Agency | Original Report Case |
|---|---|---|
| | | |

## Vehicle 2

**Vehicle Involvement**
SUSPECT

**Related To 1**
MCKINZIE, JASON SANFORD

| NIBRS Class | License Plate Number | License Plate State |
|---|---|---|
| | NA | |

**Status**

| Type OTHER | | | Year | Make | | Model | |
|---|---|---|---|---|---|---|---|
| VIN | | Color(s) RED | | | | | Value |

## Vehicle 2

### Owner Information

| Name (Last, First Middle Suffix) , | | | | Business Name | |
|---|---|---|---|---|---|
| Address | | | | | |
| City | State | Zip | | Phone | |

### Insurance Information

| Insured By | Policy Number | Phone |
|---|---|---|

### Vehicle Recovery Information

| Recoverd Date | Recovered Location | | Recovered Value |
|---|---|---|---|
| Condition | Original Reporting Agency | | Original Report Case |

## Narrative 1

ON 09/02/23 I WAS DISPATCHED TO A VEHICLE COLLISION INVOLVING A FORD ESCAPE AND A GO-CART AT THE INTERSECTION OF TUGGLE ROAD AND HAMILTON MILL RD IN BUFORD GA 30518. UPON ARRIVAL I OBSERVED A BLUE FORD ESCAPE WITH MODERATE FRONT END DAMAGE AND A HOMEMADE GO-CART AGAINST A TREE ALONG THE ROADSIDE. THE DRIVER OF THE BLUE FORD ESCAPE, A MR. JEFFERY HARR WAS VERY FRANTIC WHILE EXPLAINING TO OTHER OFFICER WHAT HAD HAPPENED. I THEN SPOKE TO MR. HARR WHO STATED HE COULD NOT EXACTLY RECALL THE EVENTS BUT BELIEVED THAT HE HAD ATTEMPTED TO AVOID THE GO-CART IN THE ROAD JUST BEFORE STRIKING THE GO-CART. JEFFERY STATED HE "MAY HAVE CROSSED THE LINE" BUT COULD NOT RECALL. I THEN ASKED JEFFERY IF HE HAD BEEN DRINKING AND HE STATED NO.

JEFFERY'S SPEECH WAS FRANTIC HOWEVER SOME SENTENCES WERE SLURRED AS HE WAS SPEAKING. JEFFERY ALSO USED MY PATROL VEHICLE TO BRACE HIMSELF WHILE SPEAKING TO ME AND DID NOT FOLLOW DIRECTIONS TO STAY AWAY FROM THE INJURED DRIVER OF THE GO-CART. I THEN ASKED JEFFERY IF HE WOULD SUBMITT TO FIELD SOBRIETY EVALUATIONS AND JEFFERY AGREED TO TAKE THE EVALUATIONS. I THEN MEDICALLY QUALIFIED JEFFERY AND BEGAN THE HORIZONTAL GAZE NYSTAGMUS (HGN) EVALUATION. JEFFERY SHOWED 2 CLUES ON THE LACK OF SMOOTH PURSUIT PORTION OF THE HGN EVALUATION. JEFFERY DID NOT SHOW ANY CLUES ON THE " ONSET OF NYSTAGMUS PRIOR TO 45 DEGREES". JEFFERY SHOWED 2 CLUES ON "DISTINCT AND SUSTAINED NYSTAGMUS AT MAXIMUM DEVIATION".

I THEN BEGAN TO INSTRUCT JEFFERY ON THE WALK AND TURN EVALUATION. WHILE I WAS INSTRUCTING JEFFERY HE STARTED BEFORE I FINISHED EXPLAINING THE EVALUATION. JEFFERY ALSO HAD DIFFICULTY DISTINGUISHING WHAT FOOT WAS HIS RIGHT AND WHAT FOOT WAS HIS LEFT. WHEN JEFFERY BEGAN THE EVALUATION, HE COULD NOT KEEP HEEL TO TOE IN ANY OF HIS 9 STEPS AND ANY OF HIS 9 STEPS BACK. JEFFERY ALSO COULD NOT BALANCE ON A STRAIGHT LINE AND CONTINUED TO DEVIATE COURSE. JEFFERY ALSO USED HIS ARMS TO BALANCE THROUGH THE EVALUATION.

