IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORGUARD INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>JASON S. MCKINZIE, JR., JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO.  1:24-CV-03586-SDG |

**DEFENDANT JASON S. MCKINZE, JR.'S REPLY IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW, Defendant Jason S. McKinzie, Jr. ("Mr. McKinzie") and hereby submits this Reply in Support of His Motion for Judgment on the Pleadings, respectfully showing this Court the following:

**ARGUMENT AND CITATION TO AUTHORITY**

**A.    This Court Should Dismiss Plaintiff's Declaratory Judgment Claim as to the Duty to Indemnify.**

Plaintiff NorGuard Insurance Company's ("Plaintiff") first argument against Mr. McKinzie's Motion for Judgment on the Pleadings is that caselaw exists in which district courts have stayed determination of the duty to indemnify rather than

1

dismiss it without prejudice in certain circumstances. [Electronic Court Filing ("ECF") Doc. No. 45 at pp. 10-12.] Plaintiff notes that this was the tactic taken by the district court in *Auto-Owners Insurance Company v. Tabby Place Homeowners' Association, Inc.*, 637 F. Supp. 3d 1342 (S.D. Ga. 2022). [*Id.* at p. 11.]

It is worth noting that Plaintiff offers no substance to support its assertion that the duty to indemnify is ripe for adjudication. [*Id.* at pp. 10-12.] Plaintiff merely states that it believes all issues are ripe, then pivots to arguing that this Court should stay resolution of the duty to indemnify until it is ripe (whenever that might be) instead of dismissing it without prejudice. [*Id.* at pp. 10-11.]

Dismissal of a declaratory judgment claim regarding a duty to indemnify that is not ripe appears to be the preferred method for handling the claim. *See, e.g., Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 Fed. Appx. 768, 770-71 (11th Cir. 2019) (affirming the dismissal of a declaratory judgment action on a duty to indemnify after determining that the issue was not yet ripe); *Zurich Am. Ins. Co. v. Robinson Mechnical Contractors, Inc.*, 2020 WL 6821322 at *4 (N.D. Ga. 2020) (dismissing declaratory judgment action as to duty to indemnify because it was not yet ripe); *Kinsale Ins. Co. v. Venetian Hills Apartments, LLC*, 2022 WL 18777473 at *3-4 (N.D. Ga. 2022) (same); *Phoenix Ins. Co. v. Robinson Construction Co.*, 2020 WL 5755010 at *4-5 (N.D. Ga. 2020) (same).

2

Plaintiff relies on the *Tabby Place* case, but Plaintiff never applies the analysis that was used in *Tabby Place* to stay the issue of the duty to indemnify pending resolution of the Underlying Action. [*Id.*] *Tabby Place* analyzed nine factors to determine whether to retain jurisdiction over the case pending resolution of the Underlying Action. *Tabby Place*, 637 F. Supp. 3d at 1351-58. *See also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (identifying the nine factors). The nine factors are:

> (1) The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) Whether the judgment in the federal declaratory action would settle the controversy;
> (3) Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
> (5) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) Whether there is an alternative remedy that is better or more effective;
> (7) Whether the underlying factual issues are important to an informed resolution of the case;
> (8) Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1331. The "list is neither absolute nor is any one factor controlling[.]" *Id.*

In *Ameritas*, the Eleventh Circuit affirmed the District Court's dismissal of the insurer's declaratory judgment claim. *Id.* at 1331-32. According to the Eleventh Circuit, the district court proceeding with the declaratory judgment action "would amount to the unnecessary and inappropriate 'gratuitous interference' with the more encompassing and currently pending state court action[.]" *Id.* at 1332.

In this matter, factors (1)-(3) and (6)-(8) all counsel in favor of this Court dismissing the duty to indemnify claim, with factors (4)-(5) and (9) being neutral. A crucial issue in both the Underlying Lawsuit and the context of Plaintiff's duty to indemnify will be Mr. Harr's status and scope of employment at the time he hit Mr. McKinzie. With regard to factor (1), the state has a strong interest (as does the local county where the accident and intoxication occurred) in enforcing laws surrounding liability for car accidents resulting from intoxication.

For factor (2), a judgment in this case regarding the duty to indemnify would **not** settle the underlying dispute between Defendants and may even result in inconsistent judgments. As to factor (3), there is no reason to believe that a judgment in this Court would resolve the legal questions at issue in the Underlying Lawsuit.

