IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NORGUARD INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:24-cv-03586-SDG |
| JASON S. MCKINZIE, JR., JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, NORGUARD INSURANCE COMPANY, who submits this Memorandum in Support of *Plaintiff's Motion for Summary Judgment* and further represents:

## I.    FACTUAL BACKGROUND

This civil action is a declaratory judgment action arising from a motor vehicle accident that occurred on September 2, 2023, after Defendant, Jeffery S. Harr, departed Defendant, DOH, Inc.'s premises located at 7363 Spout Springs Road,

Flowery Branch, Georgia 30542 (the "Premises"). Defendant DOH, Inc. operates a restaurant named Johnny's New York Style Pizza at said Premises. Further, DOH, Inc. holds Georgia Alcohol License Number 0145257, which authorizes same to operate a full-service restaurant with beer, wine, and liquor sales at same Premises.

DOH, Inc. was incorporated as a domestic for-profit corporation on October 26, 2015, by Defendants, Jeffery S. Harr and Jill E. Harr. Since at least January 27, 2017, Defendant, Jill E. Harr, has been listed as the Registered Agent, CEO, CFO, and Secretary of DOH, Inc. Defendants both reside together at 3571 Haddon Hall Drive, Buford, Georgia 30519-7304.

On September 1, 2023, Defendant, Jeffery S. Harr, allegedly imbibed alcoholic beverages at the Premises to the point of intoxication. When Defendant, Jeffery S. Harr, was asked to admit or deny that he served himself one or more of said alcoholic beverages on September 1, 2023, and September 2, 2023, respectively, he invoked his Fifth Amendment right against self-incrimination. Further, when asked to admit or deny that he had imbibed more than two alcoholic beverages in the twenty-four (24) hours preceding the accident, he again invoked his right against self-incrimination. Further, when asked to admit or deny that he did not provide monetary compensation to Johnny's New York Style Pizza for said alcoholic beverages, he again invoked his right against self-incrimination.

On September 2, 2023, between 12:20 and 12:25 a.m., Defendant, Jeffery S. Harr, departed the Premises to return to the home he shares with Defendant, Jill E. Harr.  Mr. Harr departed the Premises operating a Blue 2005 Ford Escape, VIN: 1FMCU93115KA16340, owned by Mrs. Harr.  Said vehicle was listed as an owned auto scheduled in and insured by USAA Policy Number 015728612C071.

At approximately 12:34 a.m., while en route to his home, Mr. Harr was traveling eastbound on Tuggle Road in Gwinnett County, Georgia, when he allegedly crossed the centerline and collided with a motorized cart driven by Defendant, Jason S. McKinzie, Jr. (the "Underlying Accident").

On October 12, 2023, Defendant, Jason S. McKinzie, Jr. filed his *Complaint for Damages* in Gwinnett County, Georgia, which was assigned Docket No. 23-C-0757-S3 (the "Underlying Lawsuit").  [*See* Exh. 2, R. Doc. 1, Exh. "A."]  Said Complaint initially named (2) parties-defendant: (1) Jeffery S. Harr, and (2) Jill E. Harr.

On or about October 31, 2023, Plaintiff, NorGUARD Insurance Company, as the alleged insurer of DOH, Inc. received notice of the Underlying Lawsuit along with a policy-limits-demand from Defendant, Jason S. McKinzie.  [*See* Exh. 2, R. Doc. 1, Exh. "E."]  Despite this demand being styled as a pre-suit demand, it was in fact transmitted *after* the filing of the Underlying Lawsuit by Mr. McKinzie. Regardless, it is undisputed that NorGUARD Insurance Company issued a

commercial Businessowner's Policy of insurance to the Named Insured, DOH, Inc., bearing Policy Number DOBP412038, Policy Period January 5, 2023, to January 5, 2024 (the "NorGUARD Policy"). [*See* Exh. 2, R. Doc. 1, Exh. "C."] The Underlying Lawsuit alleges that the NorGUARD Policy provides insurance coverage for Jason S. McKinzie, Jr.'s alleged injuries sustained in the Underlying Accident.

On December 20, 2023, a *First Amended Complaint for Damages* was filed naming five (5) parties-defendants: (1) Jeffery S. Harr, (2) Jill E. Harr, (3) DOH, Inc., (4) Johnny's Pizza, Inc., and (5) Johnny's Pizza Franchise System, Inc. [*See* Exh. 2, R. Doc. 1, Exh. "B."] However, on February 22, 2024, Defendants, Johnny's Pizza, Inc., and Johnny's Pizza Franchise System, Inc., were dismissed from the Underlying Lawsuit. In said Complaint, Mr. McKinzie styles "Jeffery S. Harr" as the "Defendant Driver," Jill E. Harr as the "Defendant Owner," and DOH, Inc., as "Defendant DOH." [*Id.* at pp. 2-3.]

On February 23, 2024, NorGUARD issued a Reservation of Rights letter to Jeffery Scott Harr, Jill E. Harr, and DOH, Inc. DBA/TA Johnny's NY Style Pizza & Subs on February 23, 2024, asserting that the Policy may not provide coverage for the claims and/or damages asserted by Jason S. McKinzie, Jr. in the underlying lawsuit pursuant to certain nonexclusive terms, provisions, conditions, exclusions or endorsements. [*See* Exh. 2, R. Doc. 1, Exh. "D."] Then, on July 18, 2024, Norgard

issued an amended Reservation of Rights letter outlining additional reasons for alleged noncoverage for the Underlying Accident.  [*See* Exh. 2, R. Doc. 1, Exh. "F."]

On August 13, 2024, Plaintiff filed the instant *Complaint for Declaratory Relief*.  [*See* Exh. 2, R. Doc. 1.]  The following parties were initially named as defendants: (1) Jason S. McKenzie, Jr., (2) Jeffery S. Harr, (3) Jill E. Harr, (4) DOH, Inc., (5) Johnny's Pizza, Inc., and (6) Johnny's Pizza Franchise System, Inc.  *Id.*  On October 31, 2024, Plaintiff moved to voluntarily dismiss Defendants, Johnny's Pizza, Inc. and Johnny's Pizza Franchise System, Inc., the order for which was granted on November 1, 2024.  [R. Docs. 32, 35.]  The Underlying Lawsuit is still pending and remains unresolved.

