IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORGUARD INSURANCE COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>JASON S. MCKINZIE, JR., JEFFERY S. HARR, JILL E. HARR, DOH, INC., JOHNNY'S PIZZA, INC., and JOHNNY'S PIZZA FRANCHISE SYSTEM, INC.,<br><br>　　　Defendants. | CIVIL ACTION FILE<br>NO.  1:24-CV-03586-TRJ |

**DEFENDANT JASON S. MCKINZIE, JR.'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF**

COMES NOW, Defendant Jason S. McKinzie, Jr. ("Mr. McKinzie") and hereby submits this Response in Opposition to Plaintiff's Motion for Summary Judgment and Brief in Support thereof, respectfully showing this Court the following:

**STATEMENT OF RELEVANT FACTS**

To avoid requiring this Court to reread the same set of facts twice, Mr. McKinzie incorporates by reference his Statement of Relevant Facts set forth in his

1

Motion for Judgment on the Pleadings. [Electronic Court Filing ("ECF") Doc. No. 44 at pp. 1-4.]

Mr. McKinzie identifies the following additional facts set forth in the Underlying Complaint and its exhibits from the underlying case pending in the State Court of Gwinnett County, Georgia:

1. Mrs. Harr and Mr. Harr own and operate DOH, Inc. ("DOH"), which is the franchisee of Johnny's New York Style Pizza located at 7363 Spout Springs Rd., Flowery Branch, Georgia 30542 (the "Premises"). [ECF Doc. No. 58-3 at 440.]

2. Mr. Harr was present at the Premises in his official capacity with DOH. [*Id.*]

3. Mr. Harr was furnished and served alcoholic beverages by DOH at the Premises prior to getting in a Ford Escape (the "Subject Vehicle") owned by Mrs. Harr on September 2, 2023. [*Id.*]

4. Mr. Harr hit Mr. McKinzie while driving the Subject Vehicle, which resulted in injuries to Mr. McKinzie. [*Id.* at 441, 444-45.]

## ARGUMENT AND CITATION TO AUTHORITY

**A.    Summary Judgment Standard**

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists,

and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify the grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine is issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## B.    The Duty to Indemnify is Not Ripe.

The Motion for Summary Judgment alleges broadly that there is no coverage under the Policy for any of the claims in this case. [*See* ECF Doc. No. 58-2 at p. 22.] This, presumably, is intended to include the allegation that there is no obligation on the part of Plaintiff to indemnify Defendants DOH, Mr. Harr, or Mrs. Harr (the "Harr Defendants") against any settlement or judgment in the Underlying Litigation. However, any duty to indemnify the Harr Defendants is separate from Plaintiff's duty to defend them in the Underlying Litigation. To the extent that Plaintiff seeks a ruling from this Court that it has no duty to indemnify the Harr Defendants, that issue is not yet ripe.

3

Whether an insurer has a "duty to indemnify is determined by the facts as they are established in the underlying action." *Nat. Trust Ins. Co. v. Finishing Dynamics, LLC*, 2018 WL 8949791 at *5. (N.D. Ga. September 18, 2018). An insurer's duty to indemnify is "triggered only when the insured is determined to be liable for the damages within the policy's coverage." *Erie Indem. Co. v. Acuity Mut. Ins. Co.*, 2006 WL 2048310 at *2 (N.D. Ga. July 19, 2006). As a result, an "insurer's duty to indemnify [an] insured 'is not ripe for adjudication until [the insured] is in fact held liable in the underlying state court action.'" *Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n, Inc.*, 637 F. Supp. 3d 1342, 1359 (S.D. Ga. 2022) (quoting *State Farm Fire & Cas. Co. v. Middleton*, 65 F.Supp.2d 1240, 1248 (M.D. Ala. 1999). Indeed, courts in this circuit have consistently held that an insurer's duty to indemnify is not ripe for consideration until the underlying lawsuit is resolved or the insured's liability is established. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770-71 (11th Cir. 2019) (listing district court cases in the Eleventh Circuit).

It is undisputed that there has been no finding of liability or settlement in the Underlying Litigation. As a matter of law, there can be no finding one way or the other as to Plaintiff's duty to indemnify without a resolution of that Litigation.

Accordingly, the duty to indemnify is not ripe and, insofar as Plaintiff seeks summary judgment on that issue, this Court should deny it.

