IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORGUARD INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JASON S. MCKINZIE, JR., *et al.*, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:24-cv-03586-TRJ |

ORDER

This matter is before the Court on Defendant Jason S. McKinzie, Jr.'s Motion for Judgment on the Pleadings (Doc. 44), Defendants Jeffery S. Harr, Jill E. Harr, and DOH, Inc.'s Motion for Summary Judgment (Doc. 55), and Plaintiff NorGUARD Insurance Company's Motion for Summary Judgment (Doc. 58). Upon review and consideration, the Harrs' and DOH, Inc.'s Motion is **GRANTED**, Plaintiff's Motion is **DENIED**, and McKinzie's Motion is **DENIED AS MOOT**.

BACKGROUND

This case arises from a lawsuit filed in the State Court of Gwinnett County, Georgia (the "Underlying Litigation"). (Doc. 1 at 34). In the Underlying Litigation, Jason S. McKinzie, Jr. alleges that, on September 2, 2023, at approximately 12:34 a.m., Jeffery S. Harr was driving his wife Jill E. Harr's vehicle in the eastbound lane of Tuggle Road in Gwinnett County, Georgia, when he crossed the centerline of the road and struck McKinzie's homemade "motorized cart." (*Id.* at 37; Doc. 58-3 at 456). As a result of the collision, McKinzie sustained severe injuries. (*Id.*) Mr. Harr and

McKinzie were both cited for driving under the influence in violation of O.C.G.A. § 40-6-48. (*Id.* at 263–64).

Immediately prior to the accident, Mr. Harr "consumed alcoholic beverages to the point of intoxication at [a] restaurant and bar" owned by DOH, Inc. ("DOH"). (*Id.*) Notably, Mr. Harr is an employee and manager of DOH, and Mrs. Harr is the Chief Executive Officer of DOH. (Doc. 55-5). On October 12, 2023, McKinzie filed the Underlying Litigation against Mr. and Mrs. Harr. (*Id.* at 24). On December 20, 2023, McKinzie filed his Amended Complaint to include DOH as a defendant.[1] (*Id.* at 34). In the Underlying Litigation, McKinzie alleges: (1) negligence/ negligence *per se* (as to Mr. Harr), (2) vicarious liability/family purpose doctrine (as to Mrs. Harr), (3) negligent entrustment (as to Mrs. Harr), and (4) dram shop liability (as to DOH).[2] (Doc. 1 at 38–45). McKinzie also seeks compensatory damages and attorney's fees and costs. (*Id.*) There has been no judgment, settlement, or other final adjudication in the Underlying Litigation. *See McKinzie v. Harr*, Civil Action No. 23-C-07575-S3 (Aug. 13, 2024).

At the time of the accident, Plaintiff NorGUARD Insurance Company insured DOH under a businessowner's insurance policy (the "Policy"). (Doc. 1 at 49, 52). On October 31, 2023, McKinzie's attorney sent a demand letter to Plaintiff, asserting that the Policy provided coverage for the accident. (Doc. 58-3 at 439–49). On July 11,

---

[1] The Underlying Litigation also names Johnny's Pizza, Inc. and Johnny's Franchise System, Inc. as defendants. (Doc. 1 at 34). Both defendants were initially named in this lawsuit but were voluntarily dismissed on November 4, 2024. (Doc. 35).

[2] Additional counts against the dismissed parties—Johnny's Pizza, Inc. and Johnny's Franchise System, Inc.—included claims for dram shop liability and punitive damages. (Doc. 1 at 42–45).

2024, Plaintiff sent a letter to McKinzie's attorney rejecting the demand on the basis that the Policy terms did not provide coverage for McKinzie's injuries. (*Id.* at 470). On the same day, Plaintiff also sent a reservation of rights letter to DOH and Mr. and Mrs. Harr, stating that Plaintiff "reserved its right to deny coverage for [McKinzie's] claims against [DOH and Mr. and Mrs. Harr]" in the Underlying Litigation based on the terms and exclusions in the Policy. (*Id.* at 465).