FINALLY, I INSTRUCTED JEFFERY ON THE ONE LEG STAND EVALUATION. DURING THE INSTRUCTIONAL PHASE JEFFERY COULD NOT PUT HIS FEET TOGETHER UNTIL ASKED SEVERAL TIMES AND INSTRUCTED MULTIPLE TIMES. JEFFERY BEGAN THE EVALUATION AND COULD NOT KEEP BALANCE AND SWAYED DURING THE EVALUATION.

BASED ON THE CLUES OBSERVED DURING THE EVALUATIONS I PLACED MR. HARR UNDER ARREST FOR DUI PER SE. I THEN READ JEFFERY THE GA IMPLIED CONSENT NOTICE AND RECEIVED A VERBAL YES. I TRANSPORTED JEFFERY TO NORTHSIDE PRECINCT WHERE INTOXILYZER OPERATOR SMITH-NIEVES PREFORMED THE STATE BREATH TEST WITH RESULT, AFTER TWO TESTS, YIELDING .121.

WHILE JEFFERY WAS IN THE INTOXILYZER ROOM, HE STATED TO OFC. SMITH-NIEVES THAT HE HAD HAD TWO BEERS PRIOR TO DRIVING AS HE HAD WORKED AT A BAR. DIRECTLY CONTRADICTING HIS EARLIER STATEMENT OF NOT DRINKING.

I THEN TRANSPORTED JEFFERY TO THE GWINNETT COUNTY JAIL AND RELEASED HIM TO THE ON DUTY SHERIFF'S DEPUTIES.

I ALSO WITNESSED JASON MCKINZIE, THE DRIVER OF THE GO-CART, WHILE ON SCENE. WHILE I WAS ON SCENE JASON WAS BEING TENDED TO BY EMS PERSONNEL AND HAD MAJOR INJURIES ON MULTIPLE EXTREMITIES OF HIS BODY. JASON ADMITTED TO OFFICERS ON SCENE THAT HE HAD BEEN DRINKING AND ALSO HAD SMOKED MARIJUANA BEFORE DRIVING THE GO-CART ON THE ROADWAY. JADON WAS THEN TRANSPORTED TO NORTHSIDE GWINNETT MEDICAL CENTER WHERE I LATER ATTEMPTED TO MAKE CONTACT WITH HIM. I FOUND JASON HAD BEEN INTUBATED AND WAS ACTIVELY RECEIVING MEDICAL CARE FROM HOSPITAL STAFF. DUE TO THIS I WAS UNABLE TO READ IMPLIED CONSENT TO JASON AND RELEASED HIS THREE CITATIONS TO HIS MOTHER WHO WAS ON SCENE. AN UN-OPENED 12OZ CAN OF "TWISTED TEA" WAS FOUND IN JASON'S BACKPACK ON SCENE AND A SMOKING PIPE WAS FOUND ON HIS PERSONS AT THE HOSPITAL AND WAS DISPOSED OF BY HOSPITAL SECURITY.

BWC WAS ACTIVE.

| Officer 1 | | | |
|---|---|---|---|
| Involvment Type<br>OFFICER | Officer Name<br>FOWLER B2509 | | Date<br>09/02/2023 00:48:35 |
| Shift<br>D | Section<br>NORTH | | |

| Officer 2 | | | |
|---|---|---|---|
| Involvment Type<br>APPROVING | Officer Name<br>RICHEY B923 | | Date<br>09/06/2023 21:59:12 |
| Shift<br>D | Section<br>NORTH | | |

# Exhibit F



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

July 11, 2024

**VIA CERTIFIED MAIL/RRR:**

Jeffery Scott Harr and Jill E. Harr
DOH Inc.
DBA/TA Johnny's NY Style Pizza & Subs
3571 Haddon Hall Dr
Buford, GA 30519