For factor (6), the more effective remedy is to allow the Underlying Lawsuit to continue and to see whether Mr. McKinzie can establish liability. This is more effective because if, for whatever reason, Mr. McKinzie cannot establish the liability

of the insureds, this would render the duty to indemnify moot and there would be nothing left for this Court to consider. Furthermore, the issues in the Underlying Lawsuit are broader than the insurance issues in this case. Therefore, the Underlying Lawsuit will allow for more thorough discovery of facts and evidence that will not require the parties in this case to take positions that may bolster their rights to insurance coverage at the expense of undermining their rights in the Underlying Lawsuit. Factor (7) weighs in favor of dismissal because the underlying facts, as determined through a final trial, will determine whether the duty to indemnify ever becomes ripe.

Factor (8) counsels in favor of dismissal of the duty to indemnify claim because the state court is in a better position to evaluate the factual issues in the case since discovery will be broader, and the jury panel drawn from the area will be local to the county where the car accident and intoxication occurred.

Taken together, all of these points counsel in favor of dismissal of Plaintiff's declaratory judgment claim as to the duty to indemnify.

## B. Plaintiff's Arguments as to the Hired Auto and Non-Owned Auto Endorsement Fail.

Plaintiff makes two primary arguments as to the Hired Auto and Non-Owned Auto Endorsement: (1) that the language of the endorsement excludes the vehicle in this case; and (2) there can be no coverage because Mr. Harr was allegedly not acting within the scope of his employment. Both arguments fail as set forth below.

5

1. <u>The Language of the Endorsement Supports Insurance Coverage.</u>

To avoid the clear application of the Hired Auto and Non-Owned Auto endorsement, Plaintiff struggles against its plain language. Plaintiff agrees with Mr. McKinzie that the relevant automobile fits the definition of a "non-owned auto" in the endorsement, but it argues that subsequent language in the endorsement excludes insurance coverage. Plaintiff notes that, after stating that DOH's partners, officers, and employees are insured when using a "non-owned auto," the endorsement says:

> 2. None of the following is an insured:
>
> . . .
>
> b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household[.]

[ECF Doc. No. 45 at p. 14.] On this basis, Plaintiff reasons that coverage is excluded "when the non-owned auto operated by an executive officer is owned by a member of his household." [*Id.*] However, this creates a contradiction because the same provision not only excludes "autos" owned by members of the household, it excludes "autos" owned by the partner or executive officers themselves. [ECF Doc. No. 1 at p. 139.] The contradiction arises because the endorsement defined a "non-owned auto" as:

> . . . any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees," your partners or your "executive officers", or members of their

6

>households, but only while used in your business or your personal affairs.

[*Id.*] Plaintiff's interpretation fails because it would mean that the endorsement defines "non-owned autos" specifically to include and provide coverage for "autos" owned by partners, officers, employees and members of their households, only for the endorsement to immediately exclude from insurance coverage any "autos" owned by partners, officers, and members of their households. This is nonsense.

What is happening here? This Court probably noticed that the word "auto" in the endorsement is in quotation marks. It is a defined term under the Policy whose definition is:

> 2. "Auto" means:
>
>   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
>   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

[ECF Doc. No. 1 at p. 229.] The endorsement defines "non-owned auto" as:

> . . . any **"auto"** you do not own, lease, hire, rent or borrow **which is used in connection with your business.** This includes "autos" owned by your "employees," your partners or your "executive officers", or members of their households, **but only while used in your business or your personal affairs.**

7

[ECF Doc. No. 1 at p. 139 (emphasis added).] A "non-owned auto" is an "auto" used in connection with DOH's business and includes privately owned automobiles of DOH's partners and executive officers while in use for its business. [*Id.*]

When the endorsement says that there is no coverage for "[a]ny partner or 'executive officer' for any 'auto' owned by such partner or officer or a member of his or her household[,]" it has purposely used the word "auto" and not "non-owned auto." Therefore, the endorsement is merely excluding "autos" owned by partners or officers, or members of their household, that are not used in connection with DOH's business. That is all.

This makes sense. NorGuard obviously did not intend to provide insurance coverage to the Harrs while using their vehicle on a family vacation, for example, and included an exclusion to bar such coverage. The Policy does provide coverage, however, for use of the vehicle while that vehicle is used in DOH's business or personal affairs.

When the duty to indemnify is ripe, the parties will no doubt argue over whether Mr. Harr used the vehicle "in connection with [DOH's] business or [its] personal affairs[.]" However, that issue is not properly before this Court. The only issue is whether this Court can determine, based only on an examination of the Underlying Complaint and Policy, that there can be no coverage under the Hired Auto and Non-Owned Auto endorsement. Because the endorsement at least arguably

8

*creates* coverage rather than excludes it, Defendant is entitled to a judgment on the pleadings that Plaintiff owes a duty to defend.