On December 10, 2024, Defendant, Jason S. McKinzie, Jr. filed a Motion for Judgment on the Pleadings.  [R. Doc. 44.]  On December 23, 2024, Plaintiff filed its *Memorandum in Opposition* to same.  [R. Doc. 45.]  On December 24, 2024, Defendants, Jeffery S. Harr, Jill E. Harr, and DOH, Inc. filed their *Notice of Joining* of said Motion.  [R. Doc. 46.]  On January 6, 2024, Defendant, Jason S. McKinzie, Jr. filed his memorandum in *Reply in Support* of said Motion.  [R. Doc. 47.]  The Motion was submitted to the court on January 21, 2025.

## II.    MATERIAL FACTS NOT IN DISPUTE

Plaintiff represents that the following facts are not genuinely disputed:

1)    On October 26, 2015, Defendants, Jeffery S. Harr and Jill E. Harr, incorporated Defendant, DOH, Inc. as a domestic for-profit corporation in the State of Georgia.  [Exh. 6(A).]

2)    As of January 5, 2023, Defendant, Jill E. Harr, was listed as the Registered Agent of DOH, Inc. and was listed as its CEO, CFO, and Secretary.  [Exh. 6(J).]

3)    As of May 6, 2022, Defendant, DOH, Inc. operated a business named Johnny's New York Style Pizza ("Johnny's Pizza") at 7363 Spout Springs Road, Suite 204, Flowery Branch, Georga 30542-5563 (the "Premises").  [*See* Exh. 7.]

4)    As of May 14, 2024, Defendant, DOH, Inc. continued to operate Johnny's Pizza at the Premises.  [*See* Exh. 8.]

5)    DOH, Inc. holds Georgia Alcohol License Number 0145257, which authorizes same to operate a full-service restaurant with beer, wine, and liquor sales at same Premises.  [*See* Exh. 9.]

6)    Defendants both reside together at 3571 Haddon Hall Drive, Buford, Georgia 30519-7304.  [*See* Exh. 2(F), p. 258 of 277; Exh. 4(A); Exh. 6(F-L).]

7)    On September 2, 2023, between 12:20 and 12:25 a.m., Defendant, Jeffery S. Harr, departed the Premises.  [*See* Exh. 3, Resp. to Interrog. No. 9.]

8)    Defendant, Jeffery S. Harr, departed the Premises in a 2005 Ford Escape, VIN: 1FMCU93115KA16340, an automobile titled in Georgia in Defendant, Jill E. Harr's, individual name (the "Subject Vehicle").  [*See* Exh. 5, Resp. to Req. for Admis. No. 7.]

9)    Defendant, Jeffery S. Harr, had permission to operate the Subject Vehicle.  [*See* Exh. 5, Resp. to Req. for Admis. No. 9.]

10)    The Subject Vehicle was listed as an owned auto scheduled in and insured by USAA Policy Number 015728612C071.  [*See* Exh. 4, Resps. to Reqs. for Produc. of Docs. 1-2, 4; *see also* Exh. 4(A); *see also* Exh. 2(A-B).]

11)    Defendant, Jeffery S. Harr's, destination after departing the Premises in the Subject Vehicle was his residence.  [*See* Exh. 3, Resp. to Interrog. No. 10; *see also* Exh. 5, Resp. to Req. for Admis. No. 18.]

12)    At approximately 12:34 a.m., while en route to his home, Mr. Harr was traveling eastbound on Tuggle Road in Gwinnett County, Georgia.  [*See* Exh. 3, Resp. to Interrog. No. 10; *see also* Exh. 5, Resp. to Req. for Admis. No. 18; *see also* Exh. 2(E); R. Doc. 1, pp. 258-267 of 277.]

13)    On September 2, 2023, at approximately 12:34 a.m., Jason S. McKinzie, Jr. was operating a motorized cart west on Tuggle Road in Gwinnett County, Georgia.  [Exh. 2(E); R. Doc. 1, pp. 258-267 of 277.]

14)    On September 2, 2023, at approximately 12:34 a.m., the Subject Vehicle operated by Defendant, Jeffery S. Harr, crossed the centerline and entered the westbound lane of Tuggle Road while continuing to travel east.  [*Id.*]

15)    On September 2, 2023, at approximately 12:34 a.m., the Subject Vehicle operated by Defendant, Jeffery S. Harr, collided with Defendant, Jason S. McKinzie, Jr.'s motorized cart in the westbound lane of Tuggle Road (the "Underlying Accident").  [*Id.*]

16)    In connection with the incident that forms the basis of this action, Defendant, Jason S. McKinzie, Jr. was cited for (1) driving under the influence, (2) operating an unsafe motor vehicle and (3) driving on a suspended license.  [*Id.* at p. 264 of 277.]

17)    In connection with the incident that forms the basis of this action, Jeffery S. Harr was cited for (1) driving under the influence, in violation of O.C.G.A. § 40-6-391 and (2) failure to maintain lane, in violation of O.C.G.A. § 40-6-48.  [Exh. 2(E); R. Doc. 1, pp. 263-264 of 277.]

18)    Immediately prior to the incident that forms the basis of this action, Defendant, Jeffery S. Harr, allegedly consumed alcohol beverages to the point of intoxication at the Premises.  [*See* Exh. 2(A) at ¶ 20.]

19)    When asked to "Admit or deny that the Defendant, JEFFERY S. HARR, served himself one or more alcoholic beverages on September 1, 2023," said Defendant invoked his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution; Article I, Section I, Paragraph

XVI of the Georgia Constitution; and O.C.G.A.§ 24-5-505(a), 24-5-506(a). [Exh. 5, Resp. to Req. for Admis. No. 13.]

20) When asked to "Admit or deny that the Defendant's, JEFFERY S. HARR, did not provide monetary compensation to the restaurant operated by Defendant, DOH, INC. for the alcoholic beverages referenced in Request for Admission No. 13," said Defendant invoked his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution; Article I, Section I, Paragraph XVI of the Georgia Constitution; and O.C.G.A.§ 24-5-505(a), 24-5-506(a). [Exh. 5, Resp. to Req. for Admis. No. 14.]