**C.    Plaintiff Cannot Rely on Extraneous Facts Beyond the Policy, the Underlying Complaint and the "True Facts" Alleged by DOH.**

In support of its Motion for Summary Judgment, Plaintiff submits a litany of factual allegations to this Court that do not appear in the Underlying Complaint or the Policy. For example, Plaintiff relies on printouts from the Georgia Secretary of State's website [ECF Doc. No. 38-3 at Ex. 6], Defendants Jeffrey and Jill Harr's discovery responses [*Id.* at Exs. 3, 4, and 5], a USAA insurance policy declarations page [*Id.* at Ex. 4(a)], an assessment and/or tax appraisal for Johnny's New York Style Pizza's property [*Id.* at Exs. 7-8], and a printout from the Georgia Tax Center [*Id.* at Ex. 9], among others. None of these items are appropriate for the Court to consider when examining the only ripe issue in this case—whether Plaintiff has a duty to defend the Defendants.

Under Georgia law, "[t]he insurer's duty to defend can *only* be excused if the facts in the <u>underlying complaint</u> *unambiguously* exclude coverage under the policy." *James River Ins. Co. v. Dalton-Whitfield Regional Solid Waste Mgmt. Auth.*, 2022 WL 18777374 at *4 (N.D. Ga. Nov. 7, 2022) (underlined emphasis added; italicized emphasis in original). A court may not look beyond the complaint in the underlying action to examine extraneous facts in determining whether the insurer

has a duty to defend. This is true even if facts learned during discovery in the underlying litigation might otherwise excuse an insurer's duty to defend. *See Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 2019 WL 9633224 at *6 (N.D. Ga. Dec. 19, 2019) ("Georgia law makes it clear that an insurer's duty to defend is based on the allegations in the operative complaint, and that subsequent facts uncovered during discovery are irrelevant to this inquiry.") (quoting *Nat'l Tr. Ins. Co. v. Finishing Dynamics, LLC*, No. 1:18-CV-0351-AT, 2018 WL 8949791, at *5 (N.D. Ga. Sept. 18, 2018).

The duty to defend is excused **only** when the underlying complaint "unambiguously excludes coverage under the policy, and thus, the duty to defend exists if the claim *potentially* comes within the policy." *Penn-Am Ins.*, 268 Ga. at 565-566 (emphasis added). "Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured." *Id.*

This principle is especially true with respect to exclusions from coverage sought to be invoked by the insurer." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1376 (N.D. Ga. 2009). Such "exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer

and forgivingly construed in favor of the insured to afford coverage." *Wilkinson v. Georgia Farm Bureau Mut. Ins. Co.*, 833 S.E.2d 579, 582 (Ga. Ct. App. 2019).

While an insurer may not rely on facts or evidence beyond the underlying complaint in *denying* its duty to defend, it will still be required to defend where the insured has apprised the insurer of "true facts" beyond those allegations. *See Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671*, 268 Ga. 561, 562 (1997). "[W]hen a complaint alleges facts that place it outside the scope of coverage, but the insured notifies the insurer of facts that would bring the claim within the scope of coverage, 'the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on 'true facts.''" *Schneider Nat'l Carriers, Inc. v. United Specialty Ins. Co.*, 603 F. Supp. 3d 1352, 1358 (M.D. Ga. 2022) (quoting *Colonial*, 268 Ga. at 562) Thus, "Georgia law does not permit an insurer to rely on the allegations of the complaint to deny coverage when the facts that the insurer <u>knows or can ascertain</u> show that the claim is within the coverage of the policy." *JLM Enterprises, Inc. v. Houston Gen. Ins. Co.*, 196 F. Supp. 2d 1299, 1304 (S.D. Ga. 2002) (emphasis added). "Under such circumstances, an insurer has a duty to conduct a reasonable investigation into the insured's contentions, and if the investigation reveals facts arguably placing the claim within the policy coverage, then the insurer would have

a duty to defend." *Id.* (citing *Anderson v. So. Guar. Ins. Co.*, 235 Ga. App. 306, 308, 508 S.E.2d 726, 729 (1998)).

Plaintiff cannot rely on facts and documents extraneous to the Policy and the Underlying Complaint, unless those facts would create the potential for coverage and require Plaintiff to defend. Accordingly, this Court should ignore any allegations or facts alleged by Plaintiff in its Motion for Summary Judgment not otherwise set forth in the Policy, the Underlying Complaint, or in the affidavits submitted by the Harr Defendants.