On August 13, 2024, Plaintiff filed this lawsuit against DOH, Mr. and Mrs. Harr, and McKinzie pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and O.C.G.A. § 9-4-1, seeking a declaration that it is not obligated to cover, defend, or indemnify DOH and Mr. and Mrs. Harr in the Underlying Litigation pursuant to the "clear and unambiguous" terms of the Policy. (Doc. 1). On December 10, 2024, McKinzie filed a Motion for Judgment on the Pleadings. (Doc. 44). On March 17, 2025, DOH and Mr. and Mrs. Harr filed a Motion for Summary Judgment against Plaintiff. (Doc. 55). On April 1, 2025, Plaintiff filed an Amended Motion for Summary Judgment against McKinzie, DOH, and Mr. and Mrs. Harr. (Doc. 58).

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable

substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

In each of their motions, the parties dispute whether Plaintiff must defend and indemnify any party in the Underlying Litigation. (Docs. 44, 55, 58). "Under Georgia law, the duty to defend and the duty to indemnify are treated separately." *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329, 1333 (N.D. Ga. 2018). "The

duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage, whereas the duty to indemnify arises when, or if, liability is ultimately imposed on the insured." *Northfield Ins. Co. v. Northbrook Indus., Inc.*, 749 F. Supp. 3d 1325, 1332 (N.D. Ga. 2024) (citation modified) (quoting *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 318 (2007)).

"'An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured.'" *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014) (citation omitted). Notably, "[a]lthough an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (citation omitted). Thus, "even if some of the allegations ultimately are not found to be covered by the policy, the insurer still has a duty to defend the entire action if any of the claims might be." *Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.*, 592 F. App'x 876, 882 (11th Cir. 2015) (citation modified).

As to the duty to indemnify, "an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract." *Elan Pharm. Rsch. Corp.*, 144 F.3d at 1375. Generally, "'an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.'" *Capitol Specialty Ins. Corp.*, 331 F. Supp. 3d at 1338 (citation omitted); *see also Mid-Continent Cas. Co. v. Delacruz Drywall Plastering &*

*Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) ("[M]any district courts in this circuit have ruled that an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established . . . . We agree."). The duty to indemnify, however, "may be ripe for adjudication where a court finds no duty to defend, and logic and common sense make clear that the duty to indemnify would be governed by the same facts and contractual provisions." *Capitol Specialty Ins. Corp.*, 331 F. Supp. 3d at 1334 (citation modified).

### A. Duty to Defend

To determine whether an insurer has a duty to defend, courts "compar[e] the allegations of the underlying complaint against the provisions of the policy." *Capitol Specialty Ins. Corp.*, 331 F. Supp. 3d at 1334. And "[i]f the complaint against the insured does not assert any claim that could fall within the policy's coverage provisions, the insurer is justified in refusing to defend." *Kansas City Landsmen, L.L.C.*, 592 F. App'x at 882. "[D]oubt as to [the] liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Northfield Ins. Co.*, 749 F. Supp. 3d at 1333 (citation omitted). Here, the Policy provides three sources of potential coverage giving rise to the duty to defend: (1) the "Hired Auto and Non-Owned Auto" Endorsement, (2) the "Designated Premises, Project, or Operation" Endorsement, and (3) the "Liquor Liability Coverage" Endorsement. (Docs. 44, 55, 58). Plaintiff argues that each of these endorsements precludes coverage, whereas Defendants contend coverage is owed, at least arguably, under each of the three endorsements.

1. <u>The "Hired and Non-Owned Auto" Endorsement</u>

First, the parties dispute whether the Policy provides coverage under the "Hired and Non-Owned Auto" Endorsement. (*Id.*) This endorsement provides coverage for "'bodily injury' or 'property damage' arising out of the use of any non-owned auto in [DOH's] business." (Doc. 1 at 138). A "non-owned auto" is defined in the Policy as:

> any 'auto' [DOH] do[es] not own, lease, hire, rent, or borrow which is used in connection with [DOH's] business. This includes 'autos' owned by [DOH's] 'employees,' [DOH's] partners or [DOH's] 'executive officers', or members of their households, but only while used in [DOH's] business or [DOH's] personal affairs.