RE:  Claim Number:  DOBP412038-001-001-001
Date of Loss:  9/2/2023
Insured:  DOH Inc. DBA Johnny's NY Style Pizza & Subs
Claimant:  Jason McKinzie
Policy No.:  DOBP412038

Mr. and Mrs. Harr:

This letter is written on behalf of Berkshire Hathaway GUARD Insurance Companies relative to the above-referenced claim as a supplement and amendment to our February 23, 2024 correspondence. NorGUARD Insurance Company issued policy number DOBP412038 to DOH Inc. DBA Johnny's NY Style Pizza & Subs with effective dates January 5, 2023 to January 5, 2024. We have conducted an additional review of the Petitions for Damages filed in the above matter and the NorGUARD policy as they pertain to an incident occurring on September 2, 2023 and wish to inform you of our additional findings.

**SUPPLEMENTAL AND AMENDED RESERVATION OF RIGHTS**

NorGUARD continues to reserve its right to deny coverage for Plaintiff's claims against you, to the extent that the claims were not caused by an occurrence as defined by the policy. NorGUARD further reserves the right to deny coverage for the claims asserted against you on the basis that one or more of the policy provisions or exclusions limit or deny coverage, including all of the policy provisions previously cited in the February 23, 2024, letter in addition, but not limited, to the following:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

EXHIBIT F



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| **A.  Premises:** | |
| | 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| **B.  Project Or Operation:** | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Liability** is amended as follows:

**A.** Paragraph **A.1.b.(1)** is replaced by the following:

    **(1)** To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

        **(a)** The "bodily injury" or "property damage":

            **(i)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

            **(ii)** Arises out of the project or operation shown in the Schedule;

        **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**B.** Paragraph **A.1.b.(2)** is replaced by the following:

    **(2)** To "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

        **(a)** The offense arises out of your business:

            **(i)** Performed on the premises shown in the Schedule; or

            **(ii)** In connection with the project or operation shown in the Schedule; and

        **(b)** The offense was committed during the policy period.

    However, with respect to Paragraph **A.1.b.(2)(a)(i),** if the "personal and advertising injury" is caused by:

        **(a)** False arrest, detention or imprisonment; or

        **(b)** The wrongful eviction from, wrongful entry into, or invasion of the right of private



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**C.** Paragraph **A.2.a. Medical Expenses** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

The above endorsement is clear and unambiguous. It modifies the policy to provide coverage for "bodily injury" and "property damage" caused by an "occurrence" only if the "bodily injury" or "property damage" occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises. The premises listed in the Schedule is 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563. The accident report provided to us indicates that the subject incident, and resulting alleged "bodily injury," occurred on Tuggle Road, .5 miles east of Hamilton Mill Road in Gwinnett County, Georgia. This is approximately 4 miles from the Scheduled Premises. As pled, the policy does not provide coverage.

In addition to the above endorsement, the Liquor Liability Coverage provided in the policy is limited as follows:

**2.** The following exclusions are added: This insurance does not apply to:

**c.** Any "bodily injury" or "property damage" with respect to which other insurance is afforded or would be afforded but for the exhaustion of the Limits of Insurance.

This exclusion functions to exclude coverage in the event other insurance exists which provides coverage for the same "bodily injury" or "property damage." It is our understanding that a policy or policies of automobile insurance (possibly USAA) may be providing coverage for this occurrence. Should that be the case, NorGUARD's policy will not provide Liquor Liability coverage.

NorGUARD reserves the right to seek a judicial opinion on the issue of insurance coverage. Nothing in this letter is intended as a waiver of any right under the subject policy and NorGUARD specifically reserves all rights and provisions under the policy as written.