2. Mr. Harr Could have Been Acting in Connection with DOH's Business.

Plaintiff next argues that there is no coverage based on a sentence in the Underlying Complaint that "the accident occurred after Mr. Harr had just left DOH's business (the pizza shop)." [ECF Doc. No. 45 at p. 16; ECF Doc. No. 1 at p. 42, ¶ 43.] Plaintiff cites to Georgia caselaw for the proposition that "an employee's travel to or from work is not within the scope of employment for purposes of applying the doctrine of respondeat superior." [ECF Doc. No. 45 at p. 17 (quoting *Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 383 (2023)).]

Plaintiff's argument suffers from three problems: (1) it is misleading as to the state of the law with regard to respondeat superior; (2) it takes the statement that Mr. Harr had just left DOH's pizza shop to mean that Mr. Harr could not possibly be acting "in connection with [DOH's] business or [its] personal affairs"; and (3) it substitutes the doctrine of respondeat superior for the contract language of acting "in connection with [DOH's] business or [its] personal affairs."

First, the *Prodigies* language quoted by Plaintiff is not so clear-cut. The entire substance of the *Prodigies* case is the Georgia Supreme Court's discussion of the "special circumstances" when respondeat superior applies to an employee's commute to or from work. *Prodigies*, 317 Ga. at 382-83. The Georgia Supreme

9

Court explained that the rule is not so narrow as to say that any employee commuting to or from work is *ipso facto* outside the doctrine of respondeat superior, but the proper test for an employee's commute "is the traditional respondeat superior test: whether the employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed the tortious act." *Id.* at 383. The language quoted by Plaintiff should **not** be taken to mean that any commute to or from work is excluded from the doctrine of respondeat superior.

Second, Plaintiff has wildly expanded the allegation that the accident "occurred after Mr. Harr had just left DOH's business" to mean that he was heading home for the day. Mr. McKinzie does not know why Mr. Harr left the pizza shop. Was he delivering a pizza? Was he driving to an ATM to deposit cash from the business? Mr. McKinzie could only allege facts based on his limited knowledge of the circumstances. For Plaintiff to be relieved of the duty to defend, it must show that the Underlying Complaint "unambiguously excludes coverage under the policy" and no claim even "potentially comes within the policy." *Penn-Am Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997). "Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured." *Id.* The Underlying Complaint does not say where Mr. Harr was going or what he was doing. It is improper to peer behind the

Underlying Complaint and Policy to speculate on the task Mr. Harr was completing at the time of the accident and whether that task was for the business's benefit.

Third, Plaintiff's entire argument assumes that the doctrine of respondeat superior and the Policy's requirement that the "non-owned auto" be used "in connection with [DOH's] business" are the same thing. They are not. The requirement that the non-owned auto be used "in connection with" DOH's business is a far lower standard than the requirements of the doctrine of respondeat superior, which is that the action "must be in furtherance of the master's business" and that the actor "must be acting within the scope of his master's business." *Hobbs through Eagle v. Integrated Fire Protection, Inc.*, 357 Ga. App. 790, 792-93 (2020). The Policy merely requires some connection between the "non-owned auto's" use and DOH's business or that it be used in DOH's personal affairs. [ECF Doc. No. 1 at p. 139.] Such a connection is at least possible and, therefore, Plaintiff has a duty to defend.

**C.     Plaintiff Cannot Rely on the Designated Premises Endorsement.**

In his motion, Mr. McKinzie contends that it would be nonsensical for coverage for a hired or non-owned auto to end the moment that auto leaves the pizza parlor's parking lot. Plaintiff's response is to shrug and assert that it "is certainly the case per the plain language of the Policy." [ECF Doc. No. 45 at p. 20.]

Plaintiff then attempts to introduce information beyond the Policy and the Underlying Complaint by quoting from an International Risk Management Institute publication to validate its interpretation of the Policy. [ECF Doc. No. 45 at pp. 20-21.] This is improper because it brings in extraneous information not contained in the Policy and Underlying Complaint.

Further, insurance industry trade publications are not the proper guide for the interpretation of the Policy. "In construing an insurance contract[,] the test is not what the insurer intends its words to mean, but rather what a reasonable person in the insured's position would understand them to mean. Where such a provision is susceptible to two or more interpretations, the courts will construe it most favorably to the insured." *Gulf Ins. Co. v. Mathis*, 182 Ga. App. 323, 324 (1987). Courts should read the policy "as a layman would read it[.]" *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 304 Ga. 224, 228 (2018). "[I]t is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company." *Fed. Nat'l Title Ins. Co. v. Keyingham, Inv., LLC*, 288 Ga. 312, 313 (2010). Therefore, Plaintiff's quotations from a trade publication are irrelevant to this Court's interpretation of the Policy.