21) When asked to "Admit or deny that the Defendant's, JEFFERY S. HARR, served himself one or more alcoholic beverages on September 2, 2023," said Defendant invoked his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution; Article I, Section I, Paragraph XVI of the Georgia Constitution; and O.C.G.A.§ 24-5-505(a), 24-5-506(a). [Exh. 5, Resp. to Req. for Admis. No. 15.]

22) When asked to "Admit or deny that the Defendant, JEFFERY S. HARR, imbibed more than two (2) alcoholic beverages within the twenty-four (24) preceding the accident at issue in this litigation," said Defendant invoked his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution; Article I, Section I, Paragraph XVI of the Georgia Constitution; and O.C.G.A.§ 24-5-505(a), 24-5-506(a). [Exh. 5, Resp. to Req. for Admis. No. 17.]

23) Jason S. McKinzie, Jr. filed a Complaint for Damages in the State Court of Gwinnett County, State of Georgia, Civil Action File No.: 23-C-07575-S3 against Defendant Jeffery S. Harr and Defendant Jill E. Harr. [*See* Exh. 2(A); R. Doc. 1, pp. 24-33 of 277.]

24) Jason S. McKinzie, Jr. filed a First Amended Complaint for Damages in the State Court of Gwinnett County, State of Georgia, Civil Action File No.: 23-C-07575-S3 against Jeffery S. Harr, Defendant Jill E. Harr, Defendants DOH, Inc., Johnny's Pizza, Inc., and Johnny's Pizza Franchise Systems, Inc. [*See* Exh. 2(B); R. Doc. 1, pp. 34-48 of 277.]

25) NorGUARD issued an insurance policy to the named insured, DOH, Inc., bearing policy number DOBP412038 and effective dates of January 5, 2023, to January 5, 2024. [*Id.* at p. 7 of 277.]

26)    NorGUARD issued a Reservation of Rights letter to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs on February 23, 2024, asserting that the Policy may not provide coverage for the claims and/or damages asserted by Jason S. McKinzie, Jr. in the underlying lawsuit pursuant to certain nonexclusive terms, provisions, conditions, exclusions or endorsements.  [*See* Exh. 2(D); R. Doc. 1, p. 7 of 277.]

27)    Defendant, Jeffery S. Harr, received the NorGUARD Reservation of Rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 1.]

28)    Defendant, Jill E. Harr, received the NorGUARD Reservation of Rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 2.]

29)    Defendant, DOH, Inc., received the NorGUARD Reservation of Rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 3.]

30)    On October 31, 2023, counsel for Jason S. McKinzie, Jr. made a demand for payment of policy limits against NorGUARD, alleging that the NorGUARD Policy provided insurance coverage for the incident.  [*See* Exh. 2(E); R. Doc. 1, p. 7 of 277.]

31)    On July 18, 2024, NorGUARD issued an amended reservation of rights letter to Jeffery Scott Harr and Jill E. Harr, DOH Inc. DBA/TA Johnny's NY Style Pizza & Subs outlining additional policy language which would support a finding of no coverage for the incident and reserving the right to seek a judicial determination of the coverage issue.  [*Id.*]

32)    Defendant, Jeffery S. Harr, received the NorGUARD amended reservation of rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 4.]

33)    Defendant, Jill E. Harr, received the NorGUARD amended reservation of rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 5.]

34)    Defendant, DOH, Inc. received the NorGUARD amended reservation of rights letter.  [*See* Exh. 5, Resp. to Req. for Admis. No. 6.]

35)    On July 18, 2024, NorGUARD issued a letter declining to accept McKinzie's demand on the basis that the NorGUARD Policy does not provide insurance coverage pursuant to the clear and unambiguous policy language, set forth in more detail, below.  [*See* Exh. 2(G); R. Doc. 1, pp. 7-8 of 277.]

## III.  LAW AND ARGUMENT

### A. Summary Judgment Standard

The second sentence of Rule 56(a) sets out the standard governing summary judgment.  It states that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* § 2725 Grounds for Summary Judgment—In General, 10A Fed. Prac. & Proc. Civ. § 2725 (4th ed.).

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In [the Supreme Court's] view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 317–18, 106 S. Ct. 2548, 2550, 91 L. Ed. 2d 265 (1986) (internal citations omitted); *see also First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Accordingly, as discussed below, there is no genuine issue of material fact that no coverage is afforded to both Mr. and Mrs. Harr and DOH for the Underlying Accident?

**B. Limitation of Coverage to Hired Auto & Non-Owned Auto Liability Endorsement: Section A.1. Hired Auto Liability Excludes Coverage for Subject Vehicle.**

First, the Subject Vehicle is not afforded coverage for the Underlying Accident under the NorGUARD Policy because Mr. Harr operated a vehicle not owned by DOH, Inc. but owned by Mrs. Harr, an officer of DOH, Inc. and not otherwise being utilized in the furtherance of DOH, Inc.'s business or affairs.

In COUNT I of the First Amended Complaint for Damages in the Underlying Lawsuit, Jason S. McKenzie, Jr., plaintiff therein, alleged that Jeffery S. Harr was individually negligent.  [*See* Exh. 2(A); R. Doc. 1, pp. 38-39 of 277.]  Then, in

COUNT II of said First Amended Complaint, Mr. McKenzie alleged that Mr. Harr is jointly liable with Jill E. Harr based upon the Georgia Family Purpose Doctrine, i.e., that (1) the Jill E. Harr gave permission to Jeffery S. Harr to drive the Subject Vehicle; (2) Mrs. Harr relinquished control of said vehicle to Mr. Harr; (3) that Mr. Harr was in said vehicle at the time of the Underlying Accident; and (4) said vehicle was being operated for a family purpose.  [*See* Exh. 2(A); R. Doc. 1, pp. 39-40 of 277; *see also Yim v. Carr*, 349 Ga. App. 892, 895, 827 S.E.2d 685, 689 (2019).]

The NorGUARD Policy contains the following endorsement, which provides in pertinent part:

HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

. . . .

A. Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

1. Hired Auto Liability

The insurance provided under Paragraph A.1. Business Liability in Section II – Liability applies to "bodily injury" or "property damage" **arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.**

. . . .

D. The following additional definitions apply:

. . . .