**D.    The Subject Vehicle Falls Within Coverage Under the Policy.**

Plaintiff's first argument is that the Subject Vehicle was "not owned by DOH but owned by Mrs. Harr, an officer of DOH, and not otherwise being utilized in the furtherance of DOH's business or affairs." [ECF Doc. No. 56-1 at p. 11.] Plaintiff takes the position that, since the Underlying Complaint alleges that the Subject Vehicle was used for a family purpose, it necessarily was not being used for Plaintiff's business or personal affairs and therefore cannot fall within the coverage provided by the Non-Owned Auto Endorsement. This argument fails for two reasons: (1) under Georgia law, the use of a vehicle for a family purpose is not mutually exclusive with the use of the vehicle for a business purpose as well; and

(2) DOH has submitted an affidavit from Mrs. Harr indicating that the Subject Vehicle was used for a business purpose at the time of the car accident.

1. <u>Mrs. Harr's Ownership of the Subject Vehicle Does Not Exclude Liability.</u>

Plaintiff's first argument is that the Subject Vehicle was not a "hired auto" under the Policy. [ECF Doc. No. 58-2 at pp. 3-6.] Mr. McKinzie objects to the reliance on the USAA insurance policy which should be ignored as a matter of law for the reasons set forth above. Nonetheless, Mr. McKinzie does not otherwise argue that the Subject Vehicle was a "hired auto" under the Policy.

2. <u>The Subject Vehicle was Used for Both a Family Purpose and a Business Purpose at the Time of the Accident and is, Therefore, a Non-Owned Auto Under the Policy.</u>

Plaintiff next invokes a separate provision of the Policy to argue that the Subject Vehicle was not a "non-owned auto" under the Policy either. [ECF Doc. No. 58-2 at pp. 6-9.] Pursuant to the Policy:

> A.    Insurance is provided only for those coverages for which a specific charge is shown in the Declarations or in the Schedule.
>
> …
>
> > **2.  Non-owned Auto Liability**
> > The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

[ECF Doc. No. 1 at pp. 138.]

Plaintiff identifies a handful of facts to argue that the Subject Vehicle was not a "non-owned auto" at the time of the accident because: (1) the Subject Vehicle "was owned individually by Mrs. Harr" at the time of the accident; and (2) "the USAA personal auto policy insuring the Subject Vehicle shows that the Subject Vehicle was scheduled in and garaged at the mutual residence of Mr. and Mrs. Harr."

Plaintiff insists that, because the Underlying Complaint alleges that Mr. Harr was using the Subject Vehicle for a "family purpose" at the time of the accident, it was not in use as part of DOH, Inc.'s business. Therefore, Plaintiff reasons, the Subject Vehicle does not fall within the Non-Owned Auto Endorsement. This argument is grounded in a misunderstanding of Georgia law.

Georgia law has long provided that "the mere fact that a car is purchased and used for business purposes does not prevent its coming within the 'family-car' doctrine, where it is also used for family pleasure."[1] *Evans v. Caldwell*, 52 Ga. App. 475 (1936). "The 'family purpose doctrine' has been applied to 'cars owned and maintained in a business carried on for profit, and to motor vehicles used for business

---

[1] Georgia courts have used the terms "family purpose doctrine" and "family-car doctrine" interchangeably. *See, e.g., Esco v. Jackson*, 185 Ga. App. 901, 902 (1988) (treating the "family purpose doctrine" and the "family-car doctrine" as one and the same).

as well as for the pleasure and convenience of the family[.]" *Temple v. Chastain*, 99 Ga. App. 719, 720 (1959).

Here, Exhibit E to the Underlying Complaint provides that Mrs. Harr and Mr. Harr own and operate DOH, Inc., which is a franchisee of Johnny's New York Style Pizza located at 7363 Spout Springs Rd., Flowery Branch, Georgia 30542. [ECF Doc. No. 58-3 at 440.] DOH is, therefore, the family business. When the Underlying Complaint alleges that the Subject Vehicle was used for a "family purpose," that family purpose is (or at least could be) the family business. Moreover, Mrs. Harr has provided "true facts" to this Court and Plaintiff in the form of her affidavit in which she states that the Subject Vehicle was used in connection with the business including, without limitation, transporting supplies. [ECF Doc. No. 55-5 at p. 3.] Accordingly, the Subject Vehicle was used both for a family purpose and a business purpose.