(*Id.* at 139).[3] It is undisputed that Mr. Harr is an employee of DOH and that Mrs. Harr, an executive officer of DOH, owned the vehicle involved in the accident. (Doc. 55-5; Doc. 1 at 39). The parties, however, dispute whether Mr. Harr's driving home from DOH's premises constituted DOH's "personal affairs" under the Policy. The Policy does not define "personal affairs." (Doc. 1 at 139). Under Georgia law, where a contract is ambiguous, "the court must apply the rules of contract construction to resolve the ambiguity. And contractual provisions are ambiguous when they are susceptible to more than one meaning, even if each meaning is logical and reasonable." *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 286 (2015) (citation modified). The Georgia Court of Appeals instructs that:

> [i]n cases of ambiguity, there are three well-known rules of contract construction that apply: (1) ambiguities are strictly construed against the insurer as the drafter;

---

[3] Plaintiff argues, and Defendants do not dispute, that Mrs. Harr's vehicle does not meet the definition of a "hired auto" under the Policy. (Doc. 61 at 6; Doc. 64 at 9; Doc. 68 at 5–6).

7

> (2) exclusions from coverage the insurer seeks to invoke are strictly construed; and (3) the contract is to be read in accordance with the reasonable expectations of the insured when possible. Indeed, when a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured.

*Id.* Georgia courts have not yet interpreted the meaning of "personal affairs." However, "[s]ome courts," including one in this Circuit, "have found that phrase to be ambiguous at the pretrial stage of proceedings." *Lawrence v. Ace Am. Ins. Co.*, No. 8:18-cv-738-T-24 TGW, 2018 WL 6192190, at *6 (M.D. Fla., Nov. 28, 2018) (citing *Lincoln Gen. Ins. Co. v. Gateway Sec. Servs.*, No. 1:06-cv-01143 OWW SMS, 2007 WL 3203020, at *14 (E.D. Cal. Oct. 29, 2007) ("The concept of 'personal affairs' of an entity is anomalous because an entity, although a 'person' in the eyes of the law, does not engage in 'personal activities.' This creates ambiguity.")).[4] Here, the complaint in the Underlying Litigation alleges that, at the time of the accident, Mrs. Harr, an executive of DOH, provided the vehicle to Mr. Harr, a DOH manager and employee, "for [his] pleasure, comfort, or convenience," which could plausibly constitute DOH's personal affairs. (Doc. 1 at 40). Because ambiguity "will be strictly construed against the insurer as the drafter and in favor of the insured," Defendants have sufficiently alleged that the Policy provides coverage for the accident under the "Hired and Non-Owned Auto" Endorsement. *Neisler*, 334 Ga. App. at 286–87.

---

[4] Insofar as Plaintiff argues respondeat superior applies here, the Court disagrees. (Doc. 58-2 at 8–9, 20–21). Plaintiff does not cite any case where a court has applied respondeat superior in the context of insurance policy construction for purposes of the duty to defend, and the Court is aware of none.

In its Motion for Summary Judgment, Plaintiff also argues that Mr. Harr is not an insured under the non-owned auto endorsement because coverage is excluded for "when the non-owned auto operated by an executive officer [Mr. Harr] is owned by a member of his household [Mrs. Harr]." (Doc. 58-2 at 10–11). It is true that the exclusion provides: "None of the following one of the following is an insured: . . . . b. Any partner or 'executive officer' for any 'auto' owned by such partner or officer or a member of his or her household . . . ." (Doc. 1 at 139). But this exclusion only further creates the ambiguity discussed above. Indeed, the Policy provides coverage for: "'autos' owned by [DOH's] 'employees,' [DOH's] partners or [DOH's] 'executive officers', or members of their households," but it excludes autos owned by executive officers. (*Id.*) Again, because the terms of this endorsement are ambiguous, the scope of coverage is construed against the insurer and in favor of finding coverage. *See Neisler*, 334 Ga. App. at 286–87 (holding that ambiguous terms "will be strictly construed against the insurer as the drafter and in favor of the insured").