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

Sincerely,


Jessica Dunn
Senior Liability Claims Representative

# Exhibit G



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

July 11, 2024

**VIA CERTIFIED MAIL/RRR:**
Kevin W. Burkhart
kevin@sloverlaw.net
SUTTON T. SLOVER
Attorney at Law
5901 Peachtree Dunwoody Road, Suite A220
Atlanta, GA 30328

RE:   Claim Number:   DOBP412038-001-001-001
      Date of Loss:   9/2/2023
      Insured:        DOH Inc. DBA Johnny's NY Style Pizza & Subs
      Claimant:       Jason McKinzie
      Policy No.:     DOBP412038

Dear Kevin:

This letter is written on behalf of Berkshire Hathaway GUARD Insurance Companies relative to the above-referenced claim. It is our understanding that you have demanded $10,000,000.00 from NorGUARD and its insured, DOH Inc. DBA Johnny's NY Style Pizza & Subs, for full and final settlement of all claims brought by your client, Jason McKinzie arising out of an incident that occurred on or about September 2, 2023. We must reject this demand as there is no insurance coverage for the incident as alleged.

As background, NorGUARD Insurance Company issued policy number DOBP412038 to DOH Inc. DBA Johnny's NY Style Pizza & Subs with effective dates January 5, 2023, to January 5, 2024. We have conducted a comprehensive review of the Petitions for Damages filed in the above matter, the demand and its attachments and the NorGUARD policy as they pertain to the September 2, 2023, incident. The below, non-exclusive, policy provision(s) form the basis for the denial of your client's demand:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

EXHIBIT G



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| |
|---|
| **A.  Premises:** |
| 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| **B.  Project Or Operation:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Liability** is amended as follows:

**A.** Paragraph **A.1.b.(1)** is replaced by the following:

**(1)** To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(a)** The "bodily injury" or "property damage":

**(i)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(ii)** Arises out of the project or operation shown in the Schedule;

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**B.** Paragraph **A.1.b.(2)** is replaced by the following:

**(2)** To "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(a)** The offense arises out of your business:

**(i)** Performed on the premises shown in the Schedule; or



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

**(ii)** In connection with the project or operation shown in the Schedule; and

**(b)** The offense was committed during the policy period.

However, with respect to Paragraph **A.1.b.(2)(a)(i),** if the "personal and advertising injury" is caused by:

**(a)** False arrest, detention or imprisonment; or

**(b)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**C.** Paragraph **A.2.a. Medical Expenses** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

The above endorsement is clear and unambiguous. It modifies the policy to provide coverage for "bodily injury" and "property damage" caused by an "occurrence" only if the "bodily injury" or "property damage" occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises. The premises listed in the Schedule is 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563. The accident report provided to us indicates that the subject incident, and resulting alleged "bodily injury," occurred on Tuggle Road, .5 miles east of Hamilton Mill Road in Gwinnett County, Georgia. This is approximately 4 miles from the Scheduled Premises. As pled, the policy does not provide coverage.

In addition to the above endorsement, the Liquor Liability Coverage provided in the policy is limited as follows:

**2.** The following exclusions are added: This insurance does not apply to:

**c.** Any "bodily injury" or "property damage" with respect to which other insurance is afforded or would be afforded but for the exhaustion of the Limits of Insurance.



**Berkshire Hathaway GUARD**
**P.O. Box 1368**
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

This exclusion functions to exclude coverage in the event other insurance exists which provides coverage for the same "bodily injury" or "property damage."  It is our understanding that a policy or policies of automobile insurance (possibly USAA) may be providing coverage for this occurrence. Should that be the case, NorGUARD's policy will not provide Liquor Liability coverage.

A copy of the NorGUARD policy is attached for your review.  NorGUARD reserves the right to deny coverage for your client's claims, to the extent that the claims were not caused by an occurrence as defined by the policy.  NorGUARD further reserves the right to assert any and all additional policy language which may further limit or deny coverage for the alleged incident. NorGUARD further reserves the right to deny coverage for the claims asserted on the basis that one of more of the policy provisions or exclusions limit or deny coverage.  NorGUARD intends to seek a judicial declaration of no coverage based upon the above policy language and/or additional policy provisions.

Sincerely,

Jessica Dunn
Senior liability Claims Representative