A layperson would read the relevant provisions and see that they have insurance coverage for "bodily injury" that "[a]rises out of the project or operation

12

shown in the schedule." [ECF Doc. No. 1 at p. 140.] That layperson would then see the line for "Project or Operation" left blank in the Schedule and then note that "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." [*Id.*] Going to the Declarations, a layperson would see that the business is described as "Full-Service Restaurants" and an Additional Name of Insured is listed as "Johnny's NY Style Pizza & Subs." [ECF Doc. No. 1 at p. 60.] Therefore, a reasonable interpretation of the Policy is that coverage is provided for liability arising out of the operation of the full-service restaurant Johnny's NY Style Pizza & Subs.

This interpretation is consistent, for example, with the Hired Auto and Non-Owned Auto endorsement providing coverage for "property damage" to "[p]roperty owned or being transported by, or rented or loaned to the insured; or [p]roperty in the care custody or control of the insured." [ECF Doc. No. 1 at p. 138.] Because the designated premises in the Designated Premises Endorsement identifies not even the entire property, but one specific suite (Suite 205A) [ECF Doc. No. 1 at p. 140], Plaintiff's interpretation would render any automobile coverage (hired, owned, or non-owned) illusory because the designated premises, by its terms, does not even include the parking lot. The more reasonable and correct interpretation is that the Policy provides liability coverage for occurrences arising out of the operation of the pizza parlor.

### D. The Liquor Liability Coverage Endorsement Does Not Relieve Plaintiff of its Duty to Defend.

Plaintiff's final point regarding the Liquor Liability Endorsement is to insist that a Georgia Motor Vehicle Crash Report that it obtained indicates that Mrs. Harr's vehicle was insured by USAA. [ECF Doc. No. 45 at pp. 23-25.] However, the only ripe issue is the duty to defend, which is determined solely through a comparison of the Underlying Complaint and Policy. *Penn-Am Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997). The Underlying Complaint and Policy say nothing about Mrs. Harr's automobile having insurance through USAA. Plaintiff's efforts to introduce crash reports does nothing to prevent its duty to defend.

Further, the document referenced by Plaintiff merely identifies "USAA" as the insurance company for Mrs. Harr. [ECF Doc. No. at p. 258.] The Liquor Liability Endorsement's exclusion states that the insurance does not apply to:

> Any "bodily injury" or "property damage" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the Limits of Insurance.
> This exclusion does not apply if the other insurance responds to liability for "bodily injury" or "property damage" imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage.

[ECF Doc. No. 1 at p. 143.] This obviously leaves many unknowns. First, while the car may have been insured by USAA, was insurance actually afforded under a policy? Also, did the other insurance respond to liability for "bodily injury" or "property damage" imposed by reason of selling, serving or furnishing alcoholic

14

beverages? Did the policy include an exclusion for that liability? We do not know, but this problem cannot be solved, as a matter of law, through discovery. As set forth at length elsewhere in this Reply Brief and Mr. McKinzie's Motion for Judgment on the Pleadings, deciding the only issue ripe for adjudication, the duty to defend, begins and ends with a comparison of the Underlying Complaint and the Policy. If the allegations in the Underlying Complaint could even *potentially* fall within the coverage afforded under the Policy, Plaintiff has a duty to defend. That is obviously the case here.

Plaintiff's final argument that there would only be insurance coverage for DOH and that it is currently defending DOH under a reservation of rights, so there can be no breach of contract is neither here nor there. It is not clear why Plaintiff is making the argument other than to push this Court to open discovery into how exactly Mr. Harr obtained alcohol. Such matters could be relevant to the duty to indemnify when it is ripe, but they are improper when analyzing the duty to defend.

## CONCLUSION

For all of the foregoing reasons, Mr. McKinzie respectfully requests that this Court grant his Motion for Judgment on the Pleadings.

Respectfully submitted on January 6, 2025.

>  */s/ Jonathan Palmer*
>  Jonathan M. Palmer
>  Georgia Bar No. 453452
>  Nicholas T. Sears

15

                                                            Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE**

In accordance with L.R. 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). I also hereby certify that I have served the foregoing on opposing counsel by filing through the Court's CM/ECF system, which will send electronic notice to all counsel of record.

Submitted on January 6, 2025.

*/s/ Jonathan Palmer*
Jonathan M. Palmer
Georgia Bar No. 453452
Nicholas T. Sears
Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com