    2. "Hired auto" means any "auto" you lease, hire, rent or borrow. **This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.**

[Exh. 1; *see also* Exh. 2(C), pp. 138-39 of 277 (emphasis added).] This endorsement amends and supersedes any other provision of the Businessowners Coverage Form per the plain language of the policy and per Georgia law.

> Georgia law requires insurance policies be read *in pari materia*. O.C.G.A. § 33-24-16. Therefore, the insurance policy is construed 'according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement or application made a part of the policy'.' *Id*. When the language in an endorsement or rider conflicts with the policy, the rider controls, *B.L. Ivey Const. Co. v. Pilot Fire & Cas. Co.*, 295 F.Supp. 840, 848 (N.D. Ga. 1968), and a specific provision will prevail over a general one, *Holland v. Holland*, 287 Ga. 866, 868, 700 S.E.2d 573, 575 (Ga. 2010). It is well-established that a court should avoid interpreting a contract in such a way as to render portions of the language of the contract meaningless. *ALEA London Ltd. v. Woodcock*, 286 Ga.App. 572, 576, 649 S.E.2d 740, 745 (Ga. Ct. App. 2007).

*Martin v. Massachusetts Mut. Life Ins. Co.*, 686 Fed. Appx. 639, 643 (11th Cir. 2017).

    The Subject Vehicle driven by Mr. Harr at the time of the accident was owned individually by Mrs. Harr. [*See* Exh. 5, Resp. to Req. for Admis. No. 7.] Further, the USAA personal auto policy insuring the Subject Vehicle shows that the Subject Vehicle was scheduled in and garaged at the mutual residence of Mr. and Mrs. Harr. [*See* Exh. 4, Resps. to Reqs. for Produc. of Docs. 1-2, 4; *see also* Exh. 4(A); *see also* Exh. 2(A-B).] These facts are consistent with Mr. McKenzie's allegations in Counts

I-II of the Underlying Lawsuit and on their face exclude coverage under the Section A.1. of the Hired Auto & Non-Owned Auto Liability Endorsement. Regardless, discovery has borne out further information that supports these allegations.

As the definition of a hired auto specifically excludes an auto leased, hired, rented, or borrowed from an employee, partner, or executive officer or member of their household, and as the auto was owned by Mrs. Harr, an executive officer of the named insured, DOH, Inc., it does not qualify as a hired auto under Section A.1. Thus, it is not an auto subject to hired auto coverage under Section A.1. because it is not an auto leased, hired, rented, or borrowed from someone other than an employee, partner, or executive member of DOH, Inc., or member of his/her household. Accordingly, as the Subject Vehicle was owned by Mrs. Harr and driven by Mr. Harr, both of whom are members of the same household, Section A.1. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to the Subject Vehicle as a "hired auto" under the NorGUARD Policy.

### C. Limitation of Coverage to Hired Auto & Non-Owned Auto Liability Endorsement: Section A.2. Non-Owned Auto Liability Excludes Coverage for Subject Vehicle.

Second, the Subject Vehicle does not qualify as a non-owned auto for purposes of coverage under Section A.2. The NorGUARD Policy contains the following endorsement, which provides in pertinent part:

- 14 -

HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

. . . .

A. Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

. . . .

2. Non-owned Auto Liability

The insurance provided under Paragraph A.1. Business Liability in Section II – Liability applies to "bodily injury" or "property damage" **arising out of the use of any "non-owned auto" in your business by any person.**

. . . .

D. The following additional definitions apply:

. . . .

3. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, **but only while used in your business or your personal affairs.**

[Exh. 1; *see also* Exh. 2(C), pp. 138-39 of 277 (emphasis added).]

Again, the Subject Vehicle driven by Mr. Harr at the time of the accident was

owned individually by Mrs. Harr.  [*See* Exh. 5, Resp. to Req. for Admis. No. 7.]

Further, the USAA personal auto policy insuring the Subject Vehicle shows that the

Subject Vehicle was scheduled in and garaged at the mutual residence of Mr. and

Mrs. Harr.  [*See* Exh. 4, Resps. to Reqs. for Produc. of Docs. 1-2, 4; *see also* Exh. 4(A); *see also* Exh. 2(A-B).]   These facts are consistent with Mr. McKenzie's allegations in Counts I-II of the Underlying Lawsuit, and most particularly those of Count II that the vehicle was being used for a family purpose, and on their face exclude coverage under the Section A.2. of the Hired Auto & Non-Owned Auto Liability Endorsement.  Regardless, discovery has borne out further information that supports these allegations.

A non-owned auto is afforded coverage under A.1, but "only while used in [DOH's] business or your personal affairs."  Further, the term "your personal affairs" refers only to the personal affairs of the DOH.  The Fourth Circuit for the United States Court of Appeals had a rather exhaustive analysis of this term in its holding in *Pham v. Hartford Fire Ins. Co.*, wherein it discussed this exact policy language. 419 F.3d 286 (4th Cir. 2005).  In *Pham*, the Fourth Circuit reasoned:

> The Broad Form Endorsement amended Part IV(D), "WHO IS INSURED" to add:
>
> 4. Any employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.
>
> Plaintiffs construe the words "in your business or personal affairs" to relate to the words "covered auto" and not to the use by the driver thereof in the "business or [ ]personal affairs" of OSP. Thus, they claim coverage for such an OSP employee driving his own car "as long as he negligently uses the covered auto and causes injuries to innocent third parties." Br. p. 23.

We disagree. In our opinion, such is a strained construction because it omits the plain requirement of using the auto in the business or personal affairs of OSP. The plain meaning of this provision of the Broad Form Endorsement is clear and unambiguous. Reasonably construed, it does not lend itself to the interpretation of the plaintiffs. Under the Broad Form Endorsement, an employee is covered, even in an auto that OSP does not own, hire, or borrow, so long as the employee is engaged in OSP's business or OSP's personal affairs. By his own admission, Guerra was not acting on behalf of his employer at the time of the accident. In his deposition, Guerra testified, "They [OSP] have nothing to do with this. I was driving my car, after business hours, and I was driving—and I was drinking. It was something that happened to me when I was off of work." When asked, "Did this have anything to do with your job, going into this bar," Guerra answered, "No." Guerra was driving his personal auto while off duty at the time of the accident. Therefore, Guerra is not an insured under OSP's policy with Hartford Insurance because he was not acting in OSP's business or OSP's personal affairs.