3. <u>Plaintiff Cannot Rely on Interrogatory Responses to Make an Argument Regarding Respondeat Superior.</u>

Plaintiff next relies on Interrogatory responses form Mr. Harr to argue that he was traveling home at the time of the accident and was therefore not "on the job" for purposes of respondeat superior liability. [ECF Doc. No. 58-2 at pp. 8-9.] As set forth previously in this Brief, these Interrogatory responses cannot be used by Plaintiff to excuse its duty to defend in this case. *Five Paces Inn Co.*, 2019 WL

9633224 at *6 ("Georgia law makes it clear that an insurer's duty to defend is based on the allegations in the operative complaint, and that subsequent facts uncovered during discovery are irrelevant to this inquiry."). For this reason alone, this argument fails.

### E.    Mr. Harr was Insured Under the Policy.

Plaintiff next argues that the language of the "non-owned auto" portion of the "Hired Auto" and "Non-owned Auto" endorsement (the "Auto Endorsement") excludes any coverage for Mr. Harr. [ECF Doc. No. 58-2 at pp. 10-12.][2] After acknowledging that DOH's partners, officers, and employees are insured when using a "non-owned auto," Plaintiff attempts to rely on the following carve-out from the None-Owned Auto Endorsement:

> 2. None of the following is an insured:
>
> . . .
>
> b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household[.]

---

[2] Mr. McKinzie notes that this section of Plaintiff's brief is substantially similar to arguments made in its response to Mr. McKinzie's Motion for Judgment on the Pleadings. [ECF Doc. No. 45 at pp. 12-15.] There is one exception, which is Plaintiff's invocation of discovery responses from Mr. Harr in support of its Motion for Summary Judgment. As set forth elsewhere in this brief, consideration of documents beyond the Policy and Underlying Complaint are improper.

[ECF Doc. No. 58-2 at pp. 10-11.] On this basis, Plaintiff reasons that coverage is excluded "when the non-owned auto operated by an executive officer is owned by a member of his household." [*Id.*] However, this argument creates a contradiction because the Auto Endorsement defines a "non-owned auto" as:

> . . . any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees," your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

[*Id.*] Plaintiff's interpretation fails because it would mean that the endorsement defines "non-owned autos" specifically to include and provide coverage for "autos" owned by partners, officers, employees and members of their households, only for the endorsement to turn around and exclude from insurance coverage any "autos" owned by partners, officers, and members of their households. This is nonsense.

The word "auto" in the Auto Endorsement is in quotation marks. It is a defined term under the Policy whose definition is:

> 2. "Auto" means:
>
> > a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
> > b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle

registration law where it is licensed or principally garaged.

[ECF Doc. No. 1 at p. 229.] The endorsement defines "non-owned auto" as:

> . . . any **"auto"** you do not own, lease, hire, rent or borrow **which is used in connection with your business.** This includes "autos" owned by your "employees," your partners or your "executive officers", or members of their households, **but only while used in your business or your personal affairs.**

[ECF Doc. No. 1 at p. 139 (emphasis added).] A "non-owned auto" is an "auto" used in connection with DOH's business and includes automobiles privately owned by DOH's partners and executive officers (and their family members) while in use for its business. [*Id.*]

When the Auto Endorsement says that there is no coverage for "[a]ny partner or 'executive officer' for any 'auto' owned by such partner or officer or a member of his or her household[,]" it has purposely used the word "auto" and not "non-owned auto." The endorsement is merely excluding "autos" owned by partners or officers, or members of their household which are not used in connection with DOH's business. Those autos used in connection with DOH's business are "non-owned autos" and are covered.

This makes sense. Plaintiff obviously did not intend to provide insurance coverage to the Harrs while using their vehicle on a family vacation, for example,

and included an exclusion to bar such coverage. The Policy does provide coverage, however, for use of the vehicle in the business or personal affairs of DOH, Plaintiff's insured.

When the duty to indemnify is ripe, the parties will no doubt argue over whether Mr. Harr used the vehicle "in connection with [DOH's] business or [its] personal affairs[.]" However, that issue is not properly before this Court. The only issue is whether this Court can determine, based only on an examination of the Underlying Complaint and Policy, that there can be no coverage under the Auto Endorsement. Because the endorsement at least arguably *creates* coverage rather than excludes it, Plaintiff is not entitled to summary judgment on the duty to defend.