2. The "Designated Premises, Project, or Operation" Endorsement

Next, the parties dispute whether the "Designated Premises, Project, or Operation" Endorsement provides coverage in the Underlying Litigation. This endorsement covers:

> 'bodily injury' or 'property damage' caused by an 'occurrence' that takes place in the 'coverage territory' only if:
>
> > (b) The 'bodily injury' or 'property damage': . . .
> >
> > > (iii) occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

9

> (iv) *arises out of* the project or operation shown in the Schedule.

(Doc. 1 at 140–41) (emphasis added). It is undisputed that the accident did not occur on the premises. Thus, the parties dispute whether the accident arose out of the "project or operation shown in the Schedule." (*Id.*)

At the top of the endorsement, the "Schedule" lists the address of DOH's restaurant and bar. (*Id.* at 140). The "Project or Operations" section of the endorsement is left blank. (*Id.*) But, as McKinzie points out in his response brief, the endorsement directs the insured to the Declarations, which lists DOH's restaurant name and describes it as a "Full-Service Restaurant." (*Id.*) McKinzie argues this is sufficient to establish that DOH's restaurant was the subject "project or operation." (Doc. 64 at 17).

Plaintiff, on the other hand, argues that "Project or Operation coverage is a project-specific insurance policy that is typically required for specific industry projects such as construction, engineering, and other large-scale projects where unique risks are involved." (Doc. 58-2 at 14). Citing an article from the International Risk Management Institute, Plaintiff argues that "Project liability insurance is a form of architects and engineers . . . liability coverage which applies coverage only to an insured's work on a single project," and that because the Policy "does not encompass a construction project," this endorsement is not applicable to DOH's restaurant. (*Id.* at 14–16).

But, as Plaintiff admits, the Policy states that "'Operations' means your business activities occurring at the described premises." (Doc. 1 at 99). Here, the

10

complaint in the Underlying Litigation alleges that Mr. Harr caused the accident and McKinzie's resulting injuries after DOH "knowingly sold, furnished, or served alcoholic beverages to [him] . . . knowing that [he] would soon be driving" *at* DOH's restaurant. (Doc. 1 at 41). Thus, the accident at least arguably arose out of DOH's "business activities . . . occurring at the described premises" by selling Mr. Harr alcohol to the point of intoxication immediately before the accident. (*Id.* at 41, 99). And, under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (2012) (citation omitted). Applying the Policy as written, then, DOH and Mr. and Mrs. Harr enjoy coverage under the "Designated Premises, Project, or Operation" Endorsement. *See City of Atlanta v. St. Paul Fire & Marine Ins.*, 231 Ga. App. 206, 207 (1998) ("If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action.") (citation omitted).

### 3. The "Liquor Liability Coverage" Endorsement

The "Liquor Liability Coverage" Endorsement "applies to all 'bodily injury' or 'property damage' arising out of the selling, serving or furnishing of alcoholic beverages." (Doc. 1 at 143). In the Underlying Litigation, McKinzie alleges that, immediately prior to the accident, "DOH knowingly sold, furnished, or served alcoholic beverages to [Mr. Harr], who was in a state of noticeable intoxication, knowing that [he] would soon be driving a motor vehicle." (*Id.* at 34). Thus, McKinzie's allegations fall squarely within the terms of the Policy.

Plaintiff, however, argues that the "Liquor Liability Coverage" Endorsement excludes coverage "because other insurance is available" for the accident. (Doc. 65 at 14). Specifically, Plaintiff argues that an exclusionary provision bars recovery under this endorsement because Mrs. Harr's vehicle was covered by another insurer, USAA. (*Id.*) The exclusion states in relevant part:

> This insurance does not apply to: . . . .
>
>> c. Any "bodily injury" or "property damage" with respect *to which other insurance is afforded*, or would be afforded but for the exhaustion of the Limits of Insurance.
>>
>> This exclusion does not apply if the other insurance responds to liability for "bodily injury" or "property damage" imposed on the insured by reason of the selling, serving, or furnishing of any alcoholic beverage.