419 F.3d 286, 290 (4th Cir. 2005). Based upon this reasoning, the Fourth Circuit when on to hold:

> III.
>
> We uphold the district court's finding that Guerra was not an insured person under the Hartford Policy because his use at the time of the accident did not involve the business or personal affairs of OSP. We are also of opinion that because Guerra was driving his own auto at the time of the accident, the Omnibus Statute does not apply.

*Id.* at 291 (4th Cir. 2005).

In this case, the vehicle was not being used in furtherance of DOH's business because Mr. Harr was admittedly traveling to his home at the time of the accident such that respondeat superior does not attach. The Georgia Supreme Court has

established a two-part test for whether respondeat superior applies to hold an

employer liable for the actions of an agent or employee, to wit:

> "'Two elements must be present to render a master liable [under
> respondeat superior]: **first**, the servant must be in furtherance of the
> master's business; and, **second**, he must be acting within the scope of
> his master's business.'" *Piedmont Hospital, Inc. v. Palladino*, 276 Ga.
> 612, 613, 580 S.E.2d 215 (2003) (citation omitted). *See also Doe v.*
> *Saint Joseph's Catholic Church*, 313 Ga. 558, 565, 870 S.E.2d 365
> (2022) (quoting the test set forth in Palladino); *Quynn v. Hulsey*, 310
> Ga. 473, 474 n.2, 850 S.E.2d 725 (2020) ("Under the doctrine of
> respondeat superior, '[w]hen a servant causes an injury to another, the
> test to determine if the master is liable is whether or not the servant was
> at the time of the injury acting within the scope of his employment and
> on the business of the master.'") (quoting *Hicks v. Heard*, 286 Ga. 864,
> 865, 692 S.E.2d 360 (2010)). In other words, the doctrine of respondeat
> superior holds an employer liable for the negligent or intentional torts
> of its employee when " 'the tort was done within the scope of the actual
> transaction of the [employer's] business for accomplishing the ends of
> his employment.'" *Johnson Street Properties, LLC v. Clure*, 302 Ga.
> 51, 55, 805 S.E.2d 60 (2017)."

> . . . .

> For nearly 90 years, appellate courts in Georgia have consistently held
> that an employee "acts only for h[er] own purposes"—and not for those
> of her employer—while she is going to or from work, so respondeat
> superior generally does not apply when an employee commits a tort
> during her work commute. *Chattanooga Publishing Company v.*
> *Fulton*, 215 Ga. 880, 883, 114 S.E.2d 138 (1960) (explaining that "[a]s
> a general rule, a servant in going to and from his work in an automobile
> acts only for his own purposes and not for those of his employer, and
> consequently the employer is not to be held liable for an injury
> occasioned while the servant is en route to or from his work," and
> holding that the trial court properly granted the employer's motion for
> judgment notwithstanding the verdict where the evidence showed that
> the employee was in an accident while driving the employer's truck to
> work, because the employee was using the truck "for a purely personal
> mission of his own . . ., in no way connected with the business of the

owner, and not within the scope of his employment") (citation and punctuation omitted). . . . *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 802–803, 418 S.E.2d 604 (1992) (explaining the general rule that an employee "acts only for his own purposes" in commuting to and from work, and concluding that the trial court erred by denying the employer's motion for summary judgment because the uncontroverted evidence showed that the employee was on his way home from work when he was involved in a collision) (citation and punctuation omitted); *Stenger v. Mitchell*, 70 Ga. App. 563, 566, 28 S.E.2d 885 (1944) (explaining that "[a]s a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work," and holding that the trial court "did not err in granting [a] motion for nonsuit" filed by the owners of a car dealership, because there was no evidence to support the plaintiff's theory of respondeat superior where a salesman for the dealership caused an accident while driving a car owned by the dealership home from work); . . . . See also, e.g., Restatement (Third) Of Agency § 7.07 cmt. (e) (2006) ("In general, travel required to perform work, such as travel from an employer's office to a job site or from one job site to another, is within the scope of an employee's employment[,] while traveling to and from work is not."); Dan B. Dobbs, Paul T. Hayden, and Ellen M. Bublick, The Law of Torts § 428 (2d ed. 2023) ("The master is not vicariously responsible for the acts of a servant before work begins or after it ends. In particular, the going and coming rule holds that in jobs with a situs such as an office or factory, an employee coming to work or going home from it is not in employment."). The upshot is that as a matter of law, an employee generally does not act in furtherance of her employer's business and within the scope of her employment while she travels to or from her workplace. . . .

*Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 377–79, 893 S.E.2d 640, 646–48 (2023) (emphasis added).

Because Mr. Harr was admittedly traveling from the Premises directly to his home, respondeat superior does not apply. [*See* Exh. 3, Resp. to Interrog. No. 10;

*see also* Exh. 5, Resp. to Req. for Admis. No. 18.] Thus, Mr. Harr was <u>neither</u> acting in furtherance of DOH's business, <u>nor</u> was he within the course and scope of his employment with same, the Subject Vehicle does not qualify for coverage as a non-owned auto under Section A.2.   Accordingly, because Mr. Harr was admittedly traveling from the Premises directly to his home, respondeat superior does not apply such that Section A.2. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to the Subject Vehicle as a "non-owned" under the NorGUARD Policy.

### D. Limitation of Coverage to Hired Auto & Non-Owned Auto Liability Endorsement: Section B.2.2.b. "Who Is An Insured" Excludes Coverage for Jeffery S. Harr.

Third, Defendant, Jeffery S. Harr, does not qualify as an "Insured" under Section B.2. of the Hired Auto and Non-Owned Auto Liability Endorsement because Mr. Harr is a partner or executive officer of DOH operating a vehicle owned by Mrs. Harr, a member of his household.   The NorGUARD Policy contains the following endorsement, which provides in pertinent part:

HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

. . . .

B. For insurance provided by this endorsement only:

. . . .