## F. Plaintiff Cannot Obtain Summary Judgment Due to the Designated Premises Endorsement.

Plaintiff next argues that the accident between Mr. Harr and Mr. McKinzie did not occur on the premises of 7363 Spout Springs Road, Suite 205A, Flowery Branch, Georgia 30542. [ECF Doc. No. 58-2 at pp. 12-14.] Plaintiff contends that the Designed Premises Endorsement excludes coverage for the accident because the accident occurred on a road after Mr. Harr left the designated premises. [*Id.*] This argument fails under both the plain language of the Policy and the fact that Plaintiff's interpretation would result in internal contradictions within the Policy.

1. Plaintiff's Argument Fails Under the Plain Language of the Policy.

The Designated Premises Endorsement purports to limit the Policy's coverage in pertinent part:

> (1) To "bodily injury" and "property damage" caused by an occurrence that takes place in the "coverage territory" only if:
> (a) The "bodily injury" or "property damage":
>> (i) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; **or**
>> (ii) **Arises out of the project or operation shown in the Schedule**;

[ECF Doc. No. 1 at pp. 140-141 (emphasis added).] At the top of that endorsement is the following:

**SCHEDULE**

| | |
|---|---|
| **A. Premises:** | |
| | 7363 Spout Springs Rd Ste 205A, Flowery Branch, GA 30542-5563 |
| **B. Project Or Operation:** | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

[ECF Doc. No. 1 at p. 140.] The Declarations page for the Policy lists "Johnny's NY Style Pizza & Subs" under the title "Additional Names of Insured" and includes a "Description of Business" as "Full-Service Restaurants[.]" [ECF Doc. No. 1 at p. 60.]

Mr. McKinzie's Underlying Complaint alleges that Mr. Harr caused the car crash after consuming alcohol at Johnny's NY Style Pizza & Subs, otherwise owned

16

and operated by DOH, which is located at 7363 Spout Springs Rd., Flowery Branch, Georgia 30542. [ECF Doc. No. 58-3 at p. 233.] Mr. McKinzie therefore claims that the accident arose out of the "Project or Operation shown on the Schedule[.]" Because the "Project or Operation" line is blank, the Policy directs the insured to the Declarations to show the "Project or Operation." [ECF Doc. No. 58-3 at p. 93.] Because the Declarations list "Johnny's NY Style Pizza & Subs," described as a "Full-Service Restaurant," that restaurant is incorporated into the Designated Premises Endorsement, and the Underlying Complaint therefore alleges that the damages "arose out of" the project or operation of the Full-Service Restaurant.

Plaintiff anticipates this argument (because Mr. McKinzie made it in his Motion for Judgment on the Pleadings, ECF Doc. No. 44 at pp. 11-14) and argues that "a Project or Operation coverage is a project-specific insurance policy that is typically required for specific industry projects such as construction, engineering, and other large-scale projects where unique risks are involved[.]" [ECF Doc. No. 58-2 at p. 14.] Plaintiff cites to no authority for this statement. The best it comes to providing any citation is the later invocation of a publication from the International Risk Management Institute, Inc. [*Id.* at p. 15.] However, like so many before it, this argument relies on extraneous documents and not on the Policy or the Underlying Complaint.

Further, insurance industry trade publications are not the proper guide for the interpretation of the Policy. "In construing an insurance contract[,] the test is not what the insurer intends its words to mean, but rather what a reasonable person in the insured's position would understand them to mean. Where such a provision is susceptible to two or more interpretations, the courts will construe it most favorably to the insured." *Gulf Ins. Co. v. Mathis*, 182 Ga. App. 323, 324 (1987). Courts should read the policy "as a layman would read it[.]" *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 304 Ga. 224, 228 (2018). "[I]t is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company." *Fed. Nat'l Title Ins. Co. v. Keyingham, Inv., LLC*, 288 Ga. 312, 313 (2010).

The guiding principle for the interpretation of the Policy is how laypeople like Mr. Harr and Mrs. Harr would have interpretated the reference to "Project or Operation" and the direction to include what is written in the Declaration (i.e. the "Full-Service Restaurant"). A layperson would reasonably conclude that the Designated Premises Endorsement includes accidents and damages that "arise out of" the operation of DOH's Full-Service Restaurant identified in the Declarations.

A layperson would not be familiar with esoteric insurance industry trade publications when reviewing and interpreting his policy.

Accordingly, Plaintiff cannot obtain summary judgment under the Designated Premises Endorsement either.