(*Id.* at 14–15) (emphasis added).

But, in the Court's analysis of an insurer's duty to defend, consideration of Plaintiff's evidence of the USAA policy is improper. "Georgia law makes it clear that an insurer's duty to defend is based on the allegations in the operative complaint, and that subsequent facts uncovered during discovery are irrelevant to this inquiry." *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, No. 1:19-cv-03319-CAP, 2019 WL 9633224, at *6 (N.D. Ga. Dec. 19, 2019) (citation omitted). In the Underlying Litigation, McKinzie does not allege that Mr. and Mrs. Harr were insured by USAA. (Doc. 1 at 34). So, the Court should not consider it.

And even if the Court considered extrinsic evidence of the USAA policy, that alone would not be sufficient for Plaintiff to unambiguously exclude coverage under

the exclusion. *Northfield Ins. Co.*, 749 F. Supp. 3d at 1333 ("A policy exclusion will not relieve an insurer of its duty to defend unless the provision 'unambiguously exclude[s] coverage.'") (quoting *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (2007)). Indeed, a question would remain as to whether USAA actually "afforded" insurance for this particular damage and injury. "Any doubt as to the insurer's duty to defend, though, should be resolved in favor of the insured. This principle is especially true with respect to exclusions from coverage sought to be invoked by the insurer." *Capitol Specialty Ins. Corp.*, 331 F. Supp. 3d at 1334. Likewise, although Plaintiff asserts that Mr. Harr's invocation of his Fifth Amendment right against self-incrimination in his response to Plaintiff's Request for Interrogatories warrants an adverse inference that Mr. Harr served himself alcohol—not DOH—such adverse inference would *still* be insufficient to establish that the exclusion unambiguously applied. (Doc. 58-2 at 19–21); *see Capitol Specialty Ins. Corp.*, 331 F. Supp. 3d at 1334. The Court, therefore, concludes that the exclusion does not preclude coverage. *See Wilkinson v. Ga. Farm Bureau Mut. Ins. Co.*, 351 Ga. App. 891, 893 (2019) ("[E]xclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage."). Accordingly, the claims in the Underlying Litigation are sufficient to establish coverage under the Policy for purposes of the duty to defend, and Plaintiff has a duty to defend DOH and Mr. and Mrs. Harr in the Underlying Litigation.

### B. Duty to Indemnify and McKinzie's Motion for Judgment on the Pleadings

Because no judgment has been entered in the Underlying Litigation, the issue

of indemnity is not yet ripe for adjudication. *Mid-Continent Cas. Co.*, 766 F. App'x at 770 ("[A]n insurer's duty is not ripe until the underlying lawsuit is resolved, or the insured's liability is established."). Therefore, Plaintiff's claim for a declaration that it has no duty to indemnify is **DISMISSED** without prejudice. Likewise, because the Court finds that Plaintiff has a duty to defend DOH and Mr. and Mrs. Harr in the Underlying Litigation, McKinzie's Motion for Judgment on the Pleadings (which seeks a ruling that Plaintiff must defend the Underlying Litigation) is **DENIED AS MOOT**.

## Conclusion

Accordingly, DOH and Mr. and Mrs. Harr's Motion for Summary Judgment (Doc. 55) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Doc. 58) is **DENIED**, and McKinzie's Motion for Judgment on the Pleadings (Doc. 44) is **DENIED AS MOOT**. The Clerk is **DIRECTED** to enter a declaratory judgment in favor of Defendants DOH, Inc., Jeffery S. Harr, and Jill E. Harr declaring that, in the litigation *McKinzie v. Harr*, Civil Action No. 23-C-07575-S3, filed in the State Court of Gwinnett County, Georgia, NorGUARD Insurance Company is obligated to defend the litigation. Because this Order resolves all of Plaintiff's claims in this action, after entering judgment, the Clerk is further **DIRECTED** to **CLOSE** this case.

SO ORDERED, this 22nd day of September, 2025.

_____
TIFFANY R. JOHNSON
United States District Judge