2. Paragraph C. Who Is An Insured in Section II – Liability is replaced by the following:

    1. Each of the following is an insured under this endorsement to the extent set forth below:

        a. You;

        b. Any other person using a "hired auto" with your permission;

        c. For a "non-owned auto":

            (1) Any partner or "executive officer" of yours; or

            (2) Any "employee" of yours; but only while such "non-owned auto" is being used in your business; and

        d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.

    **2. None of the following is an insured:**

. . . .

        b. **Any partner or "executive officer" for any "auto" owned by** such partner or officer or **a member of his** or her **household** . . . .

[Exh. 1; *see also* Exh. 2(C), pp. 138-39 of 277 (emphasis added).]    While the endorsement provides that a partner, executive officer, or employee operating a non-owned auto is afforded coverage, said provision is amended by subsequent language in Section B.2.2.b.

Again, the Subject Vehicle driven by Mr. Harr at the time of the accident was owned individually by Mrs. Harr.  [*See* Exh. 5, Resp. to Req. for Admis. No. 7.]

Further, the USAA personal auto policy insuring the Subject Vehicle shows that the Subject Vehicle was scheduled in and garaged at the mutual residence of Mr. and Mrs. Harr. [*See* Exh. 4, Resps. to Reqs. for Produc. of Docs. 1-2, 4; *see also* Exh. 4(A); *see also* Exh. 2(A-B).] These facts are consistent with Mr. McKenzie's allegations in Counts I-II of the Underlying Lawsuit, and most particularly those of Count II that the vehicle was being used for a family purpose by a member of the same household as the other, and on their face exclude coverage under Section B.2.2.b. of the Hired Auto & Non-Owned Auto Liability Endorsement. Regardless, discovery has borne out further information that supports these allegations.

Mr. Harr is an incorporator of DOH and thus a partner or executive officer of same. [Exh. 6(A).] Further, the Subject Vehicle he was operating at the time of the Underlying Accident is owned by Mrs. Harr. [*See* Exh. 5, Resp. to Req. for Admis. No. 7.] Further, both Mr. and Mrs. Harr reside together at 3571 Haddon Hall Drive, Buford, Georgia 30519-7304. [*See* Exh. 2(F), p. 258 of 277; Exh. 4(A); Exh. 6(F-L).] Accordingly, because at the time of the Underlying Accident, as Mr. Harr was a partner or executive officer of DOH operating a vehicle owned by a member of his household, Section B.2.2.b. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to Mr. Harr as an "Insured" under the NorGUARD Policy.

**E. Limitation of Coverage to Designated Premises Endorsement: Section A.(1).(a).(i). Excludes Coverage for Accident Not on Premises.**

Fourth, because the Underlying Accident did not occur on the scheduled Premises, 7363 Spout Springs Rd Ste 205A, Flowery Branch, Georgia 30542-5563, there is no coverage afforded for it under Section A.(1).(a).(i). of the Limitation of Coverage to Designated Premises, Project or Operation, which provides in pertinent part:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
SCHEDULE

| | |
|---|---|
| A.  Premises: | |
| | 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| B.  Project Or Operation: | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Section II – Liability is amended as follows:

A. Paragraph A.1.b.(1) is replaced by the following:

(1) To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

- 23 -

(a) **The "bodily injury" or "property damage":**

   (i) **Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or**

   (ii) Arises out of the project or operation shown in the Schedule . . . .

[Exh. 1; *see also* Exh. 2(C), pp. 140-41 of 277 (emphasis added).]

As stated above, the "Premises" is defined as "7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563," and Section II.A.1.b.(1)(a)(i) requires that coverage is only afforded to an accident that "occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises . . . ." [*Id.* at p. 140 of 277.] The Underlying Accident did not occur on the Premises, but in the westbound lane of Tuggle Road, approximately one-half (1/2) mile east of Hamilton Mill Road in Gwinnett County, Georgia. This is approximately four (4) miles from the Scheduled Premises. [Exh. 2(E); R. Doc. 1, pp. 258-267 of 277.] Accordingly, because the Underlying Accident did not occur on the Premises, Section A.(1).(a).(i). of the Limitation of Coverage to Designated Premises, Project or Operation excludes coverage for the Underlying Accident under the NorGUARD Policy.

**F. Limitation of Coverage to Designated Premises Endorsement: Section A.(1).(a).(ii). Does Not Apply.**

Fifth, the "Project Or Operation" coverage part is of no moment as it is not applicable to DOH's business as a restaurant. Rather, a Project or Operation coverage is a project-specific insurance policy that is typically required for specific

industry projects such as construction, engineering, and other large-scale projects where unique risks are involved, and specific insurance coverage is needed to protect businesses from those risks.    Again, Section A.(1).(a).(ii). of the Limitation of Coverage to Designated Premises, Project or Operation, which provides in pertinent part:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
SCHEDULE

| A.   Premises: |
| --- |
| 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| B.   Project Or Operation: |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Section II – Liability is amended as follows:

A. Paragraph A.1.b.(1) is replaced by the following:

(1) To "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

(a) **The "bodily injury" or "property damage":**

(i) Occurs on the premises shown in the Schedule or

the grounds and structures appurtenant to those premises; or

(ii) **Arises out of the project or operation shown in the Schedule . . . .**

[Exh. 1; *see also* Exh. 2(C), pp. 140-41 of 277 (emphasis added).]

The International Risk Management Institute, Inc. (IRMI) classifies "Project liability insurance is a form of architects and engineers (A&E) liability coverage in which coverage applies only to an insured's work on a single project rather than to the entire scope of an insured's practice."[1] "Such policies are advantageous because they provide coverage for all members of a project's design team, reduce the incidence of disputes in the event of a claim, ensure coverage continuity following completion of work, and facilitate the availability of high limits needed on large projects."[2]

The instant Policy does not encompass a construction project, and as such, neither the Declarations, nor the Schedule in the endorsement indicates the location of a covered project. Further Project or Operations coverage is a separate coverage type and does not encompass "operations" as defined in the policy under Section I.H.8, which provides: "'Operations' means your business activities occurring at the described premises." [Exh. 1; *see also* Exh. 2(C), p. 217 of 277.]

---

[1] "Project Liability Insurance," IRMI, available at: https://www.irmi.com/term/insurance-definitions/project-liability-insurance (accessed December 22, 2024).
[2] *Id.*

Accordingly, because the Project Or Operation coverage part does not apply to DOH, Inc., Section A.(1).(a).(ii). of the Limitation of Coverage to Designated Premises, Project or Operation excludes coverage for the Underlying Accident under the NorGUARD Policy.