2. Plaintiff's Interpretation Would Cause Internal Contradictions in the Policy.

Even if Plaintiff could make a reasonable argument that the Policy facially limited insurance coverage to damages that only occur in Suite 205A of 7363 Spout Springs Rd., Flowery Branch, Georgia 30542, it would have to confront the fact that this interpretation would make the Auto Endorsement completely illusory. The Auto Endorsement purports to provide insurance coverage to "[a]ny other person using a 'hired auto' with [DOH's] permission" and any "partner or 'executive officer' . . . or [a]ny 'employee'" using a "non-owned auto." [ECF Doc. No. 58-3 at p. 92.]

However, if insurance coverage is limited only to damages that occur in Suite 205A of 7363 Spout Springs Rd., it is impossible for the Auto Endorsement to ever apply. No automobile of any kind is going to enter the suite, which is a "Full-Service Restaurant." The effect of Plaintiff's argument is to sell DOH insurance coverage for damages arising from the use of certain automobiles while seeing to it that this coverage can never be used.

Under Georgia law, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]" O.C.G.A. § 13-2-2(4). Because Plaintiff's interpretation of the Designated Premises Endorsement would render the Auto Endorsement illusory, this Court should favor an interpretation that upholds all of the endorsements. Accordingly, Plaintiff cannot obtain summary judgment on the basis of the Designated Premises Endorsement.

## G.    The Liquor Liability Endorsement is of No Consequence.

Plaintiff next argues that the Liquor Liability Endorsement excludes coverage because Mrs. Harr allegedly had insurance coverage with USAA. [ECF Doc. No. 58-2 at pp. 16-18.] According to Plaintiff, the Liquor Liability Endorsement excludes coverage under the Policy insofar as other insurance is available to any insured under the Policy. This argument is substantially the same as the arguments set forth in Plaintiff's Response in Opposition to Mr. McKinzie's Motion for Judgment on the Pleadings. [ECF Doc. No. 45 at pp. 22-25.] Mr. McKinzie incorporates by reference the arguments both in his Motion for Judgment on the Pleadings and his Reply in Support of the Motion for Judgment on the Pleadings. [*See* ECF Doc. No. 44 at pp. 15-17; ECF Doc. No. 47 at pp. 14-15.]

Plaintiff adds a small wrinkle to its prior argument by leaning heavily on USAA documents it received in discovery and speculating as to whether coverage has been exhausted. [ECF Doc. No. 58-2 at pp. 17-18.] Plaintiff also insists that "USAA has not informed [Plaintiff] that it would provide coverage to DOH, Inc. for any of the alleged damages resulting from the Underlying Accident, and no evidence to the contrary has been supplied by the Defendants." [*Id.* at p. 18.] It is difficult to understand the purpose of this sentence, because this is a fact that would undermine Plaintiff's argument. For example, USAA's failure to tell Plaintiff that it is providing coverage to DOH and/or Mrs. Harr (if that is the case) would be consistent with the idea that no other insurance is covering the accident, which means that the exclusion relied upon by Plaintiff in Section B.2.c. would not apply. Moreover, any conversation (or lack thereof) between Plaintiff and USAA regarding coverage is irrelevant to this Court's analysis of the duty to defend because such conversations are not included in the Policy or the Underlying Complaint. Accordingly, this is no basis for summary judgment in Plaintiff's favor.

## H. Plaintiff is Entitled to No Adverse Inferences Based on Mr. Harr's Discovery Responses.

Plaintiff's final argument is a Frankenstein's monster of non sequiturs, misunderstood legal theories, and leaps of logic. Plaintiff's argument can be condensed as follows: (1) dram shop liability attaches to a business when it

"knowingly sell, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication" that it knows will soon drive a motor vehicle and that person causes an accident as a result of that intoxication; (2) Mr. Harr pled his Fifth Amendment rights in response to discovery requests regarding whether he paid for the alcohol he drank and whether he served himself; (3) the US Supreme Court has held that a negative inference is not precluded when a party refuses to answer based on his Fifth Amendment rights; (4) Plaintiff is therefore entitled to the inference that Mr. Harr did not pay for the drinks and did, in fact, serve himself; (5) he was therefore not acting within the scope of DOH's business at the time; and (6) therefore, respondeat superior does not apply.