### G. Limitation of Coverage in Liquor Liability Endorsement: Section B.2.c. Excludes Coverage for Accident Due to Other Insurance.

Sixth, because other insurance is available for the Underlying Accident, the Liquor Liability Coverage Endorsement excludes coverage. Specifically, the Georgia Motor Vehicle Crash Report, Agency Case Number GP230068318, indicates that Mrs. Harr's vehicle was insured by USAA, under Policy Number: 015728612 C 071. [R. Doc. 1, p. 258.] Said Endorsement provides in pertinent part:

LIQUOR LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

. . . .

Section II – Liability is amended as follows:

A.    The insurance provided under Paragraph A.1. Business Liability also applies to all "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages.

B.    For the insurance provided by this endorsement only, Paragraph B. Exclusions is amended as follows:

1. Paragraph 1. Applicable To Business Liability Coverages, other than Exclusions a. Expected Or Intended Injury, d. Workers' Compensation And Similar Laws and e.

Employer's Liability, does not apply.

2.  The following exclusions are added:

This insurance does not apply to:

. . . .

c.  **Any "bodily injury" or "property damage" with respect to which other insurance is afforded,** or **would be afforded but for the exhaustion of the Limits of Insurance.**

This exclusion does not apply if the other insurance responds to liability for "bodily in- jury" or "property damage" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

. . . .

[Exh. 1; *see also* Exh. 2(C), pp. 143-44 of 277 (emphasis added).]

Plaintiff received the Declarations page from Defendants via discovery. [*See* Exh. 4, Resps. to Reqs. for Produc. of Docs. 1-2, 4; *see also* Exh. 4(A); *see also* Exh. 2(A-B).] Upon review of same, said policy clearly states that Jill E. Harr is the Named Insured and lists the Subject Vehicle as Vehicle 02 in the schedule. As such, the Subject Vehicle is insured by other insurance, which has not been exhausted, and is available to Mr. McKenzie for his alleged damages. However, even if said policy were exhausted, the exclusion under Section B.2.c. in the Liquor Liability Endorsement would still apply. Additionally, USAA has not informed NorGUARD that it would provide coverage to DOH, Inc. for any of the alleged damages resulting from the Underlying Accident, and no evidence to the contrary has been supplied by

Defendants.

Accordingly, because other, unexhausted insurance is available to Mr. McKinzie for the damages sought to be claimed against DOH, Inc., Section B.2.c. of the Limitation of Coverage in Liquor Liability Endorsement excludes Coverage for the Underlying Accident.

### H. Liquor Liability Coverage Endorsement: Adverse Inference for Lack of Respondeat Superior Excludes Coverage per the Georgia Dram Shop Act

Seventh and last, because respondeat superior does not apply to the employment relationship between Mr. Harr and DOH, if any, the Georgia Dram Shop Act (the "GDSA") does not allow Mr. McKenzie. to pursue a cause of action against DOH. *See* Ga. Code § 51-1-40. The GDSA provides, in pertinent part:

> (a) The General Assembly finds and declares that the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person, except as otherwise provided in subsection (b) of this Code section.

> (b) A person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons; provided, however, **a person . . . who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage.** Nothing contained in this Code section shall authorize the consumer of any

alcoholic beverage to recover from the provider of such alcoholic beverage for injuries or damages suffered by the consumer.

. . . .

*Id.* (emphasis added).

The allegations by Mr. McKenzie that Mr. Harr allegedly imbibed alcoholic beverages at Johnny's Pizza prior to the Underlying Accident rise to the level of a tacit admission due to Mr. Harr's invocation of his Fifth Amendment right against self-incrimination and the adverse inference that results therefrom. The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall . . . be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." However, the Supreme Court has held that "consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment "does not preclude the inference where the privilege is claimed by a party to a Civil cause." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976). In that vein, Mr. Harr, when asked to admit or deny the following Requests for Admission, invoked his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution; Article I, Section I, Paragraph XVI of the Georgia Constitution; and O.C.G.A.§ 24-5-505(a), 24-5-506(a), to each of the following:

When asked to "Admit or deny that the Defendant, JEFFERY S. HARR, served himself one or more alcoholic beverages on September 1, 2023."

[Exh. 5, Resp. to Req. for Admis. No. 13.]

When asked to "Admit or deny that the Defendant's, JEFFERY S. HARR, did not provide monetary compensation to the restaurant operated by Defendant, DOH, INC., for the alcoholic beverages referenced in Request for Admission No. 13."

[Exh. 5, Resp. to Req. for Admis. No. 14.]

When asked to "Admit or deny that the Defendant's, JEFFERY S. HARR, served himself one or more alcoholic beverages on September 2, 2023."

[Exh. 5, Resp. to Req. for Admis. No. 15.]

When asked to "Admit or deny that the Defendant, JEFFERY S. HARR, imbibed more than two (2) alcoholic beverages within the twenty-four (24) preceding the accident at issue in this litigation."

[Exh. 5, Resp. to Req. for Admis. No. 17.]  Accordingly, pursuant to the Supreme Court's holding in *Baxter*, Plaintiff is entitled to an adverse inference that each of these is an admitted fact.  Taking these facts as true, we must turn to whether DOH had actual knowledge that would subject it to liability pursuant to the GDSA.

Because Johnny's Pizza is a juridical person, it can only acquire knowledge via its agents and employees when the relationship between them is subject to respondeat superior.  As such, respondeat superior must apply to the employee(s) acting on behalf of a duly-licensed restaurant for the actual knowledge requirement

of the GDSA to be imputed to the licensed restaurant/employer.  That is not the case here.

As stated above, respondeat superior only attaches when 1) the servant is acting in furtherance of the master's business; and 2) when he is acting within the scope of his master's business.  *See Piedmont Hospital, Inc. v. Palladino*, 276 Ga. 612, 613, 580 S.E.2d 215 (2003).  Based upon the adverse inference standard of *Baxter*, Mr. Harr was not patronizing DOH by providing monetary compensation for alcohol served by a staff member.  Rather, he was an owner of said business serving himself without any benefit to DOH or any person other than himself.