This argument fails in at least three different ways (and likely more). First, as for (2) above, Mr. Harr's discovery responses are irrelevant to this Court's analysis of the duty to defend for the reasons set forth earlier in this brief. Second, at steps (3) and (4), the fact that a negative inference is not *precluded* does not mean that Plaintiff is *entitled* to that negative inference for summary judgment. Third, at (6) above, respondeat superior is an entirely separate concept from liability attaching under the Georgia Dram Shop Act.

1. <u>Plaintiff Cannot Rely on Mr. Harr's Discovery Responses.</u>

Without belaboring this point again, Mr. McKinzie reiterates that the duty to defend is the only issue ripe in this case and that it is determined solely through an examination of the Policy and Underlying Complaint. Plaintiff's entire line of reasoning regarding dram shop liability relies on this Court construing those discovery responses. Accordingly, if this Court determines that it is not appropriate to review those discovery responses, it can dispense with Plaintiff's dram shop liability arguments here without reading any further.

2.  Plaintiff is Not Entitled to Any Negative Inference.

To the extent this Court determines that it should examine the discovery responses, it is important to note that Plaintiff is just wrong about the law. Plaintiff implies that it is entitled to an adverse inference from those discovery requests merely because Mr. Harr invoked his Fifth Amendment rights. This is not the law. The Supreme Court case cited by Plaintiff merely states that an adverse inference (by the factfinder) is not *precluded. Baxter v. Palmigiano*, 425 U.S. 308, 218 (1976). This case does not say that the adverse inference is required. However, Courts in this very district have explained in the context of insurance cases that the "negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production." *Maryland Cas. Co. v. Malone*, 90 F. Supp. 3d 1351, 1359 (N.D. Ga. 2015). "[C]ourts generally have

found that 'adverse inference alone is not sufficient to warrant summary judgment' but summary judgment 'may be appropriate if supported by independent evidence.'" *Id.*

Mr. Harr's invocation of his Fifth Amendment rights in response to these discovery requests is the only "evidence" presented by Plaintiff in its Motion for Summary Judgment that Mr. Harr was serving himself and not paying compensation to DOH. Accordingly, Plaintiff cannot obtain any negative inference to entitle it to summary judgment on this point.

3. Plaintiff's Reliance on the Doctrine of Respondeat Superior is a Non Sequitur.

In the final step of Plaintiff's analysis on this point, it abruptly shifts to analyzing dram shop liability under the doctrine of respondeat superior. Plaintiff cites to no law stating that the analysis for dram shop liability and the doctrine of respondeat superior are the same or even intertwined. Plaintiff reasons that Mr. Harr was not acting within the scope of his "employment" when he allegedly served himself without compensating DOH for the alcohol and that DOH therefore cannot be held liable under a theory of respondeat superior.

First, this is not an argument against the duty to defend. This is—*at best*—a defense that DOH might assert in the Underlying Litigation against the imposition of dram shop liability against it. Plaintiff's argument that DOH may have a defense

against dram shop liability in the Underlying Litigation does not excuse Plaintiff of the duty to provide that defense on behalf of DOH in the Underlying Litigation. Plaintiff's argument fails on this point alone.

Second, this defense fails on the merits. The Georgia Dram Shop Act imposes liability when someone "knowingly sells, furnishes or serves alcoholic beverages to a person who is in a state of noticeable intoxication knowing that such person will soon be driving a motor vehicle" and that intoxicated person injures someone due to that intoxication. O.C.G.A. § 51-1-40(b). The statute is not limited to merely "selling" alcohol, it includes furnishing it and serving it. *Id.* Therefore, the allegation that Mr. Harr did not compensate DOH for the alcohol is of no consequence. Finally, the Underlying Complaint alleges that Mr. Harr owns and operates DOH with his wife, so his use of DOH's alcohol could be imputed to DOH itself. Accordingly, his activities fall within the plain language of the statute. There is no need to analyze the doctrine of respondeat superior.

## CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted on April 21, 2025.

*/s/Jonathan Palmer*

                                        Jonathan M. Palmer
                                        Georgia Bar No. 453452
                                        Nicholas T. Sears
                                        Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE

In accordance with L.R. 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). I also hereby certify that I have served the foregoing on opposing counsel by filing through the Court's CM/ECF system, which will send electronic notice to all counsel of record.

Submitted on April 21, 2025.


*/s/Jonathan Palmer*
Jonathan M. Palmer
Georgia Bar No. 453452
Nicholas T. Sears
Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com