> "'Two elements must be present to render a master liable [under respondeat superior]: **first**, the servant must be in furtherance of the master's business; and, **second**, he must be acting within the scope of his master's business.'" *Piedmont Hospital, Inc. v. Palladino*, 276 Ga. 612, 613, 580 S.E.2d 215 (2003) (citation omitted).  *See also Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 565, 870 S.E.2d 365 (2022) (quoting the test set forth in Palladino); *Quynn v. Hulsey*, 310 Ga. 473, 474 n.2, 850 S.E.2d 725 (2020) ("Under the doctrine of respondeat superior, '[w]hen a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master.'") (quoting *Hicks v. Heard*, 286 Ga. 864, 865, 692 S.E.2d 360 (2010)).  In other words, the doctrine of respondeat superior holds an employer liable for the negligent or intentional torts of its employee when " 'the tort was done within the scope of the actual transaction of the [employer's] business for accomplishing the ends of his employment.'" *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 55, 805 S.E.2d 60 (2017)."

*Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 377, 893 S.E.2d 640, 646 (2023) (emphasis added).  In this case, Mr. Harr was <u>neither</u> acting in furtherance of

DOH's business, <u>nor</u> was he acting in the course and scope of his employment with DOH.

As to the first element of being "in furtherance of the master's business," DOH d/b/a Johnny's Pizza is a restaurant holding Georgia Alcohol License Number 0145257, which permits it to sell food and alcoholic beverages for a profit. [*See* Exhs. 5(A), 8.] As Mr. Harr did not serve himself food or beverages for the benefit of DOH's business by providing monetary compensation to Johnny's Pizza, he most certainly was not furthering DOH's business by imbibing alcoholic beverages *at the expense* of DOH.

As to the second element of "acting within the course and scope of employment," even if an employer-employee relationship existed between DOH and Mr. Harr, which is disputed, Mr. Harr's relevant scope of employment would have been as a server of food and/or alcoholic beverages to patrons. By serving alcohol to himself, he was outside of the course and scope of his employment, i.e., selling food and beverages to paying customers for DOH's profit. Accordingly, because Mr. Harr at the time he served himself alcoholic beverages, was <u>neither</u> acting in furtherance of DOH's business, <u>nor</u> was he within the course and scope of his employment with same, his actions preclude liability upon DOH under the GDSA.

Accordingly, because respondeat superior does not apply to the relationship, if any, between Jeffery S. Harr and DOH, Inc., such that DOH, Inc., is not exposed

to liability for the allegedly injuries sustained by Jason S. McKenzie, Jr. in the Underlying Accident. Thus, as liability is precluded by the Georgia Dram Shop Law such that it excludes coverage for the Underlying Accident under the NorGUARD Policy.

## IV.    CONCLUSION

In conclusion, there is no coverage available under the NorGUARD Policy for the Underlying Accident at issue in this case because:

First, the Subject Vehicle was owned by Mrs. Harr and Driven by Mr. Harr, both of whom are members of the same household, Section A.1. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to the Subject Vehicle as a "hired auto."

Second, Mr. Harr was admittedly traveling from the Premises directly to his home, respondeat superior does not apply such that Section A.2. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to the Subject Vehicle as a "non-owned auto."

Third, at the time of the Underlying Accident, as Mr. Harr was a partner or executive officer of DOH operating a vehicle owned by a member of his household, Section B.2.2.b. of the Hired Auto & Non-Owned Auto Liability Endorsement excludes coverage to Mr. Harr as an "Insured."

Fourth, the Underlying Accident did not occur on the Premises, Section A.(1).(a).(i). of the Limitation of Coverage to Designated Premises, Project or Operation excludes coverage for the Underlying Accident.

Fifth, the Project Or Operation coverage part does not apply to DOH, Inc., Section A.(1).(a).(ii). of the Limitation of Coverage to Designated Premises, Project or Operation excludes coverage for the Underlying Accident.

Sixth, other, unexhausted insurance is available to Mr. McKinzie for the damages sought to be claimed against DOH, Inc., Section B.2.c. of the Limitation of Coverage in Liquor Liability Endorsement excludes Coverage for the Underlying Accident.

Seventh and last, respondeat superior does not apply to the relationship, if any, between Jeffery S. Harr and DOH, Inc., such that DOH, Inc. is not exposed to liability for the allegedly injuries sustained by Jason S. McKenzie, Jr. in the Underlying Accident.  Thus, as liability is precluded by the Georgia Dram Shop Law such that it excludes coverage for the Underlying Accident under the NorGUARD Policy.

This **17th** day of **March 2025**.

Respectfully submitted:

QUINTAIROS, PRIETO, WOOD, & BOYER, P.A.

**/s/ Grant T. Herrin**
Grant T. Herrin (LA # 35169)
3850 North Causeway Blvd., Suite 630
Metairie, Louisiana 70002
504-527-5055 x 1429
Fax: 504-527-5056
Email: grant.herrin@qpwblaw.com
*Counsel pro hac vice for Plaintiff*

**/s/ Jason P. Wright**
Jason P. Wright (GA # 778280)
365 Northridge Road, Suite 230
Atlanta, GA 30350
770-650-8737
Fax: 770-650-8797
Email: Jason.wright@qpwblaw.com
*Local counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE</u>

In accordance with L.R. 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). I also hereby certify that I have served the foregoing on opposing counsel by filing through the Court's CM/ECF system, which will send electronic notice to all counsel of record.

This **17th** day of **March 2025**.

Respectfully submitted:

QUINTAIROS, PRIETO, WOOD, & BOYER, P.A.

**/s/ Grant T. Herrin**
Grant T. Herrin (LA # 35169)
3850 North Causeway Blvd., Suite 630
Metairie, Louisiana 70002
504-527-5055 x 1429
Fax: 504-527-5056
Email: grant.herrin@qpwblaw.com
*Counsel pro hac vice for Plaintiff*

**/s/ Jason P. Wright**
Jason P. Wright (GA # 778280)
365 Northridge Road, Suite 230
Atlanta, GA 30350
770-650-8737
Fax: 770-650-8797
Email: Jason.wright@qpwblaw.com
*Local counsel for Plaintiff*